COPY

1

1   UNITED STATES DISTRICT COURT

2   FOR THE DISTRICT OF COLUMBIA

3

4   - - - - - - - - - - - - - - - -x

5   BRENDA J. LEE,                          :

6              Plaintiff,                    :

7       vs.                                  :    Case No: 05-1335

8   DONALD WINTER, SECRETARY OF              :

9   THE NAVY,                                :

10             Defendant.                     :

11  - - - - - - - - - - - - - - - -x

12

13                           Washington, D.C.

14                           Tuesday, January 16, 2007

15

16

17  Deposition of:

18              WILLIAM DANIEL McCAFFERTY

19  the Deponent, called for examination by counsel for the

20  Plaintiff, pursuant to notice and agreement as to time and

21  place, at 501 3rd Street, N.W., Washington, D.C., before

22  Timothy J. Atkinson, a Notary Public in and for the District

23  of Columbia.

24

25

EXH. 13

Civil No. 05-1335 RWR

1    duties promotions is?

2        A.    I do believe that I have talked to him about the

3    fact that our command had and has a policy requiring that

4    there be no non-competitive accretion of duties promotions.

5        Q.    And where is that policy stated?

6        A.    It is documented in the minutes.  I believe the date

7    of those minutes was 1 April 2004, if I'm not mistaken, and

8    those were the minutes of our Business Transformation

9    Executive Team, BTET for short, and those minutes documented

10   or reaffirmed a decision made earlier by that group.

11            Our organization over the better part of the last

12   decade has gone through substantial downsizing and, as a part

13   of helping the organization go through that downsizing, the

14   BTET established a policy that there would be no non-

15   competitive accretion of duties promotions in order to avoid

16   the appearance that, when limited opportunities for promotion

17   did become available, that there was favoritism shown to one

18   individual over another.

19       Q.    Is there any kind of formal process for setting

20   personnel policies at NAVSEA?

21       A.    We have policies and guidelines established in

22   several ways.  Some are issued through formal instruction.

23   Others are done through decisions made by our leadership team,

24   the BTET, which was chaired by our Executive Director, the

25   civilian and the command, and those guidelines and guidance

48

1          At the bottom of the third paragraph on page 1
2    there's a statement, there was also a successful appeal.  This
3    references to another statement about appeal to either the
4    Agency or OPM.  The results of a successful appeal would be an
5    upgrading of the position and the incumbent.  That's not a
6    true statement.

7          Even if the incumbent of the position prevailed upon
8    appeal, the Agency still retains the right to restructure the
9    job and remove the higher graded duties so that if that were
10   to be management's decision, one of the possible outcomes
11   would be that neither the position nor the incumbent would be
12   upgraded.  And I apologize for taking time, but I want to make
13   sure I review this so I don't --

14          MS. BRASWELL:  Take your time.

15          WITNESS:  -- miss anything.  On the second page,
16   middle of the first full paragraph, there's a statement, the
17   Agency Merit Staffing Program, CCPO instruction 12335, part
18   1D.  That was not the applicable instruction that pertained.
19   We were operating under the OCPM instruction, CPI 335, and
20   using it as a standard operating procedure, the Human Resource
21   Service Center, Capitol Region, Merit Staffing Instruction, so
22   this reference was superseded.

23          At the next paragraph, the second full paragraph on
24   page 2 toward the bottom, it is my conclusion Mr. Randolph's
25   advice was erroneous contrary to both OPM policy.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRENDA J. LEE,　　　　　　　　）
　　　　　　　　　　　　　　　）
　　　　Plaintiff,　　　　　　　）
　　　　　　　　　　　　　　　）
　　　　v.　　　　　　　　　　）　　Civil Action No. 1:05-cv-01335-RWR
　　　　　　　　　　　　　　　）
DONALD WINTER,　　　　　　　）
SECRETARY OF THE NAVY,　　　）
　　　　　　　　　　　　　　　）
　　　　Defendant.　　　　　　　）

## DECLARATION OF WILLIAM D. MCCAFFERTY

I, William D. McCafferty, declare the following to be true and correct:

1. I am the Director of the Command Human Resources/EEO Division at the Naval Sea Systems Command (NAVSEA), Department of the Navy (Agency). I have served in this position since approximately May 2000. Prior to 2000, I held a series of increasingly more responsible positions in the Human Resources Management and Corporate Management career fields. In my current capacity, I routinely advise management on a wide variety of personnel laws, rules and regulations, as well as on Office of Personnel Management, Department of Defense, Department of Navy and NAVSEA personnel policies and procedures.

2. The Navy's Merit Promotion Program, contained in OCPM Instruction 12335.1, sets forth the Navy's policy regarding competitive (i.e., merit) promotions. This policy was established in November 1986 and has been in effect since that time. Attachment 1. In addition to Navy policy on merit promotions, NAVSEA Headquarters (HQ) has followed the implementing instructions of various organizations that have

provided civilian personnel support to NAVSEA HQ. NAVSEA HQ previously received civilian personnel support from the Consolidated Civilian Personnel Office (CCPO) in Crystal City, Virginia, and followed the policies and procedures of CCPO-CC Instruction 12335.1D. Subsequently, NAVSEA HQ received civilian personnel support from the Navy's Human Resources Service Center (HRSC), Capital Region and followed HRSC Capital Region Instruction (HRSC-CAPINST) 12335. Although HRSC Capital Region was eliminated in August 2001, NAVSEA HQ has used HRSC-CAPINST 12335 as a "Standard Operating Procedure" (SOP) since that time.

3. Under the SOP, NAVSEA HQ Directorates and the Program Executive Offices (PEOs) have used merit promotion certificates for multiple selections under certain circumstances. In particular, after a merit promotion certificate is generated listing qualified candidates for one vacancy, the same certificate has been used for subsequent selections when the occupational series and grade level, the area of consideration and the knowledge, skills and abilities for the positions are the same; when the subsequent selection is made within 90 days of the issuance of the certificate; and when qualified candidates are still available for consideration. Attachment 2, section 13(l); Appendix A.

4. Although in the spring and summer of 2004 Navy policy would have allowed a manager to noncompetitively promote an employee when the provisions governing an "accretion of duties" promotion had been met, NAVSEA HQ policy during this time period prohibited noncompetitive "accretion of duties" promotions. In particular, on March 31, 2004, I attended a lunch meeting of the Business Transformation Executive Team (BTET) during which NAVSEA's Executive Director, Pete Brown, reiterated the NAVSEA HQ policy that noncompetitive accretion promotions were not authorized. This

policy is documented in minutes of that meeting which were issued by Ms. Bonita Flynn,

Deputy Commander for Corporate Operations at NAVSEA. Attachment 3, p. 2. Thus,

even if a NAVSEA HQ employee obtained a desk audit during this time period and the

audit concluded that the position could be classified at a higher grade, managers within

NAVSEA HQ and PEOs were not authorized to grant a noncompetitive "accretion of

duties" promotion to the employee. NAVSEA HQ's departure from Navy policy was

permissible since accretion promotions are discretionary in the first instance.

I declare under penalty of perjury that the foregoing is true and correct.


September 14, 2007
Date

WILLIAM D. MCCAFFERTY





**DEPARTMENT OF THE NAVY**
HUMAN RESOURCES SERVICE CENTER, CAPITAL
Nebraska Avenue Complex
291 Cryptologic Court NW
Washington, DC 20393-5442

12335
Ser 53/00-166
08 Jun 00

From:  Director, Human Resources Service Center (HRSC), Capital

Subj:  IMPLEMENTATION OF MERIT PROMOTION PLAN

Encl:  (1)  HRSC-CAPINST 12335 dtd 8 Jun 00

1.   As you are aware, since our stand-up, HRSC Capital has relied on various non-standard procedures contained in activities' local merit promotion plans for internal recruitment (merit promotion) processes. On January 14, 2000 HRSC Capital issued a draft plan for comment. All comments received have been considered and many of those suggested comments have been incorporated in this final plan. Enclosure (1) outlines the HRSC Capital Merit Promotion Plan.   Please note that the adoption of this plan will apply only to non-bargaining unit employees at your activities until such time as bargaining can be accomplished. This plan will be effective on July 16, 2000.

2.   The Department of Navy has required that all Human Resources Servicing offices implement the use of the Standard Automated Inventory and Referral System (STAIRS). The key element to this new technology is commercial off-the-shelf applicant referral software called Resumix. This system will be used to fill positions, which would normally be filled through the merit promotion process. HRSC Capital serviced activities will be included under STAIRS in a phased plan. Enclosure (1) highlights any areas of merit promotion which require defined processes due to the STAIRS implementation.

3.   Where activities must bargain before implementation, we request HROs identify covered employees. We will defer implementation until bargaining obligations are met. Our POC on bargaining is Stan Schoen at (202) 764-1004.

JEAN M. CAZAUBON

Distribution:
Director, HRO-W
Director, HRO NAVACAD
Director, HRO NSSC
Director, HRO NSWC Carderock
Director, HRO NSWC Dahlgren
Director, HRO NSWC Indian Head
Director, HRO ONR
Director, HRO S/HHRO

## QUALIFICATIONS REVIEW RECORD FORM

**CONTACT:**

hone____/Letter____

Date

_____

Timely:

es____/No____

| APPLICANT'S NAME | | | | |
|---|---|---|---|---|
| ANN. NO. | | TITLE | | |
| RANKING FACTORS | COVERED IN GRIEVANCE Yes (Y) No (N) | REVIEW | CHANGES MADE | A - ADD. INFO E - ERROR C - RATING CHANGE |
| EXPERIENCE | | | | |
| APPRAISAL | | | | |
| EST | | | | |
| EDUCATION | | | | |
| TRAINING | | | | |
| AWARDS | | | | |
| ▓▓▓▓▓▓▓▓▓▓ | | | | |
| ) | | | | |

| 2) | | | | |
|----|---|---|---|---|
| 3) | | | | |
| 4) | | | | |
| 5) | | | | |

**FINDINGS & COMPUTATIONS:**

**SIGNATURE:**                                    **DATE:**



**DEPARTMENT OF THE NAVY**
**HUMAN RESOURCES SERVICE CENTER CAPITAL**
**NEBRASKA AVE COMPLEX**
**3801 NEBRASKA AVENUE NW**
**WASHINGTON DC 20393-5442**

HRSC-CAPINST 12335
HRSC 53

0 8 JUN 2000

## HRSC CAPITAL INSTRUCTION

From:  Director, Human Resources Service Center (HRSC), Capital

Subj:  MERIT PROMOTION PLAN

Ref:  (a) 5 CFR 300
      (b) 5 CFR 330
      (c) 5 CFR 335
      (d) CPI 335

1.  <u>Purpose.</u>  To describe merit promotion procedures set forth in reference (a), thru (d).

2.  <u>Scope.</u>  This instruction applies to all activities receiving staffing services from the HRSC Capital. This instruction does not cover senior level positions. The provisions of any current or subsequent negotiated labor-management agreement take precedence over this instruction for covered employees. Demonstration regulations may augment this instruction. This instruction supercedes all previously issued Human Resources Office Merit Promotion Plans.

3.  <u>Background.</u>  The Department of the Navy (DON), has required that all Human Resources Servicing offices implement the use of the Standard Automated Inventory and Referral System (STAIRS). This new way of doing business is more streamlined and takes advantage of state-of-the-art information technology. The key element to this new technology is commercial off-the-shelf applicant referral software called Resumix . This system will be used to fill position normally filled through the merit promotion process. HRSC Capital serviced activities will be included under STAIRS in a phased plan. This plan is intended to cover all serviced activities regardless of STAIRS implementation stage.

4.  <u>General Provisions.</u>

    a.  The identification, qualification, evaluation and selection of candidates shall be made without regard to political, religious or labor organization affiliation or non-affiliation, marital status, race, color, sex, national origin, non-disqualifying physical handicap, age or sexual orientation and shall not be based on any criterion that is not job-related.  This agency provides reasonable accommodations to applicants with disabilities. Automated tool(s) may be used to complement the merit staffing process to the extent practicable and feasible.

    b.  Pursuant to 5 USC 7201, each activity has an obligation to ensure that it's recruitment

programs are designed to eliminate underrepresentation of minorities and women. To meet this objective, Human Resources Office (HRO)/HRSC Capital officials and selecting officials will make every effort to identify and contact appropriate organizations that refer candidates to solicit minorities and women for vacancies for which recruitment is being conducted outside the activity.

c. Supervisors and public officials are prohibited from participating in any portion of any selection process if a relative is under consideration. Neither supervisors nor public officials may advocate the selection of a relative. This does not preclude them from responding to an appraisal on a relative, provided they refrain from advocating, and annotate the relationship on the form.

1) Advocating would also include the referral of an application of a relative for consideration for employment, promotion, etc.

2) If a relative of the selecting official is among the candidates certified for selection, he/she must disqualify himself/herself and selection authority must be exercised at a higher level in the chain of command.

3) While working for relatives is not specifically prohibited, in all cases this kind of situation should be avoided. If it exists, consideration should be given to moving one or the other to some other part of the activity.

d. Management reserves the right to fill positions by methods other than merit promotion, which may be used exclusively or concurrently with other methods/sources. Other sources may include, selections from Office of Personnel Management (OPM) registers, delegated examining, the Reemployment Priority List (RPL) or Department of Defense Priority Placement Program (PPP); selections of noncompetitive candidates; appointments made under Veterans Readjustment Authority (VRA), Veterans Employment Opportunity Act (VEOA), Schedules A, B or C, the Interagency Career Transition Assistance Program (ICTAP) or other appropriate authorities.

e. Vacancies may be postponed, canceled, expanded or filled on a temporary basis in order to meet staffing needs, and provided merit promotion requirements are met. However any of these actions must be completed within the guidelines of the (PPP).

f. All actions are subject to mandatory provisions of the PPP and any other applicable priority consideration programs.

g. Positions for which DOD and /or Department of the Navy (DON) have established career programs will be filled in accordance with applicable career program instructions.

h. Additional requirements of negotiated bargaining will be incorporated in the merit staffing process.

5. Appendix A provides definitions for the terms used in this plan.

6. Coverage. Per reference (c), competitive procedures will be applied to covered personnel

2

actions as described below, unless excluded under <u>Exceptions to Merit Staffing Procedures,</u> described in paragraph 7:

    a.  Promotion, reassignment, demotion, position change, transfer or reinstatement to a position with more potential than any position the employee holds or previously held on a permanent basis in the competitive service (except as permitted by reduction-in-force (RIF) regulations).

    b.  Temporary promotions that exceed 120 days. (In computing the 120 days, an individual's non-competitive temporary service in all higher graded positions during the preceding 12 months is counted, including details and other temporary and term promotions). A time-limited promotion must have a definite no-to-exceed date. Time-limited promotions need not be in one-year increments and may be extended up to a total of five years. Extensions beyond five years are subject to prior OPM approval. Return to the position from which promoted, or to a different position of equivalent grade and pay, are not subject to adverse action or RIF procedures. A time-limited promotion is not to be used as a means of training or evaluation of an employee in a higher graded position. A temporary promotion may be made permanent without further competition provided it was originally made under competitive procedures and the fact that it might lead to a permanent promotion was made known to all potential candidates.

    c.  Term promotions.

    d.  Details that exceed 120 days to higher graded positions or to positions with more promotion potential (service is counted toward the 120 day limitation in the same manner prescribed in paragraph 6b above). Competitive details (regardless of grade) may be extended up to a maximum of one year. Exception: The maximum is two years for details to positions in an organization undergoing a commercial activities (A-76) study.

7. <u>Exceptions to Merit Staffing Procedures.</u>  Competitive procedures do not apply to:

    a.  A promotion resulting from the upgrading of a position without significant change in the duties and responsibilities due to issuance of a new classification standard or the correction of classification error.

    b.  A position change permitted by reduction-in-force procedures in CFR 351.

    c.  Career promotions of employees when competition was held at an earlier date either through appointment from an OPM register or through internal merit promotion procedures (including the initial appointment of students in the Student Career Experience Program and in the Federal Junior Fellowship Program). The intent to promote must be made a matter of record.

    d.  A promotion resulting from an employee's position being reclassified at a higher grade because of additional duties and responsibilities.

e.  A temporary promotion or detail to a higher graded position or a position with known promotion potential of 120 days or less.

f.  Promotion, reinstatement, or transfer to a grade previously held on a permanent basis in the competitive or in another merit system with which OPM has an interchange agreement approved from which an employee was separated or demoted for other than performance or conduct reasons.

g.  Promotion, reassignment, demotion, transfer, reinstatement, or detail to a position having promotion potential no greater than the potential of a position an employee currently holds, or previously held on a permanent basis in the competitive service or, in another merit system with which OPM has an interchange agreement approved.  The previously held grade must not have been lost due to performance or conduct reasons.

h.  Consideration of a candidate not given proper consideration in a competitive promotion action.

i.  Promotion resulting from successful completion of a training program for which the employee was competitively selected.

j.  Temporary promotion of an employee for more than 120 days to a grade level previously held on a permanent basis, except when the employee was demoted for cause.

k.  Re-promotion to a grade or position which an employee previously held on a permanent basis and was demoted without personnel cause.

l.  Permanent promotion to a position held under temporary promotion or detail when originally made under competitive procedures and possibility for permanent action was identified in the vacancy announcement or recruitment bulletin.

m.  Other exceptions as they are incorporated in reference (c).

8.  Responsibilities.

a.  The HRSC Capital Director has the overall responsibility of establishing and administering a sound merit promotion program.  Before a position may be filled by merit promotion, the PPP, and other appropriate priority consideration programs will be applied.

b.  Head of activities may delegate selection authority to the lowest practicable level including the immediate supervisor of the vacancy.  A level of management authority higher than the immediate supervisor may assume selection authority for a specific action or on a continuing basis at the discretion of Heads of activities.

c.  Managers and supervisors are accountable for fair and equitable treatment of promotional candidates without regard to non-merit factors; fair and open competition; and

4

evaluation and selection based on knowledge, skills and abilities (KSAs). In exercising this responsibility, managers and supervisors will comply with the provisions of this plan, promptly identify anticipated staffing needs and, as required or desired, identify, recruit and evaluate candidates.

    d. When evaluation and/or selection advisory panels are used, members will comply with the provisions of this plan.

9. <u>Prior Consideration.</u> Certain activity employees may be entitled to prior consideration before any other eligible candidates may be referred (except the placement of an employee with statutory or regulatory return rights). Prior consideration employees will be referred in the following order:

    a. Law, court or other regulatory agency ordered referral.

    b. Agency decision/settlement between parties.

    c. Qualified employees who did not receive proper consideration for promotion in a previous case due to a merit staffing procedural, regulatory, or program violation. The HRSC or higher level authority determines entitlement after reconstruction. Entitlement is limited to the first vacancy in the activity for which prior consideration was lost that (1) occurs within one year of the determination that the employee was not afforded proper consideration; (2) is a similar type position in the same pay system as the position for which the employee failed to receive proper consideration; (3) the employee is qualified for and would be in the highly qualified group ranked by a subject matter expert or rating official against the crediting plan; (4) is at the same grade level with no higher potential than the position for which consideration was lost; and (5) the employee meets selective placement factors, where applicable. Since prior consideration is only granted once each time proper consideration is denied, it is important that the employee is given bonafide consideration. Should more than one employee be entitled to prior consideration on this basis for the same position, they will be considered together. There is no entitlement to selection. Management documentation is required to show that the employee received proper consideration for placement.

    d. Activity employees who have fully recovered from a job related injury.

    e. Priority Placement Program registrants in priorities 1, 2, and 3. All managers and supervisors shall support the PPP, the purpose of which is to place employees who have been adversely affected by base closures, reduction-in-force, consolidations, transfers of function, reclassification of positions resulting in retained grade, etc.

10. <u>Methods of Locating Candidates.</u>

    a. <u>Area of Consideration (AOC).</u> The AOC should be broad enough to allow for a sufficient number of qualified applicants, but narrow enough that an excessive number of applicants will not result. In determining the AOC, managers must consider EEO goals and

objectives; the likelihood of producing sufficient high quality candidates without unreasonably restricting fair and open competition; infusion of new ideas and strengths into the organization; and budgetary constraints and cost-effectiveness. The appropriate management will make AOC determinations official. Prior to making this determination the management official should discuss the appropriate AOC with their HRO specialist. The minimum AOC, for all merit promotion recruitment actions may be an appropriate subdivision of the command/activity. The AOC may be expanded if the selection official does not choose to select any of the qualified eligible. The AOC will be described geographically and organizationally. The duration of time for accepting applications will be consistent with the AOC. One of the following geographically descriptive AOCs should be used.

1. A subdivision within the activity (internal command higher level approval may be required prior to use of this AOC);
2. Activity-wide only;
3. Command-wide only;
4. Department of Navy activities within the commuting area;
5. Department of Defense activities within the commuting area;
6. Federal agencies within the commuting area;
7. Navy activities, world-wide or nation-wide;
8. DOD activities, world-wide or nation-wide;
9. Federal agencies world-wide or nation-wide; or
10. Other AOCs may be constructed as appropriate
11. Non-competitive eligible may be considered concurrently (i.e., reinstatement or transfer eligible, reassignment eligible, 30 percent disabled veterans, etc.).

b. <u>Management Identification of Candidates(MIC)</u>. Where the area of consideration is limited to a subdivision of the activity, management may issue to all potential candidates in that AOC a memorandum which includes information on the vacancy, i.e., the title, series, grade level (or equivalent) and organizational location of the position. Other internal communication devices may also be used (i.e., e-mail, daily bulletins or activity newspapers) to inform prospective candidates. The selecting official will designate what application format, (if any), will be necessary to be considered (e.g., Personal Qualifications Statement, SF-171, a resume, or any other approved format). When this method is used to fill a position, the evaluation and consideration process will be documented by the selecting official. HRSC Capital will determine basic eligibility of candidates.

*If STAIRS is used then paragraph 11h is applicable.*

c. <u>Announcements</u>. Vacancies may be publicized by a local vacancy listing or announcement, management memorandums, electronic web sites or other appropriate methods. If paid advertisements are to be used; all cost are the responsibility of the activity. HRSC Capital will work with activities to determine appropriate method and length of announcements in accordance with bargaining unit agreements. All merit promotion vacancy announcements, other than MICs, will be publicized by the HRSC Capital via applicable web pages, DASN/HROC

and/or OPM. All merit promotion vacancy announcements must be opened for a minimum of five workdays.

    d. Establishment of Registers.

      a) Registers may be used when similar vacancies are anticipated over a period of time and referrals through this process will not affect the quality of candidates available for selection. The life of a register will be determined by such factors as frequency and number of vacancies being filled. Cut-off date(s) for acceptance and consideration of applications for registers, which are open continuously, will be stated in the vacancy announcement. When certificates are issued, the cut-off date(s) for acceptance and consideration of applications will be the date the certificate is issued.

      *b) Under STAIRS open continuous registers will be established for popular series and/or grade ranges where ever possible and as demonstrated by historical recruitment data. Registers opened under the STAIRS system will be maintained as follows:*

    *1) Applications remain active to the end of the sixth month from the date of receipt (e.g., if the application is received on 12/15, it remains active until 6/30). Unless an extension is requested through either e-mail or hardcopy a new resume must be submitted to be considered for future vacancies (e.g., after 6/30 in the example cited above).*

    *2) Applications become inactive at the employee's request , at the end of the sixth month, or when an employee is selected for a new permanent position.*

    *3) Only one active resume per candidate is permitted. Each additional resume submitted overrides the previous.*

    e. Absent Employee Referrals. An employee who is unable to file an application before the closing date of an announcement for legitimate reasons may file his/her application any time before the evaluation process has been completed. Legitimate reasons include: detail, on leave, training or active duty military service, or service in public international organizations or on Intergovernmental Personnel Act assignments causing the applicant to be unable to file during the announcement period. Employees that are unable to file in a timely manner will be required to provide sufficient written verification of the absence and must file within five workdays of return to permanent job site.

## 11. Acceptance of Applications.

    a. Applications will be accepted from candidates within the AOC who apply, including excepted service employees with personal competitive status. Applications will only be accepted if received by the closing or cut-off date unless electronically submitted or otherwise specified in the vacancy announcement. Applications or resumes received electronically must be dated no later than midnight on the closing date of the announcement. Applications, delivered to HROs after the closing date will not be considered.

b. Applications will be accepted at any time from qualified applicants with a handicapping condition who are eligible for Schedule A appointments, and from applicants who are 30 percent or more disabled veterans. Certification of eligibility from and appropriate authority (i.e. a State Vocational Rehabilitation Office, the Veterans Administration, a military department, or a DD-214) is required prior to appointment. Applicants appointable under these authorities may be referred separately to the selecting official, and are not required to file by the closing date of the vacancy announcement.

c. Non-competitive eligible, if included in the AOC, are not required to meet the closing date provided selection has not been made.

d. Regardless of the AOC, applications will be accepted from eligible spouses of relocating active duty military members and DOD civilians in accordance with applicable instructions.

e. An application may be rejected if it is not from an appointable candidate; is from a candidate outside the AOC; lacks sufficient information upon which to make a qualifications determination; lacks sufficient information to determine the announcement applied for; contains falsified information; an applicant does not meet time-in-grade requirements; an applicant does not meet time after competitive appointment requirements; application is delivered through the U.S. mail in official government "franked" envelopes or is received after the closing date of the announcement.

f. In all cases, applications must show the Vacancy Announcement Number for the specific position for which application is made and the lowest grade (or equivalent) acceptable if the position is announced at multiple grade levels. If the lowest acceptable grade is not indicated, applicants will be considered only at their current or the highest grade for which qualified. A separate application must be submitted for each non-STAIRS vacancy announcement for which consideration is sought. Applications will only be referred to the primary vacancy announcement listed. To receive consideration for more than one vacancy, a separate application must be submitted for each vacancy.

g. Each applicant is responsible for the completeness and timely submission of his/her application. All application documents submitted for a vacancy will be retained by the HRSC Capital as part of the merit staffing case file.

h. *All resumes submitted for STAIRS announced vacancies must be in compliance with the specification and directions of the Navy's Job Application Information for Civilian Employee (Job Kit). The Job Kit can be located at www.donhr.navy.mil web site or the local Human Resources Office. Any STAIRS resume not in compliance with the requirements outlined in the Job Kit will be returned.*

i. *For STAIRS published vacancies HRSC Capital will accept resumes submitted*

8

through the Navy Web Builder which may be accessed at *www.donhr.navy.mil* web site and will be considered as if received via the postal service. Hard copy resumes mailed in non-government envelopes will be accepted as long as they are in compliance with the Job Kit requirements. Resumes submitted in the body of an e-mail WILL be accepted in accordance with the Job Kit instructions. Submission of resumes as an e-mail attachment will NOT be accepted and will be returned.

   *j.* A resume will be stored in STAIRS once it has been filed in response to a specific announcement or open continuous register. An applicant may re-use his/her current resume once it has been stored in STAIRS. Applicants may self-nominate to be considered for other vacancies. Requests for self-nomination may be submitted via e-mail, internet or hardcopy (see self-nomination form on *www.donhr.navy.mil* web site).

12.  Qualifications.  Candidates for initial referral must meet all legal, regulatory and minimum qualification requirements as of the closing date/cut-off date(s) unless specified otherwise in the announcement.  Minimum qualification standards are those prescribed or approved by OPM plus any appropriate selective factor(s) which are considered essential for immediate satisfactory performance on the job.

13.  Evaluation and Referral of Candidates.

   a.  Regardless of the number of candidates, evaluation procedures must include multiple assessment measures, such as experience, education, training, awards, and annual performance ratings; include job analysis to determine pertinent KSAs' to be applied uniformly; and include consideration of an annual performance appraisal to the extent that it is relevant to the position being filled.  Provided these requirements are met, evaluation procedures used for any given recruitment action may vary according to the number of applicants, type of position and other consideration.

   b.  When there are ten or fewer qualified candidates, all candidates will be rated against basic eligibility and minimum qualification standards.  Those who are minimally qualified will be referred to the selecting official for consideration.  The selecting official may request or require HRSC Capital to evaluate candidates to be referred in comparison with both the position requirements and each other to identify those who are best qualified.  However, in all cases, the selecting official must document the evaluation and consideration process, including the reason for selection.

   c.  Large numbers of candidates (over 15) may be reduced to more manageable levels through use of an abbreviated procedure such as the summary or quality ranking factor, or by removing from consideration candidates with an annual performance rating below fully successful, or equivalent, if relevant to the position being filled.  After this initial grouping, the candidates selected to continue the evaluation process would be formally evaluated using the approved crediting plan.  Once the evaluation is complete cut off for certificates will be determined using either of two methods.  A natural break will be used to determine the cut off unless there is no natural break.  If there is no natural break all applicants receiving a total of

eighty percent of the possible score will be referred as best qualified.

d. KSAs, which are used to evaluate candidates, must be job related and closely tied to the position/job descriptions and performance standards.

e. Regardless of which evaluation process is used, candidates may be evaluated by the selecting official, a personnel official, an EEO representative or any qualified management designee. Selecting officials are not prohibited from serving as the sole rater.

f. Unless imposed by special program requirements, e.g., for certain career programs, a rating panel is not required. A decision to use a panel should be based on such factors as the grade level, importance and sensitivity of the position, technical resources available, cost and number of vacancies.

g. If a panel is appointed by the selecting official to determine which eligible candidates are "best-qualified", that panel must ensure that all application materials and related documents are safeguarded to protect the privacy rights of individual applicants and to maintain the integrity of the rating process. Whenever possible, panel members should be at least the same, or higher, grade or rank as the grade (or equivalent) of the vacant position.

h. If a panel is not used, HRSC Capital will evaluate the vacancy in accordance with the appropriate generic crediting plan, unless otherwise specified by the selecting official.

i. Competitive candidates will be referred alphabetically in categories of 'best qualified' or 'qualified'. Non-competitive candidates received by the date the certificate is generated will be referred in alphabetical order.

j. Information to accompany the applications provided the selecting official includes the candidates' applications, supplemental statements (if submitted), and annual performance appraisals (if submitted).

k. Merit promotion certificates will be signed and dated by the HRSC Capital representative. Certificates are valid for 90 days from the date issued; however, efforts should be taken to make selections within 30 days.

l. Subsequent selections may be made from certificates when the area of consideration and the knowledge, skills and abilities are the same, it is within 90 days of the first issuance of the certificate, and provided candidate(s) are still available for consideration.

14. Selection.

a. The selecting official is entitled to select any certified candidate using job-related criteria, nonselect all candidates, or select from other sources at any time during the recruitment process.

b. Interviews are at the discretion of the selecting official. All, some, or none of the candidates certified for consideration may be interviewed.

c. When filling supervisory or managerial positions, selecting officials must give consideration to candidates' demonstrated commitment to support EEO program objectives.

15. <u>Release of Employees</u>. Employees will normally be released within two to four weeks from the request for the release date. In those rare instances where this time is not adequate, the gaining and losing supervisor mutually agree to a date. Employees should be released in the following manner:

a. Selections to positions for promotion or positions with known promotional opportunity should be released within two weeks, except in unusual circumstances, but no later than 30 days after selection.

b. Selections to positions for reassignment, demotion or details to the same or lower graded positions will normally be released within thirty days unless mutual agreement is reached between the releasing and gaining activity.

c. Selections to positions located overseas will normally be released within 45 days.

d. Personnel actions covered by this instruction will normally be effective on Sundays.

e. No personnel action (other than a detail) can be effective until the position to which an employee is being assigned has been classified, the candidate has met all legal, security and qualification requirements, and advance notification requirements have been met.

16. <u>Disclosure of Merit Promotion Information</u>. Under the Privacy Act of 1974, an applicant is allowed access to any merit promotion record identified as personal to him or to her, and to any other information permitted to be released under the Freedom of information Act. General merit promotion information may be released, per the provisions of reference (c), after the merit promotion selection has been finalized. At that time, information is releasable on whether an applicant was considered qualified, was within the group from which selection was made, who was selected, how to improve, supervisory appraisal information and other employee pertinent information. The names of evaluation panel members will not be released.

All candidates must have equal access to information on merit processes and procedures, however, during the staffing processes, response will be provided only to questions relating to staffing policy and clarification of information in the announcement (i.e., content of position, qualifications, etc.). No information will be provided to applicants on matters such as their rating and ranking, standing in relation to others, the crediting plan, or any other information that would give them an unfair advantage. The first consideration given is to protection of the privacy of all candidates. Ineligible candidates will be notified as soon as possible.

17. <u>Maintenance of Merit Promotion Records</u>. The HRSC Capital will maintain a record of each

merit promotion action. All records will be kept for two years or until an OPM evaluation is conducted (whichever occurs first), providing no grievance or complaint has been filed or is in process.

18. <u>Grievances</u>. It must be recognized that for each individual selected, there normally will be several that will not be selected. Therefore, failure to be selected from among a group of properly rated and ranked candidates is not a basis for a grievance. Matters of dissatisfaction are to be resolved under applicable procedures outlined in Appendix B.

JEAN M. CAZAUBON

Distribution:
Director, HRO-W
Director, HRO NAVACAD
Director, HRO NRL
Director, HRO NSSC
Director, HRO NSWC Carderock
Director, HRO NSWC Dahlgren
Director, HRO NSWC Indian Head
Director, HRO ONI
Director, HRO ONR
Director, HRO S/HHRO

## APPENDIX A
## DEFINITIONS

1. <u>Area of Consideration (AOC)</u>. The area of consideration is a geographic and/or organizational area in which the activity reasonably expects to recruit enough high quality candidates from which to select.

2. <u>Candidates</u>.

   a. <u>Qualified</u>. Eligible promotional candidates who, by the announced closing date, meet the qualification criteria published by the Office of Personnel Management (OPM).

   b. <u>Best Qualified</u>. Eligible promotional candidates who are at the top of the register when compared with all other candidates.

   c. <u>Eligible</u>. Appointable, candidates who, by the announced closing date, meet legal and regulatory requirements for placement into the vacant position (i.e. qualifications, time-in-grade, time after competitive appointment, area of consideration, etc.)

3. <u>Career Ladder Position</u>. A position which is filled through competitive procedures below the full-performance level. Employees selected for career ladder positions may be promoted without further competition when they (1) meet regulatory and qualification requirements and (2) demonstrate the ability to perform at the next higher grade.

4. <u>Career-Conditional Appointment</u>. Competitive service, permanent appointment of a person who has not yet completed three years of continuous creditable Federal service.

5. <u>Career Appointment</u>. Competitive service, permanent appointment given to an employee who has completed three years of continuous creditable Federal service.

6. <u>Certificate (Merit Promotion)</u>. A list of qualified promotional candidates, certified by the HRSC Capital to the selecting official for selection. At the request of the selecting official, this list may include all qualified promotional candidates or be condensed to only those candidates determined to be "best qualified".

7. <u>Commuting Area</u>. For the purpose of this instruction, the commuting area for most of the activities serviced by HRSC Capital is defined as the District of Columbia, Alexandria, Fairfax and Falls Church cities; Arlington, Fairfax, Loudoun, Prince William, Fauquier, Stafford, and King George Counties, Virginia; and Baltimore, Calvert, Charles, Montgomery, Anne Arundel, Prince George's, St. Mary's, Howard and Frederick Counties, Maryland. A few of the outer lying activities may use a different definition of commuting area.

8. <u>Competitive Service</u>. An appointment or a position in the Federal Government which is not specifically excepted from the Civil Service laws by Executive Order or OPM regulations.

9. <u>Competitive Status</u>. Status obtained by an employee based on prior service under a career or career-conditional appointment.

10. <u>Crediting Plan</u>. A set of rating guides against which all eligible qualified promotional candidates is evaluated.

11. <u>Detail</u>. A temporary assignment of an employee to a different position or set of duties for a specified period with no change in pay, with the employee returning to his/her regular duties at the end of the detail period.

12. <u>Evaluation Panel</u>. Normally, up to five people ad hoc working group, which carries out the evaluation process, appointed by the selecting official with HRO advice. Applies the appropriate Merit Promotion Evaluation Criteria.

13. <u>Excepted Service</u>. An appointment or a position which the Office of Personnel Management has exempted from the competitive service. (Examples are appointments of handicapped; stay-in-school appointment; cooperative education appointments, etc.).

14. <u>Full Performance Level</u>. That level of work designated by management and established by the application of the appropriate classification standard(s) which depicts the highest level of duties and responsibilities performed in a position.

15. <u>In-service Placement Qualification Standard</u>. An alternative method used to qualify employees with competitive status for competitive service positions based on special provisions for certain series in the OPM Qualification Standards.

16. <u>Job Analysis</u>. The process of systematically collecting, processing, analyzing, and interpreting information about a specific position or group of like positions to provide a job-related basis for evaluation and selection.

17. <u>Knowledge, Skills, Abilities (KSA's)</u>. Those knowledge, skills and abilities predetermined by job analysis to be essential to successful job performance which will be used to distinguish superior from barely acceptable candidates.

18. <u>Merit Promotion</u>. Placement of employees in positions at a higher grade level, or with promotion potential to a higher grade level than that currently held, based on a selecting official's assessment of appropriate knowledge, skills and abilities.

19. <u>Non-competitive Candidate</u>. A candidate who is qualified for a specific vacant position and either on the basis of prior competition or on exemption from the requirement to compete may be referred to the selecting official without evaluation and

competition in the "merit promotion" process. (Examples would be reinstatement or transfer eligible, reassignment eligible; 30 percent disabled veterans, etc.).

20. Non-status Applicant. An applicant who is not under a career or career-conditional appointment or is not a reinstatement eligible.

21. Performance Appraisal. The document that provides the annual, mid-year or interim evaluation of the employee's performance as measured against the critical elements, objectives, and standards established for the position the employee occupies.

22. Promotion. The change of an employee to a position at a higher grade level or, to a position with a higher rate of basic pay.

23. Promotion Potential. Employees in positions from which career promotions can be made. These include (1) positions filled at a grade (or grades) below the established or anticipated full performance grade level; (2) career ladder positions; (3) trainee positions, and (4) understudy positions.

24. Quality Ranking Factor. KSA's that could be expected to enhance significantly performance in a position, but unlike selective factors, are not essential for satisfactory performance. Applicants who possess the quality ranking factor can be ranked above those who do not, but no one can be rated ineligible solely for failure to possess a quality ranking factor.

25. Register. A list of eligible used to fill designated types of positions.

a. The servicing civilian personnel office may maintain internal merit staffing registers which are used to place current Federal employees and/or reinstatement eligible. These registers may be established from vacancy announcements, open continuous announcements, or vacancy listings.

b. The Office of Personnel Management and Delegated Examining Units maintain registers which are used for initial appointments into the Federal Civil Service. Except in instances where direct-hire authority has been authorized, these registers must be used to select non-status applicants.

26. Reinstatement. The reemployment of (1) a former career employee (or career-conditional veteran's preference eligible) any time after separation from Federal employment, or (2) a former career conditional non-veteran within three (3) years after separation.

27. Relative. Includes the specific relationships stated in 5 U.S.C. 3110 (i.e., father, mother, son, daughter, brother, sister, uncle, aunt, first cousin, nephew, niece, husband, wife, father-in-law, mother-in-law, son-in-law, daughter-in-law, brother-in-law, sister-in-law, stepfather, stepmother, stepson, stepdaughter, stepbrother, stepsister, half brother, or

half sister). When popular and legal usage differs, the strict or legal definition is applied to all these terms.

28. <u>Resumix</u>. A commercial off-the-shelf applicant referral software system.

29. <u>Selecting Official</u>. An individual authorized to make a selection for the position to be filled. The selecting official is usually the first or second level supervisor over the position, but may be a higher level official in the chain of command. When several intern/career development positions are to be filled, more than one selecting official may be designated.

30. <u>Selective Placement Factors</u>. Knowledge, skills, and abilities not contained in the OPM Qualification Standards that are so essential for satisfactory performance in a particular position that they become part of the qualification requirements in addition to those outlined in the OPM Qualifications Standards. Selective placement factors are readily identifiable from the position description and are defined by appropriate HRO/HRSC Capital staff in consultation with activity management officials. Examples of appropriate factors are:

a. Ability to speak read and/or writes a language other than English;

b. Knowledge or ability pertaining to a certain program or mission, when these cannot readily be acquired within 90 days after appointment; and

c. Ability in a functional area (for example, ability to evaluate alternative ADP systems).

31. <u>Spouse Preference Eligible</u>. Applicants who are spouses of relocation active duty military members. Eligibility begins 30 days preceding their spouse's relocation to the activity's commuting area. Additionally, these applicants are not bound by area of consideration requirements.

32. <u>STAIRS</u>. Standard Automated Inventory and Referral System designed to streamline the recruitment and referral process by utilizing state-of-the-art information technology.

33. <u>Summary Ranking Factor</u>. A summary ranking factor may be used to group the promotional candidates into "best-qualified" and "qualified" groups. This KSA includes all the essential requirements of a position combined, e.g., "ability to do the work of the position under normal supervisions".

# APPENDIX B

## SUBJECT: MERIT STAFFING GRIEVANCE PROCESS

**1. PURPOSE.** To establish procedures for processing informal or formal grievances arising from qualifications rating under the Merit Promotion Program.

**2. DISCUSSION.** Rankings assigned by the HRSC under the Merit Promotion Program may be grieved by an informal process and then by a formal grievance process as described below. Rankings assigned by the Activity or the HRO may be grieved under the current applicable HRO grievance procedures. Appeal adjudicators should check for the existence of memorandum of understanding or negotiated agreements, which might contain different grievance procedures.

## 3. PROCEDURES.

   **a.** Informal Process. The employee and/or the representative may present his/her concerns to the HRSC Staffing Specialist/Assistant who rated the application, within 15 calendar days after receipt of the notice of rating. The employee must present the issue in writing and reference the announcement number for the position. The Staffing Specialist/Assistant will draft a response for the appropriate Code 53 Branch Manager. The Code 53 Branch Manager will finalize the response and forward it to the employee, in writing, within 15 calendar days of receipt of the informal grievance.

   **b.** Formal Grievance. The employee and/or employee's representative must serve HRSC Code 50, in writing, within 15 calendar days after receipt of the written response from (3a) above. The grievance must be dated and signed, contain sufficient detail to identify and clarify the basis for the grievance, state the personal relief requested, and include copies of any documents in the employee's possession that are relevant to the grievance. Code 53 will review all available information and prepare a written decision for Code 50's signature. Code 50's decision will be issued within 15 calendar days after receipt of the formal grievance.

The Code 50 decision constitutes the final decision on the grievance.

TO PROMOTE CONSISTENCY IN THE PROCESSING OF THESE GRIEVANCES THE FOLLOWING STEPS SHALL BE FOLLOWED:

The findings and recommendations of the reviewing staffing specialist/assistant shall be recorded on a "Qualifications Review Record", Enclosure (1). ALL grievances should have a Qualifications Review Record form attached.

(1) Candidates are entitled to be shown/told the following information after completion of
the merit promotion action:

(a) Whether or not they were in the group from which selection was made.
(b) Who was selected.
(c) The evaluation factors (knowledge, skills and abilities needed for successful performance in the position) used.
(d) Their own ratings/scores on the evaluation factors (names of other candidates and panel members/raters must be deleted).

(2) A candidate who files a formal grievance is entitled to see additional information provided it is relevant to the issue(s) and is within the constraints of the Privacy Act. Examples of such information are:

(a) Sanitized rating sheets on other candidates
(b) Sanitized application forms and supplemental questionnaires
(c) Sanitized supervisory appraisals

4. The following information will not be released:

a. Test material.

b. "Internal Qualifications Guides" which supplement OPM Handbook, X-118C or activity crediting plans which copy or reference these guides.

c. Identifiable material on other candidates or any information which would be an invasion of privacy.