IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRENDA J. LEE,                    )
                                  )
        Plaintiff,                )
                                  )
        v.                        )        Civil Action No. 1:05-cv-01335-RWR
                                  )
DONALD WINTER,                    )
SECRETARY OF THE NAVY,            )
                                  )
        Defendant.                )

## DECLARATION OF WILLIAM D. MCCAFFERTY

I, William D. McCafferty, declare the following to be true and correct:

1. I am the Director of the Command Human Resources/EEO Division at the Naval Sea Systems Command (NAVSEA), Department of the Navy (Agency). I have served in this position since approximately May 2000. Prior to 2000, I held a series of increasingly more responsible positions in the Human Resources Management and Corporate Management career fields. In my current capacity, I routinely advise management on a wide variety of personnel laws, rules and regulations, as well as on Office of Personnel Management, Department of Defense, Department of Navy and NAVSEA personnel policies and procedures.

2. The Navy's Merit Promotion Program, contained in OCPM Instruction 12335.1, sets forth the Navy's policy regarding competitive (i.e., merit) promotions. This policy was established in November 1986 and has been in effect since that time. Attachment 1. In addition to Navy policy on merit promotions, NAVSEA Headquarters (HQ) has followed the implementing instructions of various organizations that have

provided civilian personnel support to NAVSEA HQ. NAVSEA HQ previously received civilian personnel support from the Consolidated Civilian Personnel Office (CCPO) in Crystal City, Virginia, and followed the policies and procedures of CCPO-CC Instruction 12335.1D. Subsequently, NAVSEA HQ received civilian personnel support from the Navy's Human Resources Service Center (HRSC), Capital Region and followed HRSC Capital Region Instruction (HRSC-CAPINST) 12335. Although HRSC Capital Region was eliminated in August 2001, NAVSEA HQ has used HRSC-CAPINST 12335 as a "Standard Operating Procedure" (SOP) since that time.

3. Under the SOP, NAVSEA HQ Directorates and the Program Executive Offices (PEOs) have used merit promotion certificates for multiple selections under certain circumstances. In particular, after a merit promotion certificate is generated listing qualified candidates for one vacancy, the same certificate has been used for subsequent selections when the occupational series and grade level, the area of consideration and the knowledge, skills and abilities for the positions are the same; when the subsequent selection is made within 90 days of the issuance of the certificate; and when qualified candidates are still available for consideration. Attachment 2, section 13(l); Appendix A.

4. Although in the spring and summer of 2004 Navy policy would have allowed a manager to noncompetitively promote an employee when the provisions governing an "accretion of duties" promotion had been met, NAVSEA HQ policy during this time period prohibited noncompetitive "accretion of duties" promotions. In particular, on March 31, 2004, I attended a lunch meeting of the Business Transformation Executive Team (BTET) during which NAVSEA's Executive Director, Pete Brown, reiterated the NAVSEA HQ policy that noncompetitive accretion promotions were not authorized. This

policy is documented in minutes of that meeting which were issued by Ms. Bonita Flynn, Deputy Commander for Corporate Operations at NAVSEA. Attachment 3, p. 2. Thus, even if a NAVSEA HQ employee obtained a desk audit during this time period and the audit concluded that the position could be classified at a higher grade, managers within NAVSEA HQ and PEOs were not authorized to grant a noncompetitive "accretion of duties" promotion to the employee. NAVSEA HQ's departure from Navy policy was permissible since accretion promotions are discretionary in the first instance.

I declare under penalty of perjury that the foregoing is true and correct.

September 14, 2007
Date

WILLIAM D. MCCAFFERTY

DEPARTMENT OF THE NAVY
OFFICE OF CIVILIAN PERSONNEL MANAGEMENT
800 N. QUINCY STREET
ARLINGTON, VA 22203-1996

②

OCPMINST 12335.1
26 NOV 1986
/OCPM-21

## OCPM INSTRUCTION 12335.1

From:   Director, Office of Civilian Personnel Management

Subj:   DEPARTMENT OF THE NAVY MERIT PROMOTION PROGRAM

Encl:   (1) CPI 335, Promotion and Internal Placement
        (2) CPI S335-1, Evaluation of Employees for
            Promotion and Internal Placement

1.  Purpose.   To publish the revised Department of the Navy
Merit Promotion Program which supercedes all previous merit
promotion program guidance.

2.  Background.   This instruction sets forth Department of
the Navy policy regarding the Merit Promotion Program.  It
changes the program emphasis by increasing flexibilities to
the maximum extent allowed by law and regulation and provides
management officials with a much greater role in the merit
promotion process.

3.  Action

    a.  File enclosure (1) within the Basic Federal Personnel
Manual, Chapter 335.

    b.  File enclosure (2) within Federal Personnel Manual
Supplement 335-1.

DOROTHY M. MELETZKE
Director

Distribution:
(See page 2)

ATTACHMENT 1

OCPMINST 01235.1
25 NOV 1986

```
Distribution:      (2 copies each unless otherwise indicated)
SNDL  A            (Navy Department)
      21A          (Fleet Commanders in Chief and Detachment)
      23           (Force Commanders)
      24           (Type Commanders) (less 24J)
      26F          (Operational Test and Evaluation Force and
                   Detachment)
      26H2         (Fleet Training Group PAC) (San Diego and
                   Pearl Harbor, only)
      26L1         (Polaris Material Office LANT)
      26N1         (Headquarters Support Activity LANT)
      26Q          (Nuclear Weapons Training Group)
      26S1         (Mobile Technical Unit LANT) (MOTUS 2, 10 and 12,
                   only)
      26S2         (Mobile Technical Unit PAC) (MOTU 5, only)
      26U          (Surface Force Readiness Support Group)
                   (Charleston, only)
      26Z          (Shore Intermediate Maintenance Activity) (less
                   Pearl Harbor)
      26JJ         (Fleet Area Control and Surveillance Facility)
      26LL2        (Fleet Data Processing Service Center, PAC)
      26QQ2        (Special Warfare Group and Unit PAC)
      26RR         (COMNAVSPECWARGRU 1, only)
                   (Fleet Imaging Command, Fleet Audiovisual Command,
                   Center, Facility and Detachment) (less
                   FLTIMAGCOMLANT Jacksonville)
      26DDD        (Fleet Combat Systems Training Unit)
      27G          (Support Force)
      28C2         (Surface Group and Force Representative PAC)
                   (COMNAVSURFGRU MIDPAC, only)
      39B          (Construction Battalions)
      391          (Construction Battalion Maintenance Unit)
      40B          (Control of Shipping Officer) (Bahrain, only)
      41A          (Commander, MSC)
      41B          (Area Commander, MSC)
      41C          (Sub-Area Commanders, MSC)
      41D3A        (Offices, MSC) (United Kingdom, Honolulu, Pusan,
                   Alaska, Seattle, Long Beach, Norfolk and
                   Port Canaveral, only)
      42A          (Fleet Air Commands)
      42B1         (Functional Wing Commander LANT) (less
                   COMSEABASEDASWWINGSLANT)
      42B2         (Functional Wing Commander PAC) (less
                   COMLATWINGPACISAT)
      42D          (Fleet Aviation Specialized Operational Training
                   Group)
```

2

OCPMINST 12335.1

Distribution (Continued):
42P1       (Patrol Wing and Squadron LANT (VP) (VPU))
           (PATWING 5, 11, only)
42P2       (Patrol Wing and Squadron PAC (VP)(VPU))
           (PATWING 1, 2, 10, PATWINGSPAC DET ADAK, PATWING
           ONE DET Agana, Cubi Point, Kadena, Misawa, only)
SNDL PART 2    (Naval Shore Activities) (less A, B, C40, C43B,
           C7, E3A (NRL), FA10, FB36 (ADAK,AK), FF38, FJC1, FKP1G,
           FKR1A, FKR4A, FT31, and V)
B3         (College and University)
D1D        (Office of Civilian Personnel Management) (100)
E3A        (Laboratory ONR) (NRL, only)
FA10       (Submarine Base LANT) (4)
FF38       (Naval Academy) (4)
FKP1G      (Naval Ship Weapon Systems Engineering Station) (4)
FKR1A      (Air Station NAVAIRSYSCOM) (6)
FKR4A      (Missile Test Center) (6)
FT31       (Training Center) (7)
MARCORPS L27   (200)

Copy to:
SNDL B5
B7         (U.S. Coast Guard) (COMDT COGARD, only)
           (Inter-Service Civilian Personnel Support
50A        Activities)
           (Unified and Specified Commands) (USCINCPAC and
S/MCPO (3)    USCINCLANT, only)
NPPSO/DW
CNO (OP-09BC)

Stocked:
CO, NAVPUBFORMCEN
5801 Tabor Avenue
Phila., PA 19120-5099 (500 copies)

3

OCPMINST 12335.1

CPI 335

# PROMOTION AND INTERNAL PLACEMENT

FILE WITHIN BASIC FPM CHAPTER 335
This CPI is to be read in conjunction with
corresponding sections of the FPM chapter.

Subchapter 1.    General Provisions

## 1-1.   INTRODUCTION

a.   Approach.   This instruction sets forth Department of
the Navy policy regarding the Merit Promotion Program.   It
changes the program emphasis by increasing flexibilities to
the maximum extent allowed by law and regulation and provides
management officials with a much greater role in the process.
The Merit Promotion Program must, however, be administered
following the provisions of the Department of Defense Program
for Stability of Civilian Employment and career program
requirements.

b.   Objectives.   The following program objectives must be
considered in developing and administering activity merit
promotion programs:

(1) Simplicity and efficiency are essential to reduce
costs and increase understanding of the program.

(2) The program must be flexible and not unduly
restrict the options of selecting officials in the areas of
selection sources, methods of evaluation, areas of
consideration, etc.

(3) Legal and regulatory compliance is mandatory.

(4) Effective interrelationship with other personnel
programs, such as the performance management program, must be
maintained.

(5) The program must foster the confidence of the
managers and applicants it is intended to serve.

(6) The ultimate objective is prompt identification
and selection of high quality candidates.

c.   Roles and responsibilities.   Development and
operation of a merit promotion program require a joint effort
of management and personnel officials.

OCPMINST 12335.1

CPI 335

(1) <u>Management Officials</u>.  Managers and supervisors are the ultimate personnel managers of the Navy.  They are responsible for making selections and, if they wish, evaluating candidates.  Accountability for the end result (e.g., fair and equitable treatment without regard to nonmerit factors, fair and open competition, and selection based on relative ability, knowledge, and skills) rests with the selecting official.

(2) <u>Civilian Personnel Officials</u>.  The function of personnel specialists is to assist managers in accomplishing their responsibilities.  They determine basic qualifications of applicants and provide advice and support to managers (e.g., evaluation procedures, locating candidates, etc.).

1-2.  <u>DEFINITIONS</u>

i.  <u>Noncompetitive candidates</u> are those whom the activity has the authority to appoint or place without evaluation and competition under the provisions of FPM 335, FPM S335-1, CPI 335, and CPI S335-1 (such as reinstatement eligibles, 30 percent disabled veterans, etc).
reassignment eligibles,

1-3.  <u>MERIT PROMOTION PLANS</u>

b.  <u>Coverage of merit promotion plans</u>.  This instruction applies to all positions in the competitive service and positions which are temporarily in the excepted service (VRA, handicapped, etc.) with the exception of SES, GS-16 and above.  Provisions of this instruction may be used, to the extent desired, for excepted service positions.

1-4.  <u>MERIT PROMOTION REQUIREMENTS</u>

Requirement 1.  <u>WRITTEN PROCEDURES FOR PROMOTIONS</u>

Activities must publish their merit promotion policies and procedures.  Instructions must include the policies adopted in those areas where discretion is allowed.  When activities have flexibility their merit promotion instructions must specify the options they have chosen.  Covered actions and exceptions to competitive procedures must be identified.  When personnel offices service more than one activity, a single plan may be used provided activity management participates in and concurs with the plan.

2

OCPMINST 12335.1

CPI 335

## Requirement 2.   CANDIDATE SEARCH

a.   Area of Consideration.   The area of consideration (AOC) is a geographic and/or organizational area in which it is expected sufficient high quality candidates may be located.   The minimum AOC is an appropriate subdivision of an activity which will produce sufficient high quality candidates unless otherwise dictated by career programs.   In determining the AOC, managers and personnel officials must consider:

(1) EEO goals and objectives;

(2) The likelihood of producing sufficient high quality candidates without unreasonably restricting fair and open competition;

(3) Infusion of new ideas and strengths into the organization; and

(4) Budgetary constraints and cost-effectiveness.

b.   Methods of Locating Candidates.   Candidates may be located using a wide range of methods, which may vary with each vacancy, dependent upon the area of consideration, the type of position, and other similar considerations. Activities must identify the methods they will use in their merit promotion instructions.   Examples include skills files, vacancy listings, individual vacancy announcements, and management identification of all candidates.   The latter is an option when the AOC is small enough that all candidates in the AOC may be evaluated and considered for the position. Its use is appropriate when the AOC is small enough that all potential candidates are known to the selecting official. Activities must develop procedures to document the evaluation and consideration process if they elect to use this method.

c.   Application Methods.   Several means of obtaining information concerning applicants are available, including interest cards (with qualifications information obtained from OPF's, skills files, etc.), activity-developed application forms, resumes, management identification of candidates (evaluation of all candidates within the AOC without announcing the vacancy), and SF-171's.   Activities may use any or all of these methods, dependent upon costs, job market factors, etc., but must advise applicants of the appropriate means of being considered for each vacancy.   Use of SF-171's

3

OCPMINST 12335.1

CPI 335

is not required. Activity-developed forms must include a Privacy Act statement.

d. Acceptance of Applications. Activities may accept applications during the open period of an announcement, from candidates who will meet time in grade and other requirements after the closing date for the vacancy if that fact is made known to applicants. Regardless of the AOC, activities must accept applications from spouses of relocating active duty military members and DOD civilian employees during the 30 days preceeding through the 6 months following their sponsor's relocation to the activity's commuting area.

Requirement 3.        EVALUATION OF CANDIDATES

a. Basic requirements. Regardless of the number of candidates, evaluation procedures must:

(1) Use multiple assessment measures, such as experience, education, training, awards, and annual performance ratings;

(2) Include job analysis to predetermine pertinent knowledges, skills, and abilities (KSA's);

(3) Be applied uniformly; and

(4) Include consideration of the annual performance appraisal, to the extent that it is relevant to the position being filled.

b. Evaluation methods. A range of evaluation methods may be used. Whatever method is used must be consistent with the provisions of FPM and CPI S335-1. The extent of evaluation may vary, dependent upon the number of applicants, the type of position, and other considerations. Abbreviated procedures may be applied to evaluate candidates when there is a small number of eligibles. Such procedures may also be applied to reduce the number of candidates to be evaluated when there is a large number of candidates and thorough evaluation of all is not desirable. See CPI S335-1 for guidance concerning abbreviated rating procedures.

c. Evaluators. Evaluators should be knowledgeable enough about the job to understand job requirements and applicants' experience in order to rate candidates. Promotion program candidates may be evaluated by:

4

OCPMINST 12335.1

CPI 335

(1) Selecting officials;

(2) Personnel officials; or

(3) Other knowledgeable management designees.

d. _Panels_. Neither rating nor selection panels are required.

## Requirement 4. RIGHT TO SELECT

a. _Referral_. Referrals of competitive candidates will follow the provisions of FPM 335, this instruction and FPM/CPI S335-1. Non-competitive candidates may be referred at any time in the recruitment and evaluation process.

b. _Interviews_. At the activity's option, the selecting official may interview none, any or all of the best qualified candidates.

c. _Selection_. The selecting official retains the right to select from sources other than the Merit Promotion Program at any time during the recruitment and evaluation process.

d. _Release of employees_. Selectees will normally be released as follows:

(1) _Promotion_. Within two weeks.

(2) _Reassignment_ or _change to lower grade_. Within 30 days.

(3) _Overseas_. Within 45 days.

## Requirement 5. PROMOTION SYSTEM ADMINISTRATION

a. _Records_. Activities will develop record keeping procedures to insure the capability exists to reconstruct promotion actions and to maintain required records consistent with provisions of FPM 335. Maintenance of records does not require an activity to keep every application submitted, nor does it require an activity to keep all records pertaining to a promotion action in a single case file. Information may be maintained in various locations; e.g. position description files, automated systems, etc., as appropriate. In order to facilitate reconstruction, the case file should include the location of information which is stored elsewhere.

5

OCPMINST 12335.1

CPI 335

b. Disclosure of information. Disclosure of merit
promotion information will follow guidance contained in the
Privacy and Freedom of Information Acts and FPM Supplement
335-1, subchapters 5-3 and 6-1. All candidates must have
equal access to information on merit promotion processes and
procedures. Information that might give some candidates an
unfair advantage shall not be released.

1-5. COVERED PERSONNEL ACTIONS (EXCEPTIONS)

c. (1) (b) When accretion of duties is included as an
exception, the following requirements must be met:

(1) The major duties of the employee's old position
are absorbed into the new position, and the former is
cancelled:

(2) The new position has no known promotion
potential; and

(3) The additional duties do not adversely affect
another incumbered position.

c. (8) Temporary promotion of an employee for more than
120 days to a grade level previously held on a permanent
basis (except when the employee was demoted for personal
cause).

c. (9) Repromotion of a current Federal employee in the
competitive service to a grade (or equivalent level in
another pay system or intervening grade) previously held
on a permanent basis in the competitive service (except when
demoted for personal cause).

c. (10) Reassignment, demotion, or promotion (including
transfer) to a position having no higher promotion potential
than that held or previously held on a permanent basis in the
competitive service (except when demoted for cause). For
example, a GS-4 who has held a GS-5 with promotion potential
to GS-9 could be non-competitively placed in any position
having promotion potential to GS-9 or below, if otherwise
qualified.

OCPMINST 12335.1

CPI 335-A

Appendix A.  _General Regulatory Provisions_

A-4.  CORRECTIVE ACTIONS

e.  _Order of precedence._  When practicable, all persons entitled to priority consideration or similar remedy should be referred together to the selecting official.  When more than one entitlement exists distinctions must be made in order of the sources of the entitlements, e.g., law or court order first, followed by government-wide regulation, followed by agency policy.

A-5.  PRIOR CONSIDERATION

a.  Activities must establish plans to refer employees who are entitled to prior consideration before taking any other action to fill a vacant position (except the placement of an employee with statutory or regulatory rights). Employees are to be referred in the following order:

(1) Employees on retained grade/pay (see DOD 1400.20-1-M, Appendix B of October 1981).

(2) Employees who did not receive proper consideration for promotion due to a procedural, regulatory or program violation.

(3) Priority Placement Program registrants in priorities 1, 2, 2R and 3.

| For information on: | See: |
|---|---|
| Career Programs | |
| Details | |
| Grievances | FPM/CPI 950, 410 |
| Nepotism | FPM/CPI 300.8 |
| Priority Placement Program | FPM/CPI 711, 771 |
| | FPM 310 |
| Qualifications | CPI 330.8, |
| Selection interviews | DOD 1400.20-1-M |
| | FPM 338 |
| Time in grade restrictions | FPM 332-APP 1, |
| | S335.1-B-8e(3) |
| | FPM/CPI 300.6 |

Appendix A
to CPI 335

OCPMINST 12335.1
2 8 ???

CPI S335-1-B

APPENDIX B. Guidelines For Evaluating Employees For Promotion and Internal Placement

B-1.    INTRODUCTION

a.    This appendix provides guidance regarding the development and application of evaluation procedures for use in activity merit promotion programs. Each activity is authorized to develop evaluation procedures which are suitable to meet the activity's needs, subject to the approval requirement of S3-1(e) above. A single procedure need not be used for all positions within an activity. Different procedures may be developed for various types of positions, and for use with different numbers of applicants. Applicants for the same position, however, must be evaluated in the same manner. Candidates for Federal Wage System (FWS) positions may be evaluated by any of the above methods. OPM Handbook X-118C may also be used for FWS positions to the extent it meets the requirements of FPM S335-1 and this instruction.

b.    Definitions

(1) Selective placement factors. Knowledges, skills, or abilities (KSA's) which are required to establish basic eligibility for a position, e.g., knowledge of FORTRAN programming language is a proper selective factor for a GS-11 Computer Programmer position when a substantial portion of the job is FORTRAN programming.

(2) Quality ranking factor. KSA which provides a candidate with a significant quality advantage over other candidates. It is desirable, but not absolutely essential to satisfactory performance, e.g., overseas experience in a related line of work may be a suitable quality ranking factor for a position which does not require overseas experience but is located overseas or has substantial dealings with an overseas activity.

(3) Summary ranking factor. KSA which includes all of the essential requirements of a position combined, e.g., "ability to do the work of the position under normal supervision."

B-4.    OVERVIEW OF THE EVALUATION PROCESS

f.    Application of evaluation procedures. Although the requirements identified above must be satisfied for

B-1

Appendix B
to CPI S335-1

OCPMINST 12335.1
25 - - 1988

CPI S335-1-B

evaluation of all applicants for promotion, regardless of the number, the degree to which formal evaluation is conducted and documented may vary.

(1) Small numbers of candidates. When evaluating a small number of qualified promotion applicants, activities may use abbreviated procedures in lieu of detailed, formal evaluation. When using these procedures, documentation of such evaluations may take the form of short narratives related to the KSA's explaining the basis of the differentiation between the two groups. Two examples of abbreviated procedures follow:

(a) Candidates may be grouped into "qualified" and "best qualified" groups based upon a general overview of their qualifications as they relate to the KSA's identified for the position.

(b) Evaluation Based on Summary or Quality Ranking Factor. A summary or quality ranking factor may be used to group the promotion candidates into "qualified" and "best qualified" groups.

(2) Large Numbers of Candidates

(a) Initial grouping. Large numbers of candidates may be reduced to more manageable levels through use of an abbreviated evaluation procedure. Examples of two abbreviated procedures follow:

(1) Use of a summary or quality ranking factor as described above.

(2) Removing from further consideration candidates with an annual performance rating below fully successful, if relevant to the position being filled.

(b) Rating/ranking. After the initial grouping, the candidates selected to continue the evaluation process are formally evaluated using the activity's evaluation method.

B-7. NEED FOR ANALYSIS OF JOBS

b. Scope of job analysis

(5) Job analysis need not be an involved or cumbersome process. It involves the determination of the

Appendix B
to CPI SJ35-1

B-2

OCPMINST 12335.1

CPI S335-1-B

major duties of a position and the KSA's necessary to accomplish them. The selecting official has normally completed much of the job analysis in developing the critical elements of the position upon which an employee's performance will be evaluated. There is generally a correlation between one or more of the factors used to evaluate a candidate's background prior to selection and those used to evaluate an employee's performance after placement. The logical time to conduct the job analysis is when the position is established or performance standards written. The job analysis can be conducted by the supervisor or a personnel official, at any time, as long as the selecting official certifies the currency of the KSA's prior to beginning the recruitment process. Attachment (A) includes an example of job analysis.

B-8.  TYPES OF EVALUATION METHODS

   b.  Evaluation of training, education and experience

      (2) Attachment (B) includes several examples of evaluation methods which may be used by Naval activities. The examples are not all-inclusive.

   g.  Selection of evaluators. Regardless of the selecting official, candidates may be evaluated by the management designee. A personnel official, or any qualified is based on the wishes of management, the choice of an appropriate evaluator applications, the level and sensitivity of the position, the extent of the rating being conducted, and other similar factors. Rating panels are not required and selecting officials are not prohibited from serving as the sole rater.

B-11.  GENERAL PRINCIPLES ON ARRANGING EMPLOYEES IN ORDER OF
      MERIT

   a.  Introduction. When referral lists include more than the best qualified, candidates must be identified in categories of qualified and best qualified.

   b.  Principles

      (3) Activities must develop procedures for referral of applicants for selection consideration when all candidates are not referred to the selecting official. Setting a policy whereby a fixed number (e.g. the top five) of candidates constitute the "best qualified" is not recommended. Referral of those candidates above a naturally occurring break point

Appendix B
to CPI S335-1

OCPMINST 12335.1
2 6 NOV 1985

CPI S335-1-B

is one means of identifying the "best qualified" (e.g. 4 candidates with scores of 90, 2 with 88, one with 86, and 5 below 78. A natural break occurs at 86 points).

B-12. COMBINING RESULTS OF VARIOUS INSTRUMENTS

b. Methods of combining scores.

(4) See Attachment (B) for examples of methods of combining scores for training, education and experience.

c. Relating information to elements rather than total job.

(1) See Attachment (B) for a discussion of job element rating.

Appendix B
to CPI S335-1

OCPMINST 12335.1

2 6 NOV 198

CPI S335-1-B

## Attachment A
## JOB ANALYSIS EXAMPLE

This example shows how job analysis produces one of the KSA's
for a position.

Job Requirement - Develops written activity policies and
procedures.

Critical element - Communicates policies to managers and
employees.

Fully successful performance - Writes clear/concise
documents and reports which reflect sound judgment.

KSA - Ability to communicate in writing.

Fully satisfactory for recruiting purposes - Prepares
written department directives or other written products
which are clear, concise and grammatically correct.

Attachment A
to Appendix B

OCPMINST 12335.1
2 6 NOV 1996
CPI S335-1-B

Attachment B
Examples of Evaluation Methods
for Training, Education and Experience

Among the more flexible evaluation methods are those which assign points for various evaluation measures (e.g. education, training, annual performance rating, etc.) separately, with a final score derived from combining the various measures.    Examples 1 and 2 are just two of many ways of looking at available information and assigning points as the information relates to the experience, performance rating, education, etc., which are needed for the position. Activities adopting this method are reminded that the following are examples only, and are not to be used without analysis of the point distributions and the selection of evaluation factors to verify their adequacy for the position(s) being filled.    Example 3 describes job element rating in which the various measures are considered together in arriving at a score for each KSA and shows how points might be assigned for a sample KSA.    Example 3 looks at the total available information on experience, performance rating, etc., and assigns points to each as it relates to the KSA's for the position.

## Example #1

| Factor | Point Range* | Point Allocation* |
|---|---|---|
| Experience | 0 - 50 | 50 - experience is sub-stantially similar to the position being filled.<br><br>35 - experience is such that the candidate could perform the duties of the position within a reasonable time.<br><br>20 - experience is the minimum acceptable level for entry into the position. |

*Point ranges and allocations are provided as examples only.    Evaluators should justify the points assigned. Table continued on following page.

OCPMINST 12335.1

CPI S335-1-B

| Factor | Point Range* | Point Allocation* |
|---|---|---|
| Annual Performance Rating | 0 - 30 | 30 - Outstanding rating in related position. 20 - Highly satisfactory in related position. 10 - Satisfactory in related position or higher in unrelated position. |
| Education/ Training | 0 - 10 | 10 - Education in directly related field. 5 - Education in generally related field. 2 - Education shows ability to learn work. |
| Awards | 0 - 10 | 10 - Two QSI's or SSP's or one of each. 5 - One QSI or SSP. 2 - Commendation. |

In this example, experience forms the bulk of the rating. Points are given for education, awards and performance ratings based on the allocations shown in the chart. Points could be allotted on an all or nothing basis, where a minimum acceptable level is described, or, as above, by describing different point levels based upon varying quality levels.

*Point ranges and allocations are provided as examples only. Evaluators should justify the points assigned.

Attachment B
to Appendix B

OCPMINST.12335.1
·· · · 1996

CPI S335-1-B

## Example #2

This alternative involves assigning scores for each KSA without combining all of the assessment.measures.  For each KSA, the candidate's experience, education, awards, etc, are credited separately.  The following table shows how points might be allotted:

| KSA | Point Allocation* | | | | |
|-----|------------|--------------|--------|-----|-------|
|     | Experience | Education/Tr | Awards | APR | Total |
| #1  | 15         | 3            | 2      | 5   | 25    |
| #2  | 15         | 5            | 2      | 3   | 25    |
| #3  | 20         | 0            | 0      | 5   | 25    |
| #4  | 15         | 3            | 2      | 5   | 25    |
| Total | 65       | 11           | 6      | 18  | 100   |

In this example, a total of 100 points is possible, with the point distribution based on the importance of each of the evaluation measure varying with the KSA's.  The table shows only the point distribution.  An evaluation plan would include descriptions of the types and levels of each measure which would be credited at various point levels.

*Point ranges and allocations are provided as examples only.  Evaluators should justify the points assigned.

## Example 3

Job element rating involves use of combined benchmarks/ level descriptions for each of the KSA's.  Such descriptions define what is acceptable for assignment of a given point level, with all evaluation measures being included in the description.  When using this type of rating plan, activities may use a three, four or five point rating scale.  At the activity's option, one or any of the following scales may be used.  There is no requirement to rewrite existing crediting plans as long as they are accurate and reflect the current duties of the position.  The three point scale is the only scale which permits the definition of just one of the point levels.  Additional information regarding job element rating may be found in FPM Supplement 335-1.  The following samples show how level descriptions might be written for each rating scale for the KSA "Ability to communicate in writing":

Attachment B
to Appendix B

OCPMINST 12335.1

CPI S335-1.3

SUBCHAPTER S3.    Responsibility For Approval of Evaluation Procedures

S3-1.    GENERAL

d.    Authority to develop evaluation procedures which are consistent with the provisions of FPM S335-1, subchapter S2-1 is delegated to activity Civilian Personnel Offices (CPO's). OCPM Headquarters and Regional Offices will answer questions and provide assistance as needed in developing such procedures. Nothing in this instruction should be construed to limit the authority of major commands/claimants to develop procedures for use by subordinate activities or place limitations on the options available to them.

e.    Activities may develop their own evaluation programs and procedures within the context of the guidance and examples given in FPM/CPI Supplement 335-1. Procedures which require agency approval (e.g., tests), or that are significantly different from the guidance and examples given in FPM/CPI Supplement, must be approved by OCPM Headquarters prior to use. In addition to the information specified in FPM Supplement 335-1, subchapter S3-4, submissions must include descriptions of the work covered by the test/procedure, identification of expected uses, explanation of the rationale for using the instrument, development methodology, examples demonstrating use of the proposed instrument, and a way of evaluating its operational effectiveness.

S3-3.    EVALUATION PROCEDURES REQUIRING SPECIFIC OFFICE OF PERSONNEL MANAGEMENT APPROVAL

b.    FPM Supplement 335-1, subchapter S3 specifies that authority to submit requests for OPM approval of evaluation procedures must be retained at agency headquarters. Accordingly, evaluation procedures requiring OPM approval, including commercial tests not developed by or for the Department of the Navy, must be submitted to OPM through the chain of command via OCPM Headquarters. FPM S335-1, subchapter S3-4 describes criteria for acceptability of evaluation procedures.

OCPMINST 12335.1

24 JIN 1966

CPI S335-1.i

EVALUATION OF EMPLOYEES FOR PROMOTION AND INTERNAL PLACEMENT

FILE WITHIN FPM SUPPLEMENT 335-1
This instruction is to be read in conjunction
with corresponding sections of FPM S335-1

SUBCHAPTER S1.   Introduction

S1-2.   APPLICABILITY

CPI S335-1, Appendix B contains Department of the Navy
guidance concerning evaluation procedures.





**DEPARTMENT OF THE NAVY**
**HUMAN RESOURCES SERVICE CENTER, CAPITAL**
Nebraska Avenue Complex
291 Cryptologic Court NW
Washington, DC 20393-5442

12335
Ser 53/00-166
08 Jun 00

From: Director, Human Resources Service Center (HRSC), Capital

Subj: IMPLEMENTATION OF MERIT PROMOTION PLAN

Encl: (1) HRSC-CAPINST 12335 dtd 8 Jun 00

1.  As you are aware, since our stand-up, HRSC Capital has relied on various non-standard procedures contained in activities' local merit promotion plans for internal recruitment (merit promotion) processes. On January 14, 2000 HRSC Capital issued a draft plan for comment. All comments received have been considered and many of those suggested comments have been incorporated in this final plan. Enclosure (1) outlines the HRSC Capital Merit Promotion Plan.  Please note that the adoption of this plan will apply only to non-bargaining unit employees at your activities until such time as bargaining can be accomplished. This plan will be effective on July 16, 2000.

2.  The Department of Navy has required that all Human Resources Servicing offices implement the use of the Standard Automated Inventory and Referral System (STAIRS). The key element to this new technology is commercial off-the-shelf applicant referral software called Resumix. This system will be used to fill positions, which would normally be filled through the merit promotion process. HRSC Capital serviced activities will be included under STAIRS in a phased plan. Enclosure (1) highlights any areas of merit promotion which require defined processes due to the STAIRS implementation.

3.  Where activities must bargain before implementation, we request HROs identify covered employees. We will defer implementation until bargaining obligations are met. Our POC on bargaining is Stan Schoen at (202) 764-1004.

JEAN M. CAZAUBON

Distribution:
Director, HRO-W
Director, HRO NAVACAD
Director, HRO NSSC
Director, HRO NSWC Carderock
Director, HRO NSWC Dahlgren
Director, HRO NSWC Indian Head
Director, HRO ONR
Director, HRO S/HHRO

ATTACHMENT 2

## QUALIFICATIONS REVIEW RECORD FORM

**CONTACT:**

hone_____/Letter_____

_____

es___/No___

**Date**

**Timely:**

| APPLICANT'S NAME | | | | |
|---|---|---|---|---|
| ANN. NO. | TITLE | | | |
| RANKING FACTORS | COVERED IN GRIEVANCE Yes (Y)  No (N) | REVIEW | CHANGES MADE | A - ADD. INFO E - ERROR C - RATING CHANGE |
| EXPERIEN CE | | | | |
| APPRAISAL | | | | |
| EST | | | | |
| EDUCATIO N | | | | |
| RAINING | | | | |
| AWARDS | | | | |
| ▮▮▮▮▮▮▮▮▮▮ | | | | |
| ) | | | | |

| 2) | | | | |
|---|---|---|---|---|
| 3) | | | | |
| 4) | | | | |
| 5) | | | | |

**FINDINGS & COMPUTATIONS:**

| SIGNATURE: | DATE: |
|---|---|



**DEPARTMENT OF THE NAVY**
**HUMAN RESOURCES SERVICE CENTER CAPITAL**
**NEBRASKA AVE COMPLEX**
**3801 NEBRASKA AVENUE NW**
**WASHINGTON DC 20393-5442**

HRSC-CAPINST 12335
HRSC 53

08 JUN 2000

## HRSC CAPITAL INSTRUCTION

From: Director, Human Resources Service Center (HRSC), Capital

Subj: MERIT PROMOTION PLAN

Ref:    (a) 5 CFR 300
        (b) 5 CFR 330
        (c) 5 CFR 335
        (d) CPI 335

1.  Purpose.  To describe merit promotion procedures set forth in reference (a), thru (d).

2.  Scope.  This instruction applies to all activities receiving staffing services from the HRSC Capital. This instruction does not cover senior level positions. The provisions of any current or subsequent negotiated labor-management agreement take precedence over this instruction for covered employees. Demonstration regulations may augment this instruction. This instruction supercedes all previously issued Human Resources Office Merit Promotion Plans.

3.  Background.  The Department of the Navy (DON), has required that all Human Resources Servicing offices implement the use of the Standard Automated Inventory and Referral System (STAIRS). This new way of doing business is more streamlined and takes advantage of state-of-the-art information technology. The key element to this new technology is commercial off-the-shelf applicant referral software called Resumix . This system will be used to fill position normally filled through the merit promotion process. HRSC Capital serviced activities will be included under STAIRS in a phased plan. This plan is intended to cover all serviced activities regardless of STAIRS implementation stage.

4.  General Provisions.

    a.  The identification, qualification, evaluation and selection of candidates shall be made without regard to political, religious or labor organization affiliation or non-affiliation, marital status, race, color, sex, national origin, non-disqualifying physical handicap, age or sexual orientation and shall not be based on any criterion that is not job-related.  This agency provides reasonable accommodations to applicants with disabilities. Automated tool(s) may be used to complement the merit staffing process to the extent practicable and feasible.

    b.  Pursuant to 5 USC 7201, each activity has an obligation to ensure that it's recruitment

programs are designed to eliminate underrepresentation of minorities and women. To meet this objective, Human Resources Office (HRO)/HRSC Capital officials and selecting officials will make every effort to identify and contact appropriate organizations that refer candidates to solicit minorities and women for vacancies for which recruitment is being conducted outside the activity.

c.  Supervisors and public officials are prohibited from participating in any portion of any selection process if a relative is under consideration. Neither supervisors nor public officials may advocate the selection of a relative. This does not preclude them from responding to an appraisal on a relative, provided they refrain from advocating, and annotate the relationship on the form.

1) Advocating would also include the referral of an application of a relative for consideration for employment, promotion, etc.

2) If a relative of the selecting official is among the candidates certified for selection, he/she must disqualify himself/herself and selection authority must be exercised at a higher level in the chain of command.

3) While working for relatives is not specifically prohibited, in all cases this kind of situation should be avoided. If it exists, consideration should be given to moving one or the other to some other part of the activity.

d.  Management reserves the right to fill positions by methods other than merit promotion, which may be used exclusively or concurrently with other methods/sources. Other sources may include, selections from Office of Personnel Management (OPM) registers, delegated examining, the Reemployment Priority List (RPL) or Department of Defense Priority Placement Program (PPP); selections of noncompetitive candidates; appointments made under Veterans Readjustment Authority (VRA), Veterans Employment Opportunity Act (VEOA), Schedules A, B or C, the Interagency Career Transition Assistance Program (ICTAP) or other appropriate authorities.

e.  Vacancies may be postponed, canceled, expanded or filled on a temporary basis in order to meet staffing needs, and provided merit promotion requirements are met. However any of these actions must be completed within the guidelines of the (PPP).

f.  All actions are subject to mandatory provisions of the PPP and any other applicable priority consideration programs.

g.  Positions for which DOD and /or Department of the Navy (DON) have established career programs will be filled in accordance with applicable career program instructions.

h.  Additional requirements of negotiated bargaining will be incorporated in the merit staffing process.

5. Appendix A provides definitions for the terms used in this plan.

6. Coverage. Per reference (c), competitive procedures will be applied to covered personnel

2

actions as described below, unless excluded under <u>Exceptions to Merit Staffing Procedures,</u> described in paragraph 7:

a.  Promotion, reassignment, demotion, position change, transfer or reinstatement to a position with more potential than any position the employee holds or previously held on a permanent basis in the competitive service (except as permitted by reduction-in-force (RIF) regulations).

b.  Temporary promotions that exceed 120 days. (In computing the 120 days, an individual's non-competitive temporary service in all higher graded positions during the preceding 12 months is counted, including details and other temporary and term promotions).  A time-limited promotion must have a definite no-to-exceed date.  Time-limited promotions need not be in one-year increments and may be extended up to a total of five years.  Extensions beyond five years are subject to prior OPM approval.  Return to the position from which promoted, or to a different position of equivalent grade and pay, are not subject to adverse action or RIF procedures.  A time-limited promotion is not to be used as a means of training or evaluation of an employee in a higher graded position.  A temporary promotion may be made permanent without further competition provided it was originally made under competitive procedures and the fact that it might lead to a permanent promotion was made known to all potential candidates.

c.  Term promotions.

d.  Details that exceed 120 days to higher graded positions or to positions with more promotion potential (service is counted toward the 120 day limitation in the same manner prescribed in paragraph 6b above).  Competitive details (regardless of grade) may be extended up to a maximum of one year.  Exception:  The maximum is two years for details to positions in an organization undergoing a commercial activities (A-76) study.

7.  <u>Exceptions to Merit Staffing Procedures.</u>  Competitive procedures do not apply to:

a.  A promotion resulting from the upgrading of a position without significant change in the duties and responsibilities due to issuance of a new classification standard or the correction of classification error.

b.  A position change permitted by reduction-in-force procedures in CFR 351.

c.  Career promotions of employees when competition was held at an earlier date either through appointment from an OPM register or through internal merit promotion procedures (including the initial appointment of students in the Student Career Experience Program and in the Federal Junior Fellowship Program).  The intent to promote must be made a matter of record.

d.  A promotion resulting from an employee's position being reclassified at a higher grade because of additional duties and responsibilities.

3

e. A temporary promotion or detail to a higher graded position or a position with known promotion potential of 120 days or less.

f. Promotion, reinstatement, or transfer to a grade previously held on a permanent basis in the competitive or in another merit system with which OPM has an interchange agreement approved from which an employee was separated or demoted for other than performance or conduct reasons.

g. Promotion, reassignment, demotion, transfer, reinstatement, or detail to a position having promotion potential no greater than the potential of a position an employee currently holds, or previously held on a permanent basis in the competitive service or, in another merit system with which OPM has an interchange agreement approved. The previously held grade must not have been lost due to performance or conduct reasons.

h. Consideration of a candidate not given proper consideration in a competitive promotion action.

i. Promotion resulting from successful completion of a training program for which the employee was competitively selected.

j. Temporary promotion of an employee for more than 120 days to a grade level previously held on a permanent basis, except when the employee was demoted for cause.

k. Re-promotion to a grade or position which an employee previously held on a permanent basis and was demoted without personnel cause.

l. Permanent promotion to a position held under temporary promotion or detail when originally made under competitive procedures and possibility for permanent action was identified in the vacancy announcement or recruitment bulletin.

m. Other exceptions as they are incorporated in reference (c).

8. Responsibilities.

a. The HRSC Capital Director has the overall responsibility of establishing and administering a sound merit promotion program. Before a position may be filled by merit promotion, the PPP, and other appropriate priority consideration programs will be applied.

b. Head of activities may delegate selection authority to the lowest practicable level including the immediate supervisor of the vacancy. A level of management authority higher than the immediate supervisor may assume selection authority for a specific action or on a continuing basis at the discretion of Heads of activities.

c. Managers and supervisors are accountable for fair and equitable treatment of promotional candidates without regard to non-merit factors; fair and open competition; and

4

evaluation and selection based on knowledge, skills and abilities (KSAs). In exercising this responsibility, managers and supervisors will comply with the provisions of this plan, promptly identify anticipated staffing needs and, as required or desired, identify, recruit and evaluate candidates.

d. When evaluation and/or selection advisory panels are used, members will comply with the provisions of this plan.

9. Prior Consideration. Certain activity employees may be entitled to prior consideration before any other eligible candidates may be referred (except the placement of an employee with statutory or regulatory return rights). Prior consideration employees will be referred in the following order:

a. Law, court or other regulatory agency ordered referral.

b. Agency decision/settlement between parties.

c. Qualified employees who did not receive proper consideration for promotion in a previous case due to a merit staffing procedural, regulatory, or program violation. The HRSC or higher level authority determines entitlement after reconstruction. Entitlement is limited to the first vacancy in the activity for which prior consideration was lost that (1) occurs within one year of the determination that the employee was not afforded proper consideration; (2) is a similar type position in the same pay system as the position for which the employee failed to receive proper consideration; (3) the employee is qualified for and would be in the highly qualified group ranked by a subject matter expert or rating official against the crediting plan; (4) is at the same grade level with no higher potential than the position for which consideration was lost; and (5) the employee meets selective placement factors, where applicable. Since prior consideration is only granted once each time proper consideration is denied, it is important that the employee is given bonafide consideration. Should more than one employee be entitled to prior consideration on this basis for the same position, they will be considered together. There is no entitlement to selection. Management documentation is required to show that the employee received proper consideration for placement.

d. Activity employees who have fully recovered from a job related injury.

e. Priority Placement Program registrants in priorities 1, 2, and 3. All managers and supervisors shall support the PPP, the purpose of which is to place employees who have been adversely affected by base closures, reduction-in-force, consolidations, transfers of function, reclassification of positions resulting in retained grade, etc.

10. Methods of Locating Candidates.

a. Area of Consideration (AOC). The AOC should be broad enough to allow for a sufficient number of qualified applicants, but narrow enough that an excessive number of applicants will not result. In determining the AOC, managers must consider EEO goals and

objectives; the likelihood of producing sufficient high quality candidates without unreasonably restricting fair and open competition; infusion of new ideas and strengths into the organization; and budgetary constraints and cost-effectiveness. The appropriate management will make AOC determinations official. Prior to making this determination the management official should discuss the appropriate AOC with their HRO specialist. The minimum AOC, for all merit promotion recruitment actions may be an appropriate subdivision of the command/activity. The AOC may be expanded if the selection official does not choose to select any of the qualified eligible. The AOC will be described geographically and organizationally. The duration of time for accepting applications will be consistent with the AOC. One of the following geographically descriptive AOCs should be used.

1. A subdivision within the activity (internal command higher level approval may be required prior to use of this AOC);
2. Activity-wide only;
3. Command-wide only;
4. Department of Navy activities within the commuting area;
5. Department of Defense activities within the commuting area;
6. Federal agencies within the commuting area;
7. Navy activities, world-wide or nation-wide;
8. DOD activities, world-wide or nation-wide;
9. Federal agencies world-wide or nation-wide; or
10. Other AOCs may be constructed as appropriate
11. Non-competitive eligible may be considered concurrently (i.e., reinstatement or transfer eligible, reassignment eligible, 30 percent disabled veterans, etc.).

b. <u>Management Identification of Candidates(MIC)</u>. Where the area of consideration is limited to a subdivision of the activity, management may issue to all potential candidates in that AOC a memorandum which includes information on the vacancy, i.e., the title, series, grade level (or equivalent) and organizational location of the position. Other internal communication devices may also be used (i.e., e-mail, daily bulletins or activity newspapers) to inform prospective candidates. The selecting official will designate what application format, (if any), will be necessary to be considered (e.g., Personal Qualifications Statement, SF-171, a resume, or any other approved format). When this method is used to fill a position, the evaluation and consideration process will be documented by the selecting official. HRSC Capital will determine basic eligibility of candidates.

*If STAIRS is used then paragraph 11h is applicable.*

c. <u>Announcements</u>. Vacancies may be publicized by a local vacancy listing or announcement, management memorandums, electronic web sites or other appropriate methods. If paid advertisements are to be used, all cost are the responsibility of the activity. HRSC Capital will work with activities to determine appropriate method and length of announcements in accordance with bargaining unit agreements. All merit promotion vacancy announcements, other than MICs, will be publicized by the HRSC Capital via applicable web pages, DASN/HROC

6

and/or OPM. All merit promotion vacancy announcements must be opened for a minimum of five workdays.

    d. Establishment of Registers.

    a) Registers may be used when similar vacancies are anticipated over a period of time and referrals through this process will not affect the quality of candidates available for selection. The life of a register will be determined by such factors as frequency and number of vacancies being filled. Cut-off date(s) for acceptance and consideration of applications for registers, which are open continuously, will be stated in the vacancy announcement. When certificates are issued, the cut-off date(s) for acceptance and consideration of applications will be the date the certificate is issued.

    *b) Under STAIRS open continuous registers will be established for popular series and/or grade ranges where ever possible and as demonstrated by historical recruitment data. Registers opened under the STAIRS system will be maintained as follows:*

    *1) Applications remain active to the end of the sixth month from the date of receipt (e.g., if the application is received on 12/15, it remains active until 6/30). Unless an extension is requested through either e-mail or hardcopy a new resume must be submitted to be considered for future vacancies (e.g., after 6/30 in the example cited above).*

    *2) Applications become inactive at the employee's request, at the end of the sixth month, or when an employee is selected for a new permanent position.*

    *3) Only one active resume per candidate is permitted. Each additional resume submitted overrides the previous.*

    e. Absent Employee Referrals. An employee who is unable to file an application before the closing date of an announcement for legitimate reasons may file his/her application any time before the evaluation process has been completed. Legitimate reasons include: detail, on leave, training or active duty military service, or service in public international organizations or on Intergovernmental Personnel Act assignments causing the applicant to be unable to file during the announcement period. Employees that are unable to file in a timely manner will be required to provide sufficient written verification of the absence and must file within five workdays of return to permanent job site.

## 11. Acceptance of Applications.

    a. Applications will be accepted from candidates within the AOC who apply, including excepted service employees with personal competitive status. Applications will only be accepted if received by the closing or cut-off date unless electronically submitted or otherwise specified in the vacancy announcement. Applications or resumes received electronically must be dated no later than midnight on the closing date of the announcement. Applications, delivered to HROs after the closing date will not be considered.

7

b. Applications will be accepted at any time from qualified applicants with a handicapping condition who are eligible for Schedule A appointments, and from applicants who are 30 percent or more disabled veterans. Certification of eligibility from and appropriate authority (i.e. a State Vocational Rehabilitation Office, the Veterans Administration, a military department, or a DD-214) is required prior to appointment. Applicants appointable under these authorities may be referred separately to the selecting official, and are not required to file by the closing date of the vacancy announcement.

c. Non-competitive eligible, if included in the AOC, are not required to meet the closing date provided selection has not been made.

d. Regardless of the AOC, applications will be accepted from eligible spouses of relocating active duty military members and DOD civilians in accordance with applicable instructions.

e. An application may be rejected if it is not from an appointable candidate; is from a candidate outside the AOC; lacks sufficient information upon which to make a qualifications determination; lacks sufficient information to determine the announcement applied for; contains falsified information; an applicant does not meet time-in-grade requirements; an applicant does not meet time after competitive appointment requirements; application is delivered through the U.S. mail in official government "franked" envelopes; or is received after the closing date of the announcement.

f. In all cases, applications must show the Vacancy Announcement Number for the specific position for which application is made and the lowest grade (or equivalent) acceptable if the position is announced at multiple grade levels. If the lowest acceptable grade is not indicated, applicants will be considered only at their current or the highest grade for which qualified. A separate application must be submitted for each non-STAIRS vacancy announcement for which consideration is sought. Applications will only be referred to the primary vacancy announcement listed. To receive consideration for more than one vacancy, a separate application must be submitted for each vacancy.

g. Each applicant is responsible for the completeness and timely submission of his/her application. All application documents submitted for a vacancy will be retained by the HRSC Capital as part of the merit staffing case file.

h. *All resumes submitted for STAIRS announced vacancies must be in compliance with the specification and directions of the Navy's Job Application Information for Civilian Employee (Job Kit). The Job Kit can be located at www.donhr.navy.mil web site or the local Human Resources Office. Any STAIRS resume not in compliance with the requirements outlined in the Job Kit will be returned.*

i. *For STAIRS published vacancies HRSC Capital will accept resumes submitted*

*through the Navy Web Builder which may be accessed at www.donhr.navy.mil web site and will be considered as if received via the postal service. Hard copy resumes mailed in non-government envelopes will be accepted as long as they are in compliance with the Job Kit requirements. Resumes submitted in the body of an e-mail WILL be accepted in accordance with the Job Kit instructions. Submission of resumes as an e-mail attachment will NOT be accepted and will be returned.*

*j. A resume will be stored in STAIRS once it has been filed in response to a specific announcement or open continuous register. An applicant may re-use his/her current resume once it has been stored in STAIRS. Applicants may self-nominate to be considered for other vacancies. Requests for self-nomination may be submitted via e-mail, internet or hardcopy (see self-nomination form on www.donhr.navy.mil web site).*

12. <u>Qualifications</u>. Candidates for initial referral must meet all legal, regulatory and minimum qualification requirements as of the closing date/cut-off date(s) unless specified otherwise in the announcement. Minimum qualification standards are those prescribed or approved by OPM plus any appropriate selective factor(s) which are considered essential for immediate satisfactory performance on the job.

13. <u>Evaluation and Referral of Candidates</u>.

a. Regardless of the number of candidates, evaluation procedures must include multiple assessment measures, such as experience, education, training, awards, and annual performance ratings; include job analysis to determine pertinent KSAs' to be applied uniformly; and include consideration of an annual performance appraisal to the extent that it is relevant to the position being filled. Provided these requirements are met, evaluation procedures used for any given recruitment action may vary according to the number of applicants, type of position and other consideration.

b. When there are ten or fewer qualified candidates, all candidates will be rated against basic eligibility and minimum qualification standards. Those who are minimally qualified will be referred to the selecting official for consideration. The selecting official may request or require HRSC Capital to evaluate candidates to be referred in comparison with both the position requirements and each other to identify those who are best qualified. However, in all cases, the selecting official must document the evaluation and consideration process, including the reason for selection.

c. Large numbers of candidates (over 15) may be reduced to more manageable levels through use of an abbreviated procedure such as the summary or quality ranking factor, or by removing from consideration candidates with an annual performance rating below fully successful, or equivalent, if relevant to the position being filled. After this initial grouping, the candidates selected to continue the evaluation process would be formally evaluated using the approved crediting plan. Once the evaluation is complete cut off for certificates will be determined using either of two methods. A natural break will be used to determine the cut off unless there is no natural break. If there is no natural break all applicants receiving a total of

eighty percent of the possible score will be referred as best qualified.

    d. KSAs, which are used to evaluate candidates, must be job related and closely tied to the position/job descriptions and performance standards.

    e. Regardless of which evaluation process is used, candidates may be evaluated by the selecting official, a personnel official, an EEO representative or any qualified management designee. Selecting officials are not prohibited from serving as the sole rater.

    f. Unless imposed by special program requirements, e.g., for certain career programs, a rating panel is not required. A decision to use a panel should be based on such factors as the grade level, importance and sensitivity of the position, technical resources available, cost and number of vacancies.

    g. If a panel is appointed by the selecting official to determine which eligible candidates are "best-qualified", that panel must ensure that all application materials and related documents are safeguarded to protect the privacy rights of individual applicants and to maintain the integrity of the rating process. Whenever possible, panel members should be at least the same, or higher, grade or rank as the grade (or equivalent) of the vacant position.

    h. If a panel is not used, HRSC Capital will evaluate the vacancy in accordance with the appropriate generic crediting plan, unless otherwise specified by the selecting official.

    i. Competitive candidates will be referred alphabetically in categories of 'best qualified' or 'qualified'. Non-competitive candidates received by the date the certificate is generated will be referred in alphabetical order.

    j. Information to accompany the applications provided the selecting official includes the candidates' applications, supplemental statements (if submitted), and annual performance appraisals (if submitted).

    k. Merit promotion certificates will be signed and dated by the HRSC Capital representative. Certificates are valid for 90 days from the date issued; however, efforts should be taken to make selections within 30 days.

    l. Subsequent selections may be made from certificates when the area of consideration and the knowledge, skills and abilities are the same, it is within 90 days of the first issuance of the certificate, and provided candidate(s) are still available for consideration.

14. Selection.

    a. The selecting official is entitled to select any certified candidate using job-related criteria, nonselect all candidates, or select from other sources at any time during the recruitment process.

b. Interviews are at the discretion of the selecting official. All, some, or none of the candidates certified for consideration may be interviewed.

c. When filling supervisory or managerial positions, selecting officials must give consideration to candidates' demonstrated commitment to support EEO program objectives.

15. Release of Employees. Employees will normally be released within two to four weeks from the request for the release date. In those rare instances where this time is not adequate, the gaining and losing supervisor mutually agree to a date. Employees should be released in the following manner:

a. Selections to positions for promotion or positions with known promotional opportunity should be released within two weeks, except in unusual circumstances, but no later than 30 days after selection.

b. Selections to positions for reassignment, demotion or details to the same or lower graded positions will normally be released within thirty days unless mutual agreement is reached between the releasing and gaining activity.

c. Selections to positions located overseas will normally be released within 45 days.

d. Personnel actions covered by this instruction will normally be effective on Sundays.

e. No personnel action (other than a detail) can be effective until the position to which an employee is being assigned has been classified, the candidate has met all legal, security and qualification requirements, and advance notification requirements have been met.

16. Disclosure of Merit Promotion Information. Under the Privacy Act of 1974, an applicant is allowed access to any merit promotion record identified as personal to him or to her, and to any other information permitted to be released under the Freedom of Information Act. General merit promotion information may be released, per the provisions of reference (c), after the merit promotion selection has been finalized. At that time, information is releasable on whether an applicant was considered qualified, was within the group from which selection was made, who was selected, how to improve, supervisory appraisal information and other employee pertinent information. The names of evaluation panel members will not be released.

All candidates must have equal access to information on merit processes and procedures, however, during the staffing processes, response will be provided only to questions relating to staffing policy and clarification of information in the announcement (i.e., content of position, qualifications, etc.). No information will be provided to applicants on matters such as their rating and ranking, standing in relation to others, the crediting plan, or any other information that would give them an unfair advantage. The first consideration given is to protection of the privacy of all candidates. Ineligible candidates will be notified as soon as possible.

17. Maintenance of Merit Promotion Records. The HRSC Capital will maintain a record of each

merit promotion action. All records will be kept for two years or until an OPM evaluation is conducted (whichever occurs first), providing no grievance or complaint has been filed or is in process.

18. <u>Grievances</u>. It must be recognized that for each individual selected, there normally will be several that will not be selected. Therefore, failure to be selected from among a group of properly rated and ranked candidates is not a basis for a grievance. Matters of dissatisfaction are to be resolved under applicable procedures outlined in Appendix B.

JEAN M. CAZAUBON

Distribution:
Director, HRO-W
Director, HRO NAVACAD
Director, HRO NRL
Director, HRO NSSC
Director, HRO NSWC Carderock
Director, HRO NSWC Dahlgren
Director, HRO NSWC Indian Head
Director, HRO ONI
Director, HRO ONR
Director, HRO S/HHRO

12

# APPENDIX A
# DEFINITIONS

1. <u>Area of Consideration (AOC)</u>. The area of consideration is a geographic and/or organizational area in which the activity reasonably expects to recruit enough high quality candidates from which to select.

2. <u>Candidates</u>.

   a. <u>Qualified</u>. Eligible promotional candidates who, by the announced closing date, meet the qualification criteria published by the Office of Personnel Management (OPM).

   b. <u>Best Qualified</u>. Eligible promotional candidates who are at the top of the register when compared with all other candidates.

   c. <u>Eligible</u>. Appointable, candidates who, by the announced closing date, meet legal and regulatory requirements for placement into the vacant position (i.e. qualifications, time-in-grade, time after competitive appointment, area of consideration, etc.)

3. <u>Career Ladder Position</u>. A position which is filled through competitive procedures below the full-performance level. Employees selected for career ladder positions may be promoted without further competition when they (1) meet regulatory and qualification requirements and (2) demonstrate the ability to perform at the next higher grade.

4. <u>Career-Conditional Appointment</u>. Competitive service, permanent appointment of a person who has not yet completed three years of continuous creditable Federal service.

5. <u>Career Appointment</u>. Competitive service, permanent appointment given to an employee who has completed three years of continuous creditable Federal service.

6. <u>Certificate (Merit Promotion)</u>. A list of qualified promotional candidates, certified by the HRSC Capital to the selecting official for selection. At the request of the selecting official, this list may include all qualified promotional candidates or be condensed to only those candidates determined to be "best qualified".

7. <u>Commuting Area</u>. For the purpose of this instruction, the commuting area for most of the activities serviced by HRSC Capital is defined as the District of Columbia, Alexandria, Fairfax and Falls Church cities; Arlington, Fairfax, Loudoun, Prince William, Fauquier, Stafford, and King George Counties, Virginia; and Baltimore, Calvert, Charles, Montgomery, Anne Arundel, Prince George's, St. Mary's, Howard and Frederick Counties, Maryland. A few of the outer lying activities may use a different definition of commuting area.

8. <u>Competitive Service</u>. An appointment or a position in the Federal Government which is not specifically excepted from the Civil Service laws by Executive Order or OPM regulations.

9. <u>Competitive Status</u>. Status obtained by an employee based on prior service under a career or career-conditional appointment.

10. <u>Crediting Plan</u>. A set of rating guides against which all eligible qualified promotional candidates is evaluated.

11. <u>Detail</u>. A temporary assignment of an employee to a different position or set of duties for a specified period with no change in pay, with the employee returning to his/her regular duties at the end of the detail period.

12. <u>Evaluation Panel</u>. Normally, up to five people ad hoc working group, which carries out the evaluation process, appointed by the selecting official with HRO advice. Applies the appropriate Merit Promotion Evaluation Criteria.

13. <u>Excepted Service</u>. An appointment or a position which the Office of Personnel Management has exempted from the competitive service. (Examples are appointments of handicapped; stay-in-school appointment; cooperative education appointments, etc.).

14. <u>Full Performance Level</u>. That level of work designated by management and established by the application of the appropriate classification standard(s) which depicts the highest level of duties and responsibilities performed in a position.

15. <u>In-service Placement Qualification Standard</u>. An alternative method used to qualify employees with competitive status for competitive service positions based on special provisions for certain series in the OPM Qualification Standards.

16. <u>Job Analysis</u>. The process of systematically collecting, processing, analyzing, and interpreting information about a specific position or group of like positions to provide a job-related basis for evaluation and selection.

17. <u>Knowledge, Skills, Abilities (KSA's)</u>. Those knowledge, skills and abilities predetermined by job analysis to be essential to successful job performance which will be used to distinguish superior from barely acceptable candidates.

18. <u>Merit Promotion</u>. Placement of employees in positions at a higher grade level, or with promotion potential to a higher grade level than that currently held, based on a selecting official's assessment of appropriate knowledge, skills and abilities.

19. <u>Non-competitive Candidate</u>. A candidate who is qualified for a specific vacant position and either on the basis of prior competition or on exemption from the requirement to compete may be referred to the selecting official without evaluation and

competition in the "merit promotion" process. (Examples would be reinstatement or transfer eligible, reassignment eligible; 30 percent disabled veterans, etc.).

20. Non-status Applicant. An applicant who is not under a career or career-conditional appointment or is not a reinstatement eligible.

21. Performance Appraisal. The document that provides the annual, mid-year or interim evaluation of the employee's performance as measured against the critical elements, objectives, and standards established for the position the employee occupies.

22. Promotion. The change of an employee to a position at a higher grade level or, to a position with a higher rate of basic pay.

23. Promotion Potential. Employees in positions from which career promotions can be made. These include (1) positions filled at a grade (or grades) below the established or anticipated full performance grade level; (2) career ladder positions; (3) trainee positions, and (4) understudy positions.

24. Quality Ranking Factor. KSA's that could be expected to enhance significantly performance in a position, but unlike selective factors, are not essential for satisfactory performance. Applicants who possess the quality ranking factor can be ranked above those who do not, but no one can be rated ineligible solely for failure to possess a quality ranking factor.

25. Register. A list of eligible used to fill designated types of positions.

   a. The servicing civilian personnel office may maintain internal merit staffing registers which are used to place current Federal employees and/or reinstatement eligible. These registers may be established from vacancy announcements, open continuous announcements, or vacancy listings.

   b. The Office of Personnel Management and Delegated Examining Units maintain registers which are used for initial appointments into the Federal Civil Service. Except in instances where direct-hire authority has been authorized, these registers must be used to select non-status applicants.

26. Reinstatement. The reemployment of (1) a former career employee (or career-conditional veteran's preference eligible) any time after separation from Federal employment, or (2) a former career conditional non-veteran within three (3) years after separation.

27. Relative. Includes the specific relationships stated in 5 U.S.C. 3110 (i.e., father, mother, son, daughter, brother, sister, uncle, aunt, first cousin, nephew, niece, husband, wife, father-in-law, mother-in-law, son-in-law, daughter-in-law, brother-in-law, sister-in-law, stepfather, stepmother, stepson, stepdaughter, stepbrother, stepsister, half brother, or

half sister).  When popular and legal usage differs, the strict or legal definition is applied to all these terms.

28.  Resumix.  A commercial off-the-shelf applicant referral software system.

29.  Selecting Official.  An individual authorized to make a selection for the position to be filled.  The selecting official is usually the first or second level supervisor over the position, but may be a higher level official in the chain of command.  When several intern/career development positions are to be filled, more than one selecting official may be designated.

30.  Selective Placement Factors.  Knowledge, skills, and abilities not contained in the OPM Qualification Standards that are so essential for satisfactory performance in a particular position that they become part of the qualification requirements in addition to those outlined in the OPM Qualifications Standards.  Selective placement factors are readily identifiable from the position description and are defined by appropriate HRO/HRSC Capital staff in consultation with activity management officials.  Examples of appropriate factors are:

   a.  Ability to speak read and/or writes a language other than English;

   b.  Knowledge or ability pertaining to a certain program or mission, when these cannot readily be acquired within 90 days after appointment; and

   c.  Ability in a functional area (for example, ability to evaluate alternative ADP systems).

31.  Spouse Preference Eligible.  Applicants who are spouses of relocation active duty military members.  Eligibility begins 30 days preceding their spouse's relocation to the activity's commuting area.  Additionally, these applicants are not bound by area of consideration requirements.

32.  STAIRS.  Standard Automated Inventory and Referral System designed to streamline the recruitment and referral process by utilizing state-of-the-art information technology.

33.  Summary Ranking Factor.  A summary ranking factor may be used to group the promotional candidates into "best-qualified" and "qualified" groups.  This KSA includes all the essential requirements of a position combined, e.g., "ability to do the work of the position under normal supervisions".

## APPENDIX B

**SUBJECT: MERIT STAFFING GRIEVANCE PROCESS**

**1. PURPOSE.** To establish procedures for processing informal or formal grievances arising from qualifications rating under the Merit Promotion Program.

**2. DISCUSSION.** Rankings assigned by the HRSC under the Merit Promotion Program may be grieved by an informal process and then by a formal grievance process as described below. Rankings assigned by the Activity or the HRO may be grieved under the current applicable HRO grievance procedures. Appeal adjudicators should check for the existence of memorandum of understanding or negotiated agreements, which might contain different grievance procedures.

**3. PROCEDURES.**

   a. Informal Process. The employee and/or the representative may present his/her concerns to the HRSC Staffing Specialist/Assistant who rated the application, within 15 calendar days after receipt of the notice of rating. The employee must present the issue in writing and reference the announcement number for the position. The Staffing Specialist/Assistant will draft a response for the appropriate Code 53 Branch Manager. The Code 53 Branch Manager will finalize the response and forward it to the employee, in writing, within 15 calendar days of receipt of the informal grievance.

   b. Formal Grievance. The employee and/or employee's representative must serve HRSC Code 50, in writing, within 15 calendar days after receipt of the written response from (3a) above. The grievance must be dated and signed, contain sufficient detail to identify and clarify the basis for the grievance, state the personal relief requested, and include copies of any documents in the employee's possession that are relevant to the grievance. Code 53 will review all available information and prepare a written decision for Code 50's signature. Code 50's decision will be issued within 15 calendar days after receipt of the formal grievance.

The Code 50 decision constitutes the final decision on the grievance.

**TO PROMOTE CONSISTENCY IN THE PROCESSING OF THESE GRIEVANCES THE FOLLOWING STEPS SHALL BE FOLLOWED:**

The findings and recommendations of the reviewing staffing specialist/assistant shall be recorded on a "Qualifications Review Record", Enclosure (1). ALL grievances should have a Qualifications Review Record form attached.

(1) Candidates are entitled to be shown/told the following information after completion of
the merit promotion action:

(a) Whether or not they were in the group from which selection was made.

(b) Who was selected.

(c) The evaluation factors (knowledge, skills and abilities needed for successful performance in the position) used.

(d) Their own ratings/scores on the evaluation factors (names of other candidates and panel members/raters must be deleted).

(2) A candidate who files a formal grievance is entitled to see additional information provided it is relevant to the issue(s) and is within the constraints of the Privacy Act. Examples of such information are:

(a) Sanitized rating sheets on other candidates

(b) Sanitized application forms and supplemental questionnaires

(c) Sanitized supervisory appraisals

4. The following information will not be released:

a. Test material.

b. "Internal Qualifications Guides" which supplement OPM Handbook, X-118C or activity crediting plans which copy or reference these guides.

c. Identifiable material on other candidates or any information which would be an invasion of privacy.

**Draft Working Papers – Predecisional Material**                    **FINAL 4/1/04**

## AGREEMENTS AND ACTIONS
## B-Codes Lunch
## 31 March 2004

**1.    Attendees:**

| | |
|---|---|
| SEA 00B | Mr. Brown |
| SEA 00I | Ms. Britton |
| SEA 00L | Ms. Kessmeier |
| SEA 01 | Mr. Hernandez |
| SEA 02 | None |
| SEA 03 | None |
| SEA 04 | Ms. Evans |
| SEA 05 | None |
| SEA 06 | None |
| SEA 07 | Mr. James |
| SEA 10 | Ms. Flynn/Mr. Humes/Mr. McCafferty |
| PEO Carriers | Mr. Persons |
| PEO IWS | Mr. Brown |
| PEO LMW | Mr. Thomsen |
| PEO SHIPS | Mr. Weyman/Mr. Divens |
| PEO SUB | Mr. McNamara |
| NSWC | Ms. O'Brien |
| NUWC | None |

**2.    Agenda:**  The purpose of the B-Codes Lunch was to slate NPP members into available vacant positions and to establish the process to effectively place all remaining NPP members within 45 days.

**3.    Results:**  The B-Codes reviewed the current listing of HQ/PEO vacancies and NPP members.   Prior to the B-Codes Meeting, two additional NPP members were placed (one into an existing SEA10 vacancy and one external), leaving 35 NPP employees remaining to be placed, 33 of which are currently available for placement.   The Command goal was reinforced to place at least 13 additional NPP members into continuing billets within 2 weeks, with the remaining 20 to be placed by mid-May 2004.

  a.  The following agreements for immediate placement of NPP members were made:

    • SEA 07 agreed to restructure 2 existing vacant billets to place two GS-343 NPP members within 30 days.
    • PEO SUB agreed to restructure 1 existing vacant billet to place a GS-343 NPP member within 30 days.
    • SEA 10 agreed to restructure 1 existing vacant billet to place a GS-201 NPP within two weeks.
    • SEA 04 agreed to select an NPP member by this Friday, 2 April, to fill a GS-12 vacancy.
    • PEO IWS agreed to select an NPP member by this Friday, 2 April, to fill an existing GS-12 vacancy

g:SEA10/BTET/033104 B-Codes/Minutes_033104.doc                 ATTACHMENT 3

**Draft Working Papers – Predecisional Material**                              **FINAL 4/1/04**

.b.   The following actions were agreed to in order to quickly place the remaining NPP members:

(1) SEA 10 agreed to work with the Director of HRSC-NW to expedite the processing of recruitment certificates, including offering to pay overtime to expedite service.

(2) By 7 April, each B-Code will personally review all current GS-13 (except 800 series) and below vacancies in their Directorate/PEO/Staff Code and identify any billets that can be restructured to the GS-12 or below level.  Report results to SEA 107 (Bill McCafferty).

(3) By 7 April, codes agreed to make selections for all GS-13 and below vacancies where certs have already been issued.

(4) A qualified NPP member will immediately be reassigned to fill any new vacancy created as a result of an internal promotion to fill the vacancies in item 3 above.  SEA 107 will recommend these reassignments in accordance with SEA 00B's Guidelines for Staffing Positions within HQ/PEOs which are consistent with Priority Placement rules.

(5) Bs agreed that selections for all vacancies where certificates have not been issued will be made within 10 working days of receipt of cert.

(6) By COB Monday, 5 April, SEA 107 will review all GS13 selections which have already been made and provide a list of any resulting GS-12 vacancies and report those results to B-codes.  SEA 107 will also identify whether a selection was made with a lateral reassignment or an external selection.  SEA 107 will track this type of data until all NPP members have been placed.

(7) By 5 April, SEA 107 agreed to identify all series that each member of the NPP would be eligible to be reassigned to.  It is recognized that final qualification determinations would be based on the requirements of the specific position to be filled.  In the 343 series, SEA 107 will also identify those NPP members who have financial management expertise.

4.    <u>Waivers</u>:  The B-codes agreed that selection waivers would no longer be required for jobs in the 0800 series (GS13 and above) and at all grades for 1102 and 1515 series positions. However, any extraordinary offers (such as those involving recruitment bonuses or proposed payment for executive qualifications) must be processed through SEA10 <u>before</u> a tentative job offer is made.

5.    <u>Restatement of Policy on Accretion Promotions and Temporary Promotions</u>:  It was reiterated that the NAVSEA HQ/PEO policy is that we will not authorize accretion promotions or temporary promotions.  In the one case where two temporary promotions were approved by a code working directly with HRSC-NW, the actions will be terminated immediately.

6.    <u>Processing of Personnel Actions</u>:  Codes were reminded that all personnel actions involving recruitment, placement, pay and promotion must be forwarded to HRSC-NW through SEA 107.  No codes may send such personnel actions directly to HRSC.

7.    <u>Next B-Code Meeting</u>:  The BTET previously scheduled for Wednesday, 7 April, is cancelled.  We will hold our next BTET the week of 12 April to review progress from actions identified above.  Exact date and time will be provided separately.

//signed//

**B. Flynn**

2