# EXHIBIT 6



1          UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF COLUMBIA

3

4    - - - - - - - - - - - - - - - -x

5    BRENDA J. LEE,                    :

6                  Plaintiff,          :

7        vs.                          :    Case No: 05-1335

8    DONALD WINTER, SECRETARY OF        :

9    THE NAVY,                         :

10                  Defendant.         :

11   - - - - - - - - - - - - - - - -x

12

13                          Washington, D.C.

14                          Tuesday, January 16, 2007

15

16

17   Deposition of:

18                  LARRY B. SLAGLE

19   the Deponent, called for examination by counsel for the

20   Defendant, pursuant to notice and agreement as to time and

21   place, at 501 3rd Street, N.W., Washington, D.C., before

22   Timothy J. Atkinson, a Notary Public in and for the District

23   of Columbia.

24

25

1   you want to compare it to, either McCafferty Exhibit 2 or

2   compare it to the GS-13 under Factor 1.

3      A.   Oh, okay.  So there is a third change in that the

4   word expert was whited out, as well.

5      Q.   Okay.  Now I believe in your opinion in March of

6   2006 you said that you thought the GS-12 position was

7   misclassified and should have been a GS-13, correct me if I'm

8   wrong on any of this, because the position descriptions for

9   the GS-12 and the GS-13 were virtually identical.  Assuming

10  the Slagle Deposition Exhibit 2 to be the official position

11  description for Ms. Lee and that the words practical knowledge

12  of are required of her and not a mastery, that she's not

13  required to provide expert advice and guidance to higher

14  authority and foreign customers, only to provide advice, does

15  that change your opinion as to whether or not this Gs-12

16  position should have been classified as a GS-13?

17     A.   First of all, let me object to your premise.

18     Q.   Which is?

19     A.   I did not render a classification judgment.

20     Q.   Okay.

21     A.   I did not say that Ms. Lee's position description

22  should be classified as a 13.

23     Q.   Okay.

24     A.   What I said was that if the position descriptions in

25  the Report of Investigation were the same for Ms. Lee as for

1  Dutton and Hall, that it was -- the burden was on management

2  to explain why they weren't the same grade level.

3      Q.   You're saying that you didn't render an opinion that

4  the positions should be classified at the same level?

5      A.   I believe that I said that the burden was on

6  management to show why they were not at the same level.

7      Q.   Why don't you turn to page 5 of your opinion and

8  look at the paragraph that starts out with based solely on the

9  paper review.  Can you read that first sentence?

10     A.   Yes.  Based solely on the paper review, I conclude

11  that it is likely that the position should be classified at

12  the same level as the other Case Development Analyst.

13     Q.   Okay.  So let me just be clear about this.  Is it

14  your testimony that you are not offering an opinion that Ms.

15  Lee's GS-12 position was misclassified and should have been

16  classified at the GS-13 level?

17     A.   If I can continue with the next sentence in my

18  opinion.

19     Q.   Okay.

20     A.   At the least, the lack of distinction between the

21  GS-12 and GS-13 descriptions and all the material elements

22  puts a strong burden on the Agency to justify the difference

23  in grades and adds significantly to the difficulty in

24  understanding why Mr. Randolph has effectively discouraged Ms.

25  Lee from seeking a desk audit.

30

1    Q.   Okay.   Now can you answer my question or do you need
2    it repeated?

3    A.   I thought I answered it.

4    Q.   No, you didn't.

5    A.   Ask it again.

6    Q.   My question is are you offering an opinion that Ms.
7    Lee's GS-12 position description was misclassified and should
8    have been classified at the GS-13 level?  Is that your opinion
9    or not?

10    A.   My opinion is that considering the fact that the
11    position descriptions are identical, the ones I reviewed from
12    the Report of Investigation between the 12 and the 13, except
13    for the distinction on percentages, that it would appear that
14    they should be classified at the same level.

15    Q.   And what level should that be, the GS-13 or the GS-
16    12?

17    A.   I was a position classifier for many years, and I
18    would not render a classification judgment based solely on a
19    classification review.

20    Q.   So then is it correct that you are not offering a
21    classification opinion as to whether or not Ms. Lee's position
22    should have been classified at the 12 or at the 13?  Is that
23    accurate?

24    A.   My opinion is that it is difficult to understand how
25    the 12 -- how Ms. Lee can be classified differently than the

E
X
H
I
B
I
T
S

31

1  others based upon the position descriptions in the Report of

2  Investigation, and -- yeah.

3      Q.   I understand that you're saying it's difficult to

4  understand.  That's not what I'm asking you.  Do you not

5  understand my question, Mr. Slagle?  I am asking you are you

6  offering an opinion in this case that Ms. Lee should have,

7  based on her position description, the one you initially

8  looked at, should have been classified at the GS-13 level?  Is

9  that your opinion or not?

10     A.   My opinion is that it's likely that the two

11 positions should be classified at the same level.

12     Q.   Does that mean they should both be classified --

13 that they both could have been classified at the GS-12?

14     A.   I repeat again that it's my opinion that, based on

15 the documents I reviewed for my March opinion, that they

16 should have been classified at the same level.

17     Q.   And what level should that be?

18     A.   I did not render an opinion on that and I'm not

19 prepared to do so now because a classifier would want to do

20 more than make just a paper review.

21     Q.   Okay.  Now that's based on the two position

22 descriptions that you looked at before.  Comparing now the

23 position description that it's Slagle Deposition Exhibit 2,

24 the position description for the GS-12 with the GS-13, do you

25 still have an opinion that they're identical?

1      A.    The altered position description, altered by the pen

2   and ink changes, is not identical in all respects to the

3   positions I reviewed.

4      Q.    Correct.

5      A.    However, the alterations may not materially change

6   my opinion because what we've got are some words inserted,

7   like practical knowledge instead of mastery, and practical

8   rather than thorough.  I don't understand the difference, by

9   the way, between practical and thorough.  And when we say

10  practical knowledge, substitute for mastery of advanced

11  concepts, if you go on and read the whole rest of that

12  paragraph, it seems to be that that practical knowledge is at

13  a very advanced level.  And I think that if someone attempted

14  to make this at a lower grade through the use of a couple of

15  words here, that that was a very sloppy and lazy way to do

16  this.

17         What occurred -- what would appear to have occurred,

18  and I can't know, is that the Grade 13 position was prepared

19  on a word processor and the percentages were changed and

20  nothing else.  Where these pen and ink changes come from, I

21  have no idea.

22     Q.    I understand that, and so I'm trying to move on from

23  where they came from because you really don't know where they

24  came from, as you've testified.

25     A.    But the distinction I tried to raise just now, Ms.

1  practical level, that's not going to be done.

2      Q.   Well, how do you know it's not going to be done?

3      A.   Well, I have never seen it done, and in my

4  experience it would be considered extremely unwise for a

5  person who appealed their classification, have a determination

6  made otherwise, in support of the employee, and then to have

7  the duties taken away.

8      Q.   But, in fact, management legally has the ability to

9  do that, correct?

10     A.   Management has the authority to assign duties.

11     Q.   Okay.  And you have no experience other than in this

12 case with the limited documents you've looked at as to how

13 Navy handles these issues, isn't that correct?

14     A.   I don't know how Navy handles these issues, no.

15     Q.   Okay.  All right.  On the second page of your report

16 where you talk about 5 C.F.R. 335.103, you talk about how

17 103(c)(3) allows agencies to exempt certain actions from

18 competitive promotion procedures.  Do you see where I am?

19     A.   Um-hum.

20     Q.   Okay.  To your recollection, 5 C.F.R.335.103(c)(3)

21 does not require agencies to exempt certain actions from

22 competitive promotions, does it?  It simply gives them the

23 discretion to do so?

24     A.   It requires -- taken in toto, it requires the agency

25 to have a Merit Promotion Plan which specific exceptions.

45

1    Q.    Okay, but that's not what I asked you.  I asked you

2  whether or not your understanding of 5 C.F.R. 335.103 where

3  you used the word allows --

4    A.    I used the word allow advisedly --

5    Q.    Okay.  So you were not trying to suggest that it

6  requires agencies to exempt, correct?

7    A.    No, I was not.

8    Q.    Okay.  So it's permissive, correct?

9    A.    Yes.

10    Q.    All right.  Then you go on to talk about Navy's

11  policy, and you say that any upgrading as the result of the

12  accretion of duties and responsibilities would have been non-

13  competitive under Navy policy.  What do you base that on?

14    A.    In the course of reviewing the documents I was

15  provided various copies of Merit Promotion Plans.  All of

16  those exercised the discretionary authority to exempt from

17  Merit Promotion those situations in which a promotion was

18  based on an accretion of duties and responsibilities.

19    Q.    Now if an agency exempts from competition certain

20  types of personnel action, does the agency retain the

21  authority to decide to go ahead and compete that particular

22  action?

23    A.    5 C.F.R. requires the agency to have a Merit

24  Promotion Plan --

25    Q.    Right.

1    A.    -- in order to operate --

2    Q.    Right.

3    A.    -- and requires that that plan be made available to

4    employees.

5    Q.    Correct.  Well, you used the words here in this

6    paragraph competition is not required.  Do you see where I'm

7    quoting?

8    A.    Where are you?

9    Q.    I'm on page 2, first full paragraph, about midway

10   down, competition is not required for, and then it says (b)

11   promotion based on reclassification.  Do you see where I am?

12   A.    Yes.

13   Q.    Okay.  When it says competition is not required,

14   does that mean that competition may not be used for promotion

15   based on reclassification or does it simply mean that you

16   don't have to compete promotions based on reclassification, or

17   do you know?

18   A.    May I look at the Navy promotion policy again?

19   Q.    Well, why don't we -- this is the operative and I

20   don't know if this the one you looked at, but it was produced

21   in response to Document Request Number 3, so let's make this

22   an exhibit.

23            MS. BRASWELL:  What are we up to?

24            REPORTER:  3.

25            MS. BRASWELL:  Number 3.

March 3, 2006

RECEIVED

MAR 0 6 2006

GEBHARDT

Charles W. Day, Jr.
Gebhardt & Associates, LLP
1101 17th Street, NW
Suite 607
Washington, DC 20036

     BY FAX 202-496-0404

     RE: Lee v. England, C.S. 05-1335 RWR/JMF

Dear Mr. Day

Your client, Brenda Lee, asserts that she discussed with her supervisor, a Mr. Randolph, whether she could be promoted to GS-13 based on an accretion of duties. According to Ms Lee, Mr. Randolph "told her that he could not do an accretion of duties but could arrange for a desk audit to promote her to the GS-13 level." Subsequently, added Ms Lee, Mr. Randolph told her that if her position was upgraded due to a desk audit, "it would be advertised and she would have to compete for the position." Mr. Randolph has testified "that after (he had explained) the procedure for the desk audit to Complainant she informed him via e-mail that she did not wish to pursue the desk audit because she did not want to 'risk' having to compete for the position if it was upgraded."

Because the advice provided by Mr. Randolph discouraged Ms. Lee from asking for a desk audit, you have asked my opinion whether (1) the advice was correct and (2) reliance on Mr. Randolph's advice had an adverse impact on Ms Lee, i.e., Had there been a desk audit, is it likely Ms Lee would have been promoted?

<u>Was the advice correct?</u>

The Office of Personnel Management's web site poses and responds to the following question: "*What can you do if you think your position is not properly classified?* . . . If your supervisor believes that your position should be reevaluated, he or she can request a review by the personnel office. The personnel specialist may do a desk audit . . . to obtain information about the kind and difficulty of the work you are doing." The statement describes a suggested initial step to be taken before one files a formal classification appeal (See Position Classification Appeals, MSO98-3, June 1998). If an employee takes this step and is not satisfied, then that employee may file an appeal with either the agency or OPM. The result of a successful appeal would be an upgrading of the position <u>and</u> the incumbent. It is not rational, then, to assume that an initial step of undergoing a desk audit, intended to


EXHIBIT
Slagle
1

eliminate the need for a formal appeal, would have the adverse effect of requiring an incumbent to compete for her or his own position. On this basis alone, Mr. Randolph's advice was erroneous, and Ms. Lee relied on it to her detriment.

5 CFR Sec. 335.103 establishes regulatory requirements for agency promotion plans. Sec. 335.103(c)(2)(i) provides that competitive procedures do not apply to "A promotion resulting from the upgrading of a position without significant change in the duties and responsibilities due to issuance of a new classification standard or the correction of an initial classification error . . .." 5 CFR Sec. 335.103(c)(3) allows agencies to exempt certain actions from competitive promotion procedures, including "(ii) A promotion resulting from an employee's position being classified at a higher grade because of additional duties and responsibilities;". The agency's Merit Staffing Program (CCPO-CC Instruction 12335.1D) exercises this discretion in Section 7, Exemptions to Merit Staff Procedures, in which it states "Competition is not required for "b. Promotion based on reclassification when: . . . (2) The position is upgraded due to the accretion of additional duties and responsibilities and all of the following provisions are met: (a) the major duties of the employee's old position are absorbed into the new position, and the former is canceled; (b) the new position has no known promotion potential; and (c) the addition of the duties and responsibilities does not adversely affect another employee." These provisions are met in this instance, and any upgrading resulting from an accretion of duties and responsibilities would have been non-competitive under Navy CCPO policy.

The transcript provided to me reflects that it is Mr. Randolph's testimony that Ms. Lee informed him "she did not wish to pursue the desk audit because she did not want to 'risk' having to compete for the position if it was upgraded." This testimony shows that the responsible supervisor, who knew or should have known that the agency's own policy did not require competition for promotions resulting from desk audits, allowed the employee to continue to believe she could be adversely affected if she were to undergo a desk audit. It is my conclusion that Mr. Randolph's advice was erroneous and contrary to both OPM policy and his own agency's regulations and that his failure to provide the correct information was negligent.

<u>What likely would have been the outcome of a desk audit?</u>

Although it is not possible to reach a definitive conclusion without a desk audit and a discussion with management, it is still possible to ascertain from the information you have provided whether it is likely that a desk audit would have resulted in a promotion.

Ms Lee's position is located in one of two International Programs Management branches in the NAVSEA Office of International Programs – SEA

2

63.  She is classified as a non-supervisory Case Development Program Analyst, GS-343-12.  Certain other non-supervisory Case Development Program Analysts in the two program management branches are classified as Case Development Program Analyst, GS-343-13.  The Position Classification Flysheet for Management and Program Analysis Series, GS-0343, states that "Non-supervisory positions at grade GS-9 and above are evaluated by reference to the <u>Administrative Analysis Grade Evaluation Guide.</u>"  The Guide uses a Factor Evaluation System to determine the appropriate grade level for positions being evaluated.  To be classified at the GS-12 level positions must fall within a range of 2755-3150 when points are totaled for each of nine evaluation factors.  At the GS-13 level, the point range is 3155-3600.  The factors evaluated are: (1) Knowledge, (2) Supervisory Controls, (3) Guidelines, (4) Complexity, (5) Scope and Effect, (6) Personal Contacts, (7) Purpose of Contacts, (8) Physical Demands, and (9) Work Environment.

For purposes of evaluating GS-0343 positions, physical demands and work environment are presumed to be the same for all grade levels, and the same number of points would be awarded. Typically, there would be no difference in the points awarded GS-12 and GS-13 positions for the four factors concerning supervisory controls, complexity, personal contacts and purpose of contacts.  Distinctions, then, for knowledge required, guidelines available, and scope and effect of work are the principal factors in determining whether a position is functioning at the GS-12 or GS-13 level.

I have examined the position descriptions for both Ms Lee's GS-12 and the GS-13 level Case Development Program Analyst positions.  The "Introduction" to both descriptions is identical and relates the background, setting, and overall responsibilities of the branch.  Each description lists four major duties.  The description of these four duties for the GS-12 position is identical to the description for the GS-13 position, except that the GS-12 position reportedly spends more time on duty A, Pre-case financial data development and policy conformance (65% to 50%), more time on duty B, Case Amendment and Modifications (25% to 20%), and less time on Systems Input, Reports and Improvements.  The differences in percentage of time spent do not appear to be material, inasmuch as the same level of knowledge is required regardless of the time spent.  Ordinarily, major duties are listed according to some scheme: importance of the duty or order in which the duties are performed.  In the case of these two position descriptions the first duty appears to be predominant and requires a minimum of 50% of the incumbent's time, sufficient by itself to be grade determining.

As noted above, Factor 1 – Knowledge (required) is one of, if not the predominant, factors in differentiating between GS-12 and GS-13 program analyst positions.  In the agency's descriptions for these two positions, the knowledge required is identical.  Given that the duties also are identical, this confirms my initial impression that <u>there is no material difference</u> between these two positions for classification purposes on this critical factor.

3

I then examined the factor description in the two position descriptions for "Guidelines." Again, there is no difference between the GS-12 and GS-13 position descriptions. The description of this factor concludes, significantly, in both position descriptions with the statements, "The guides are written in broad general terms. This dictates that the incumbent must make decisions and issue value judgments. These decisions are based on SAP experience and knowledge." Therefore, on this factor, there is no difference for position classification purposes, and the same point values would be awarded.

The final factor in which a difference between the two positions could have an effect on classification is "Scope and Effect of Work." Yet again, the descriptions are identical. On this key element, like the others, there is no difference for classification purposes and, again, the same number of points would be awarded for both the GS-12 and GS-13 positions.

Although the remaining factors would be unlikely to result in the awarding of different point values, I determined that the descriptions are identical, including the degree of supervision exercised.

Work that requires the same kind and level of knowledge and qualifications required, degree of complexity and responsibility involved, and supervision exercised should, in principle, be classified in the same series and grade. In this case, a document review strongly suggests that if the position descriptions are accurate, given that they are virtually identical, they should be classified alike. If there are material differences for classification purposes between these two positions, the basis for those differences should have been reflected in differences in the descriptions. As someone who has written, evaluated, and classified positions over a period of more than 40 years, I was astonished to find two virtually identical positions in the same units classified differently without any distinction in knowledge and qualifications required or degree of supervision received.

I asked to be provided any additional information that Ms Lee could provide to reflect additional duties not in her current job description. Ms Lee asserts that, unlike her counterparts, she "serves as the final review and release authority on all of (her) work for NAVSEA." She also asserts that she "provides guidance and direction to case managers throughout the command in the areas of case management, case execution, financial management and the Defense Security Assistance Management Systems administration, (b) Assist(s) Comptroller (SEA 01P) in the financial review processing of Amendments, Modifications, and Implementations, (c) Coordinates responses with the Country Program Managers at Navy IPO, Case Managers at NAVSEA, the NAVSEA Technical Managers, the NAVSEA Case Administering Officers, and the navy IPO Case Development Analysts, (d) Represent(s) NAVSEA at Case Initiation Meetings, the Quarterly Review Board Meetings, and the RP57 meetings at which NAVSEA's other representatives are the GS-13 Case Development Program Analysts, and (e) was the first of approximately five employees to participate in the NAVSEA LEAN Study. While not having

4

enough information to evaluate the significance of these assertions, they appear to underscore the high level of knowledge required and the limited guidance and supervision received by Ms Lee.

Based solely on a paper review, I conclude that it is likely the position should be classified at the same level as the other Case Development Analysts. At the least, the lack of distinction between the GS-12 and GS-13 descriptions on all of the material elements puts a strong burden on the agency to justify the difference in grades and adds significantly to the difficulty in understanding why Mr. Randolph has effectively discouraged Ms Lee from seeking a desk audit.

Summary

In summary, it is my considered opinion that Mr. Randolph erred in deflecting Ms Lee's initial request for consideration for promotion based on an accretion of duties, erred in telling her that she would have to compete for the higher graded position if one resulted from a desk audit, and was negligent as a responsible supervisor in allowing her withdraw her request for a desk audit because she believed mistakenly, on the supervisor's say-so, that she would put herself at risk if the position were upgraded and she had to compete for the "vacancy." Further, it is my opinion that an objective desk audit is likely to have found either that the original classification was in error or that an accretion of duties had occurred which warranted an upgrade.

Sincerely

Larry B. Slagle
Human Resources Consultant
208 6th St., SE
Washington, DC 20003

5

# LARRY B. SLAGLE

## Statement of Qualifications

Mr. Slagle currently is self-employed as an expert and consultant in Federal Personnel Administration. He has been a consultant to the National Mediation Board, an independent Federal Agency, on a variety of organization and personnel matters (1995-2003), and has consulted on Federal employee complaints for the law firms of Shaw, Bransford, Veilleux & Roth of Washington, D.C., Gebhardt & Associates of Washington, DC, and Paleos & Krieger of Alexandria, Virginia.

Mr. Slagle retired from the Federal government in 1994 after 34 years of civilian service. During the last four years of service, he was Director of Personnel and Designated Agency Ethics Officer at the U.S. Department of Agriculture. He also served as the Department's representative on the Executive Committee of the Interagency Groups of Federal Personnel Directors.

In his position as Director of Personnel, the Secretary of Agriculture delegated to him all of his personnel authorities. He redelegated many of these authorities but retained the authority to oversee and, if necessary, revoke them at any time. Also, he personally classified Senior Executive positions and took final action within the Department on position classification appeals. Often, he was a key official in the resolution of equal opportunity complaints. During 1993, he served as a resource person for the personnel unit of the National Performance Review and commented on draft reports and proposals.

Mr. Slagle was a charter member of the Senior Executive Service and for more than 20 years, in a variety of executive positions, had delegated personnel authority. For 12 years, while serving as Deputy Administrator for Management and Budget of the Department's Animal and Plant Health Inspection Service (APHIS), he managed personnel, finance, budgeting, contracting, data process and other related support functions for APHIS and five other agencies under a cross-servicing agreement. During the same time period he provided consulting services and support to bilateral commissions carrying out agricultural programs in Latin America.

During seven and one-half years at the National Mediation Board, Mr. Slagle advised management officials on recruitment and selection, employee discipline, performance management and other matters in addition to developing personnel policies and providing a full range of personnel services to the agency.

Mr. Slagle has extensive experience in general management. personnel management, organization, reorganization, organizational change and organizational development. He has been consulted frequently, both while within the government and since his retirement, on organization and classification as well as other personnel management and administration issues. Earlier in his career he also served as a position classification specialist, a position management specialist, and a branch chief in position classification, position management and organization in a large agency of the USDA. For several years, as a Position Classification Specialist in the

Agricultural Research Service he served as Executive Secretary and adviser to peer evaluation panels using the Research Grade-Evaluation Guide. During this period he authored a single agency classification standard for certain blue collar positions.

During 1993 and 1994 Mr. Slagle lectured on personnel subjects at OPM's Western Management Development Center in Denver, CO. During the same time period he was a speaker or panelist on programs televised nationwide to government personnelists and managers throughout the country. He was twice awarded the presidential rank award of Meritorious Executive and on two occasions won USDA Honor Awards, as well as the Department's first Administrative Management award. He is listed in Marquis' Who's Who in America..

Larry B. Slagle

| Date | Case[1] | Venue | Service |
|------|---------|-------|---------|
| 1994 | Joan Perry v. National Credit Union Administration | MSPB | Expert opinion and testimony |
| 1995 | Victoria M. Caponiti v. Janet Reno | US District Court for the District of Columbia | Deposition |
| 1996 | Marianne Faulstich, Appellant v. Department of Health and Human Services | MSPB | Opinion and deposition |
| 1997 | Rose Ann Young v. Togo D. West, Jr. | US District Court for the E. District of Virginia | Rule 26 report and deposition; did not testify |
| 1997 | Regina Catron v. Janet Reno | US District Court for the E. District of Virginia | Rule 26 Report |
| 1997 | Joe Perry v. Department of Veterans Affairs | MSPB | Opinion and deposition |
| 1998 | Michael Dewey v. Social Security Administration | MSPB | Opinion and testimony |
| 2000 | Robert W. Swift v. Lawrence H. Summers | EEOC | Report of Expert Opinion and deposition |
| 2000 | Daniel V. Dowd, Export-Import Bank of the United States | Agency Classification Appeal | Assistance and Opinion |

---

[1] Due to a computer hard disk failure, this listing is a good faith reconstruction and may not be all inclusive.

| Date | Case | Venue | Service |
|------|------|-------|---------|
| 2004 | Rajan v. Veneman | US District Court for the District of Columbia | Report of Expert Opinion |

RPA#K21866

# POSITION

*(Please Read Instructions on the Back)*

| | |
|---|---|
| **1. Agency Position No.** | RQS2329999 |

| 2. Reason for Submission | 3. Service | 4. Employing Office Location | 5. Duty Station | 6. OPM Certification No. |
|---|---|---|---|---|
| ☐ Redescription ☐ Reestablishment | ☒ New ☐ Other | ☒ Hdqtrs. ☐ Field | Washington, D.C. | Washington, D.C. | |

**Explanation (Show any Positions replaced)**

CONVERSION OUT OF AcqDemo.
Former PD is abolished. Incumbency only:
subj to class review when vacated

| 7. Fair Labor Standards Act | 8. Financial Statements Required | | 9. Subject to IA Action |
|---|---|---|---|
| ☒ Exempt ☐ Nonexempt | ☐ Executive Personnel Financial Disclosure | ☐ Employment and Financial Interests | ☐ Yes ☒ No |

| 10. Position Status | 11. Position is: | 12. Sensitivity | 13. Competitive Level Code |
|---|---|---|---|
| ☒ Competitive ☐ Excepted *(Specify in Remarks)* ☐ SES (Gen.) ☐ SES | ☐ Supervisory ☐ Managerial ☒ Neither | ☐ 1-Non-Sensitive ☐ 3-Critical Sensitive ☒ 2-Noncritical Sensitive ☐ 4-Special Sensitive | C011 |
| | | | **14. Agency Use** |

| 15. Classified/Graded by | Official Title of Position | Pay Plan | Occupational Code | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| a. U.S. Office of Personnel Management | | | | | | |
| b. Department, Agency or Establishment | | | | | | |
| c. Second Level Review | ~~Core Development~~ Program Analyst | GS | 343 | 12 | NC | 7-11-02 |
| d. First Level Review | | | | | | |
| e. Recommended by Supervisor or Initiating Office | | | | | | |

| 16. Organizational Title of Position *(if different from official title)* | 17. Name of Employee *(if vacant, specify)* |
|---|---|
| Program Analyst    63IC313 | Brenda Lee |

| 18. Department, Agency, or Establishment | c. Third Subdivision |
|---|---|
| DEPARTMENT OF THE NAVY | Security Assistance Program Office, PMS380 |
| a. First Subdivision | d. Fourth Subdivision |
| NAVAL SEA SYSTEMS COMMAND 00/09 | Division - PMS380P |
| b. Second Subdivision | e. Fifth Subdivision |
| Corporate Operations DIR (SEA 10) | |

| Employee Review-This is an accurate description of the major duties and responsibilities of my position. | Signature of Employee (optional) |
|---|---|

**20. Supervisory Certification.** *I certify that this is an accurate statement of the knowledge that this information is to be used for statutory purposes relating major duties and responsibilities of this position and its organization's to appointment and payment of public funds, and that false or misleading relationship, and that the position is necessary to carry out statements may constitute violations of such statutes or their implementing Government functions for which I am responsible. This certification is regulations.*

| a. Typed Name and Title of Immediate Supervisor | b. Typed Name and Title of Higher-Level Supervisor or Manager (optional) |
|---|---|
| Patricia Wood, Branch Head | |
| Signature  *Wilton B. Best*  Date 7-10-02 | Signature  Date |

| 21. Classification/Job Grading Certification. *I certify that this position has been classified/graded as required by Title 5, U.S. Code, in conformance with standards published by the U.S. Office of Personnel Management or, if no published standards apply directly, consistently with the most applicable published standards.* | 22. Position Classification Standards Used in Classifying/Grading Position OPM Handbook of Occupational Groups/Series; 343 OPM PCS AAGEG, TS-98; Aug 1990 |
|---|---|
| Typed Name and Title of Official Taking Action Aldric Crawley PeRS mgmt Spec, NAVSEA | Information for Employees. The standards, and information on their application, are available in the personnel office. The classification of the position may be reviewed and corrected by the agency or the U.S. Office of Personnel Management. Information on classification/job grading appeals, and complaints on exemption from FLSA, is available from the personnel office or the U.S. Office of Personnel Management. |
| Signature  *Aldric Crawley*  Date 7-11-07 | |

| 23. Position Review | Initials | Date | Initials | Date | Initials | Date | Initials | Date | Initials | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Employee (optional) | | | | | | | | | | |
| b. Supervisor | | | | | | | | | | |
| c. Classifier | | | | | | | | | | |

**24. Remarks**

FPL GS-12
DAWIA K, Level III, APC No
Bargain Unit: No

EXHIBIT
Slagle
2
1/16/07  TSA
PENGAD 800-631-6939

| | |
|---|---|
| **25. Description of Major Duties and Responsibilities (See Attached)** Previous Edition Usable | OF 8 (Rev. 1-1985) U.S. Office of Personnel Management FPM Chapter 295 |

nda J. Lee

# FINANCIAL AND BUSINESS DIVISION
## CASE DEVELOPMENT PROGRAM ANALYST
### (GS-343-12)

**I.    Introduction:**

This position is Program Analysis Officer for the Case Development Division within PMS380P. PMS380P is the Financial and Business Division of the Security Assistance Program Office (PMS380), a Naval Sea Systems Command Designated (chartered) Program. The Program office supports the Deputy Commander for surface Ships in the oversight and coordination of all matters related to Security Assistance Programs. The Program develops and implements agreements with Foreign Navies for providing materials, technical assistance, and management services in support of construction, modernization, overhaul, and maintenance of ships and associated shore facilities. The Program office is responsible for establishing and implementing the National, Department of Defense and Department of the Navy FMS policy guidance and objectives within the Command and assuring the proper allocation of utilization of FMS resources within the Command. The Program administers the FMS Administrative budget which annually averages over $8M.

This Division is responsible for financial matters and business management efforts in the development, implementation, execution, reconciliation and closure of assigned FMS cases. Additional responsibilities include internal contract management, FMS administrative budget process, Security Assistance Program Labor Cost and Defense Civilian Payroll Systems input, verification, and analyses, NAVSEA's Security Assistance business base statistics, and dissemination/interpretation of case financial management licy.

This Branch is responsible for:
* Development of pre-case data for Letter of Offer and Acceptance (LOA), Price and Availability (P&A) via the Defense Security Assistance Management System (DSAMS),
* Case amendments and modifications
* Obligational authority adjustments
* Maintaining and presentation of Security Assistance Program Business Base Statistics
* Development/interpretation/dissemination of case financial policy to the Command
* Overall justification and execution of the FMS document reconciliation
* Case reconciliation and case closure, through various initiatives such as the Defense Security Coordination Agency (DSCA) Unliquidated obligations (ULO), Navy International Programs Office (NAVY IPO) enhanced accelerated case closure.
* Reconciliation and closure of all material and service (supply) complete cases implemented to NAVSEA.
* Hands on reconciliation efforts
* Preparation of the case closure certificate
* ADP systems processing

**II.  Major Duties:**

The incumbent is responsible to the Branch Head for financial systems support for the Security Assistance Program pre-case data development in DSAMS for all Letters of Offer and Acceptance (LOA), Price and Availability (P&A) data, case amendments and difications, FMS financial systems integrity, input and improvements. Specific duties d responsibilities of the incumbent include:

A.    65% Pre-case financial data development and policy conformance

This position performs the overall pre-case financial data development for all FMS requests. This includes the preparation and review of LOA data sheets, case structure, Military Assistance Service Lines (MASL) data, NAVFORM 2061, manpower worksheets, financial analysis worksheets, payment schedules, termination and liability data sheets and other case financial data and reports as required by the Assistance Program Managers and Case Managers. The incumbent must be able to apply appropriate FMS surcharges, accessorial and administrative charges. The incumbent must insure pricing disciplines are in accordance with existing NAVSEA, Navy IPO, DSCA and Navy Comptroller (NAVCOMPT) policies and directives.

B.   25% Case Amendment and Modifications

The incumbent develops NAVFORM 2061s and other required case financial data to modification existing program requirements. Insures appropriate surcharges are applied.

C.   5% Systems Input, Reports and Improvements

Performs case control input requirements execution. This includes DSAMS, MISIL, and year-end rollover. Represents Security Assistance Program components to improve and streamline financial requirements, systems, policies and procedures. As the FMS Financial Systems Program Manager, the incumbent analyzes a wide variety of case financial problems, surveys the wide variety of databases within the Security Assistance community and selects appropriate data and generates tailored information to satisfy the requirements. Additionally, as the FMS Financial Systems Program Manager, the incumbent is responsible for developing and improving new and existing program systems with the focus on total quality management with regard to streamlining and elimination of unneeded, cumbersome financial systems requirements.

D.   5% Special Projects Management

Incumbent performs special projects as directed by the Branch or Division Director. Special projects assigned normally involve developing systems to capture and display data and to assist upper management in identifying adverse trends and recommending necessary corrective actions.

III.   FACTORS

Factor 1 - Knowledge required by the Position

*Practical knowledge of* advanced concepts, principles and practices of the broad field of Security Assistance program management that enables the incumbent to serve as an authority in the development of NAVSEA SAP instructions, procedures and guidelines and to provide     advice and guidance to higher authority and foreign customers. Ability to evaluate and incorporate the latest developments in the field into guidelines. The incumbent must be particularly knowledgeable in how these concepts, principles and practices are applied in the SAP.

A *practical* knowledge of all aspects of SAP is required in order to have the ability to relate the financial function to program goals and objectives and provide effective management support to all phases of the program. The incumbent must be effective in resolving problems due to changing program deadlines and objectives; recognize and resolve conflicts in program and budgetary information and objectives, and changing guidelines for the work, caused not only by US policy changes but due to varying requirements of the foreign government.

The incumbent must be capable of displaying originality, sound judgement and versatility in leading and administering function of the Branch as well as the Project. The incumbent must possess a high degree of originality, resourcefulness, and diplomacy and personal tact in dealing with people both military and civilian, at all levels.

Knowledgeable of various USN appropriations in order to equate the function of those appropriations to FMS financial procedures and policies.

Knowledgeable of multiple ADP systems (STARS, MISIL, DSAMS, DIFS, NAVCOS, office automation systems) and be able to direct the development of additional ADP systems and improvements.

Factor 2 - Supervisory Controls

The incumbent reports directly to the Branch Head, Financial Systems Support Branch, a position to which a GM 343-14 is assigned and who outlines broad policies and objectives to be pursued. This position receives general guidance and supervision, which requires the incumbent to exercise imagination and analysis of a wide range of complex financial program management techniques and responsibilities. The scope and dynamic nature of this position requires the independent action of the incumbent. Work is reviewed adherence to general branch and NAVSEA policy and accomplishment of objectives.

Factor 3 - Guidelines

Guidelines include DOD and Security Assistance Act, Foreign Military Sales Act, Navy directives, DOD Security Assistance Management Manual (SAMM), the FMS Financial Management Manual published by OASD (Comptroller), various SECNAV and OPNAV instructions and the NAVSEA instructions and policy statements. The guides are written in broad general terms. This dictates that the incumbent must make decisions and issue value judgements. These decisions are based on SAP experience and knowledge.

Factor 4 - Complexity

Financial case data, implementation, input and review are required by higher authority for all Command FMS cases. FMS financial data is used to develop a contract between the U.S. Government and foreign governments. The resulting contract is referred to as a case. All NAVSEA cognizant goods and services requested by foreign governments must be executed via the FMS contract (DD 1513). Efforts for this position necessitate financial case development for multi-year, multi-million dollar cases and requires decision and interpretation of broad policies and pricing direction in order to insure all applicable costs to the foreign customer are in order to ensure all applicable costs to the foreign customer are identified. New legislation and policy changes, foreign defense and U.S. political priorities, fluctuations in economies and other forces have sudden substantial impact on the kind of financial case data strategies and requirements needed by the organization. This position requires problem solving in order to derive useful and timely data for developing case financial support elements when needed data is missing. Ability to deal with changes in the program/projects caused by changes in foreign emphasis or advancing technologies and other developments have significant impact on case/program presentation and execution are typical difficulties encountered. Give direction and recommendations to higher financial and business authorities regarding lacking criteria applicable to solving unusual case financial development and presentation requires making adjustments.

Factor 5 - Scope and Effect

Program execution could not be undertaken without provision of the required case financial support documentation, data, implementation, and input. The financial case data is required by higher authority at the Navy IPO and DSCA level. Case amendments and modifications are required in order to execute changes tot he existing programs and to btain needed additional obligational authority to continue with program case management xecution. Analyses and recommendations have a direct affect on foreign payments to the FMS trust funds, and on the timing of USN actions in implementing the FMS programs.

Factor 6 - Personal Contacts

Personal contacts involve face-to-face and telephone discussions on regular basis, at all level, within NAVSEA, Navy IPO and on occasion with foreign representatives. Incumbent ensures a solid network of contacts within NAVSEA and Navy IPO with defined working procedures to achieve objectives.

Factor 7 - Purpose of Contacts

The purposes of contacts are to discuss financial policy, give advise, provide case financial data information, and to coordinate financial case structure and execution requirements. Contacts with Navy IPO are for the purpose of interpreting and resolving issues related to case structure and financial data presentation. Contacts with other SYSCOM components are for the purpose of providing advice and guidance on case financial and systems policies, procedures, requirements and resolution of conflicting matters.

Factor 8 - Physical Demands

The duties of this position are performed in an office environment and are primarily sedentary, however, the incumbent lifts and carries reference data, working papers, and similar items to and from the work area. A moderate amount of standing and walking is required in getting to and from meeting places away from the work site.

Factor 9 - Work Environment

Work is performed in a typical office setting, however, one that is subjected to an above normal amount of pressure and "short-fuse" deadlines. The employee periodically visits other offices in the surrounding complexes or at locations in other states and -ities. Travel away from the work site is normally by private automobile, common carrier lane or train) or other public conveyance.

RPA# K122057

| POSITION | | (Please Read Instructions on the Back) | | 1. Agency Position No. KN52321999 |
|---|---|---|---|---|

| ...son for Submission | 3. Service | 4. Employing Office Location Washington, D.C. | 5. Duty Station Washington, D.C. | 6. OPM Certification No. |
|---|---|---|---|---|
| ☐ Redescription  ☒ New | ☒ Hdqtrs. ☐ Field | | | |
| ☐ Reestablishment ☐ Other | | 7. Fair Labor Standards Act | 8. Financial Statements Required | 9. Subject to IA Action |
| | | ☒ Exempt ☐ Nonexempt | ☐ Executive Personnel Financial Disclosure  ☐ Employment and Financial Interests | ☐ Yes  ☒ No |

Explanation (Show any Positions replaced)

**CONVERSION OUT OF AcqDemo.**
Former PD is abolished. Incumbency only:
subj to class review when vacated

| 10. Position Status | 11. Position is: | 12. Sensitivity | 13. Competitive Level Code C011 |
|---|---|---|---|
| ☒ Competitive | ☐ Supervisory | ☐ 1-Non-Sensitive  ☐ 3-Critical Sensitive | |
| ☐ Excepted (Specify in Remarks) | ☐ Managerial | ☐ 2-Noncritical Sensitive  ☐ 4-Special Sensitive | 14. Agency Use |
| ☐ SES (Gen.)  ☐ SES | ☒ Neither | ☒ | |

| 15. Classified/Graded by | Official Title of Position | Pay Plan | Occupational Code | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| a. U.S. Office of Personnel Management | | | | | | |
| b. Department, Agency or Establishment | | | | | | |
| c. Second Level Review | ~~Case Development~~ Program Analyst | GS | 343 | 13 | AGC | 7-11-02 |
| d. First Level Review | | | | | | |
| e. Recommended by Supervisor or Initiating Office | | | | | | |

| 16. Organizational Title of Position (if different from official title) Program Analyst | 17. Name of Employee (if vacant, specify) Barbara Hall |
|---|---|
| 18. Department, Agency, or Establishment DEPARTMENT OF THE NAVY | c. Third Subdivision Security Assistance Program Office, PMS380 |
| a. First Subdivision NAVAL SEA SYSTEMS COMMAND 00/09 | d. Fourth Subdivision Division - PMS380P. |
| b. Second Subdivision Corporate Operations DIR (SEA 10) | e. Fifth Subdivision |

| 19. Employee Review-This is an accurate description of the major duties and responsibilities of my position. | Signature of Employee (optional) |
|---|---|

20. Supervisory Certification. *I certify that this is an accurate statement of the knowledge that this information is to be used for statutory purposes relating major duties and responsibilities of this position and its organizational to appointment and payment of public funds, and that false or misleading relationships, and that this position is necessary to carry out statements may constitute violations of such statutes or their implementing Government functions for which I am responsible. This certification is necessary to carry out statements may constitute violations of such statutes or their implementing Government functions for which I am responsible. This certification is regulations.*

| a. Typed Name and Title of Immediate Supervisor Bridget Shepherd, Branch Head | b. Typed Name and Title of Higher-Level Supervisor or Manager (optional) |
|---|---|
| Signature [signature] | Date 1-10-02 | Signature | Date |

| 21. Classification/Job Grading Certification. *I certify that this position has been classified/graded as required by Title 5, U.S. Code, in conformance with standards published by the U.S. Office of Personnel Management or, if no published standards apply directly, consistently with the most applicable published standards.* | 22. Position Classification Standards Used in Classifying/Grading Position OPM Handbook of Occupational Groups/Series; 343; OPM PCS AAGEG, TS-98; Aug 1990 |
|---|---|
| Typed Name and Title of Official Taking Action Aldric Crawley Pers Mgmt Spec, NAVSEA | Information for Employees. The standards, and information on their application, are available in the personnel office. The classification of the position may be reviewed and corrected by the agency or the U.S. Office of Personnel Management. Information on classification/job grading appeals, and complaints on exemption from FLSA, is available from the personnel office or the U.S. Office of Personnel Management. |
| Signature [signature] | Date 7-11-02 | |

| 23. Position Review | Initials | Date | Initials | Date | Initials | Date | Initials | Date | Initials | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Employee (optional) | | | | | | | | | | |
| b. Supervisor | | | | | | | | | | |
| c. Classifier | | | | | | | | | | |

24. Remarks

FPL GS-13
DAWIA K, Level III, APC Yes
Bargain Unit: No

| 25. Description of Major Duties and Responsibilities (See Attached) | OF 8 (Rev. 1-1985) |
|---|---|
| Previous Edition Usable | U.S. Office of Personnel Management FPM Chapter 295 |

Barbara R. Hall

### FINANCIAL AND BUSINESS DIVISION
### ~~CASE DEVELOPMENT~~ PROGRAM ANALYST
### (GS-343-13)

**I.   Introduction:**

This position is Program Analysis Officer for the Case Development Division within PMS380P.  PMS380P is the Financial and Business Division of the Security Assistance Program Office (PMS380), a Naval Sea Systems Command Designated (chartered) Program.  The Program office supports the Deputy Commander for surface Ships in the oversight and coordination of all matters related to Security Assistance Programs.  The Program develops and implements agreements with Foreign Navies for providing materials, technical assistance, and management services in support of construction, modernization, overhaul, and maintenance of ships and associated shore facilities.  The Program office is responsible for establishing and implementing the National, Department of Defense and Department of the Navy FMS policy guidance and objectives within the Command and assuring the proper allocation of utilization of FMS resources within the Command.  The Program administers the FMS Administrative budget which annually averages over $8M.

This Division is responsible for financial matters and business management efforts in the development, implementation, execution, reconciliation and closure of assigned FMS cases.  Additional responsibilities include internal contract management, FMS administrative budget process, Security Assistance Program Labor Cost and Defense civilian Payroll Systems input, verification, and analyses, NAVSEA's Security Assistance business base statistics, and dissemination/interpretation of case financial management policy.

This Branch is responsible for:
• Development of pre-case data for Letter of Offer and Acceptance (LOA), Price and Availability (P&A) via the Defense Security Assistance Management System (DSAMS),
• Case amendments and modifications
• Obligational authority adjustments
• Maintaining and presentation of Security Assistance Program Business Base Statistics
• Development/interpretation/dissemination of case financial policy to the Command
• Overall justification and execution of the FMS document reconciliation
• Case reconciliation and case closure, through various initiatives such as the Defense Security Coordination Agency (DSCA) Unliquidated obligations (ULO), Navy International Programs Office (NAVY IPO) enhanced accelerated case closure.
• Reconciliation and closure of all material and service (supply) complete cases implemented to NAVSEA.
• Hands on reconciliation efforts
• Preparation of the case closure certificate
• ADP systems processing

**II.  Major Duties:**

The incumbent is responsible to the Branch Head for financial systems support for the Security Assistance Program pre-case data development in DSAMS for all Letters of Offer and Acceptance (LOA), Price and Availability (P&A) data, case amendments and modifications, FMS financial systems integrity, input and improvements.  Specific duties and responsibilities of the incumbent include:

   A.   50% Pre-case financial data development and policy conformance

This position performs the overall pre-case financial data development for all FMS requests. This includes the preparation and review of LOA data sheets, case structure, Military Assistance Service Lines (MASL) data, NAVFORM 2061, manpower worksheets, financial analysis worksheets, payment schedules, termination and liability data sheets and other case financial data and reports as required by the Assistance Program Managers and Case Managers. The incumbent must be able to apply appropriate FMS surcharges, accessorial and administrative charges. The incumbent must insure pricing disciplines are in accordance with existing NAVSEA, Navy IPO, DSCA and Navy Comptroller (NAVCOMPT) policies and directives.

B.    20% Case Amendment and Modifications

The incumbent develops NAVFORM 2061s and other required case financial data to modification existing program requirements. Insures appropriate surcharges are applied.

C.    25% Systems Input, Reports and Improvements

Performs case control input requirements execution. This includes DSAMS, MISIL, and year-end rollover. Represents Security Assistance Program components to improve and streamline financial requirements, systems, policies and procedures. As the FMS Financial Systems Program Manager, the incumbent analyzes a wide variety of case financial problems, surveys the wide variety of databases within the Security Assistance community and selects appropriate data and generates tailored information to satisfy the requirements. Additionally, as the FMS Financial Systems Program Manager, the incumbent is responsible for developing and improving new and existing program systems with the focus on total quality management with regard to streamlining and elimination of needed, cumbersome financial systems requirements.

D.    5% Special Projects Management

Incumbent performs special projects as directed by the Branch or Division Director. Special projects assigned normally involve developing systems to capture and display data and to assist upper management in identifying adverse trends and recommending necessary corrective actions.

III.    FACTORS

Factor 1 - Knowledge required by the Position

Mastery of advanced concepts, principles and practices of the broad field of Security Assistance program management that enables the incumbent to serve as an authority in the development of NAVSEA SAP instructions, procedures and guidelines and to provide expert advice and guidance to higher authority and foreign customers. Ability to evaluate and incorporate the latest developments in the field into guidelines. The incumbent must be particularly knowledgeable in how these concepts, principles and practices are applied in the SAP.

A thorough knowledge of all aspects of SAP is required in order to have the ability to relate the financial function to program goals and objectives and provide effective management support to all phases of the program. The incumbent must be effective in resolving problems due to changing program deadlines and objectives; recognize and resolve conflicts in program and budgetary information and objectives, and changing guidelines for the work, caused not only by US policy changes but due to varying requirements of the foreign government.

The incumbent must be capable of displaying originality, sound judgement and versatility in leading and administering function of the Branch as well as the Project. The incumbent must possess a high degree of originality, resourcefulness, and diplomacy and personal tact in dealing with people both military and civilian, at all levels.

Knowledgeable of various USN appropriations in order to equate the function of those appropriations to FMS financial procedures and policies.

Knowledgeable of multiple ADP systems (STARS, MISIL, DSAMS, DIFS, NAVCOS, office automation systems) and be able to direct the development of additional ADP systems and improvements.

Factor 2 - Supervisory Controls

The incumbent reports directly to the Branch Head, Financial Systems Support Branch, a position to which a GM 343-14 is assigned and who outlines broad policies and objectives to be pursued. This position receives general guidance and supervision, which requires the incumbent to exercise imagination and analysis of a wide range of complex financial program management techniques and responsibilities. The scope and dynamic nature of this position requires the independent action of the incumbent. Work is reviewed adherence to general branch and NAVSEA policy and accomplishment of objectives.

Factor 3 - Guidelines

Guidelines include DOD and Security Assistance Act, Foreign Military Sales Act, Navy directives, DOD Security Assistance Management Manual (SAMM), the FMS Financial Management Manual published by OASD (Comptroller), various SECNAV and OPNAV instructions and the NAVSEA instructions and policy statements. The guides are written in broad general terms. This dictates that the incumbent must make decisions and issue value judgements. These decisions are based on SAP experience and knowledge.

Factor 4 - Complexity

Financial case data, implementation, input and review are required by higher authority for all Command FMS cases. FMS financial data is used to develop a contract between the U.S. Government and foreign governments. The resulting contract is referred to as a case. All NAVSEA cognizant goods and services requested by foreign governments must be executed via the FMS contract (DD 1513). Efforts for this position necessitate financial case development for multi-year, multi-million dollar cases and requires decision and interpretation of broad policies and pricing direction in order to insure all applicable costs to the foreign customer are in order to ensure all applicable costs to the foreign customer are identified. New legislation and policy changes, foreign defense and U.S. political priorities, fluctuations in economies and other forces have sudden substantial impact on the kind of financial case data strategies and requirements needed by the organization. This position requires problem solving in order to derive useful and timely data for developing case financial support elements when needed data is missing. Ability to deal with changes in the program/projects caused by changes in foreign emphasis or advancing technologies and other developments have significant impact on case/program presentation and execution are typical difficulties encountered. Give direction and recommendations to higher financial and business authorities regarding lacking criteria applicable to solving unusual case financial development and presentation requires making adjustments.

Factor 5 - Scope and Effect

Program execution could not be undertaken without provision of the required case financial support documentation, data, implementation, and input. The financial case data is required by higher authority at the Navy IPO and DSCA level. Case amendments and modifications are required in order to execute changes to the existing programs and to obtain needed additional obligational authority to continue with program case management execution. Analyses and recommendations have a direct affect on foreign payments to the FMS trust funds, and on the timing of USN actions in implementing the FMS programs.

Factor 6 - Personal Contacts

Personal contacts involve face-to-face and telephone discussions on regular basis, at all level, within NAVSEA, Navy IPO and on occasion with foreign representatives. Incumbent ensures a solid network of contacts within NAVSEA and Navy IPO with defined working procedures to achieve objectives.

Factor 7 - Purpose of Contacts

The purposes of contacts are to discuss financial policy, give advise, provide case financial data information, and to coordinate financial case structure and execution requirements. Contacts with Navy IPO are for the purpose of interpreting and resolving issues related to case structure and financial data presentation. Contacts with other SYSCOM components are for the purpose of providing advice and guidance on case financial and systems policies, procedures, requirements and resolution of conflicting matters.

Factor 8 - Physical Demands

The duties of this position are performed in an office environment and are primarily sedentary, however, the incumbent lifts and carries reference data, working papers, and similar items to and from the work area. A moderate amount of standing and walking is required in getting to and from meeting places away from the work site.

Factor 9 - Work Environment

Work is performed in a typical office setting, however, one that is subjected to an above normal amount of pressure and "short-fuse" deadlines. The employee periodically visits other offices in the surrounding complexes or at locations in other states and ies. Travel away from the work site is normally by private automobile, common carrier (plane or train) or other public conveyance.

PA# KI 22058

POSITION    (Please Read Instructions on the Back)

| | | 4. Employing Office Location | 5. Duty Station | 6. OPM Certification No. |
|---|---|---|---|---|
| | 3. Service | Washington, D.C. | Washington, D.C. | |

1. Agency Position No. KAB23209AA

n for Submission
[ ] edescription   [X] New
[ ] Reastablishment [ ] Other

3. Service  [X] Hdqrs. [ ] Field

7. Fair Labor Standards Act
[X] Exempt  [ ] Nonexempt

8. Financial Statements Required
[ ] Executive Personal Financial Disclosure
[ ] Employment and Financial Interests

9. Subject to IA Action
[ ] Yes  [X] No

explanation (Show any Positions replaced)

CONVERSION OUT OF AcqDemo.
ormer PD is abolished. Incumbency only:
ubj to class review when vacated

10. Position Status
[X] Competitive
[ ] Excepted (Specify in Remarks)
[ ] SES (Gen.)  [ ] SES

11. Position is:
[ ] Supervisory
[ ] Managerial
[X] Neither

12. Sensitivity
[ ] 1-Non-Sensitive
[ ] 2-Noncritical Sensitive
[ ] 3-Critical Sensitive
[ ] 4-Special Sensitive

13. Competitive Level Code
COI

14. Agency Use

| | Official Title of Position | Pay Plan | Occupational Code | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| 5. Classified/Graded by | | | | | | |
| i. U.S. Office of Personnel Management | | | | | | |
| j. Department, Agency or Establishment | | | | | | |
| 2. Second Level Review | ~~Case Development~~ Program Analyst | GS | 343 | 13 | AC | 7-11-02 |
| d. First Level Review | | | | | | |
| e. Recommended by Supervisor or Initiating Office | | | | | | |

16. Organizational Title of Position (If different from official title)
Program Analyst

17. Name of Employee (If vacant, specify)
Renee Dutton

18. Department, Agency, or Establishment
DEPARTMENT OF THE NAVY

c. Third Subdivision
Security Assistance Program Office, PMS380

a. First Subdivision
NAVAL SEA SYSTEMS COMMAND 00/09

d. Fourth Subdivision
Division - PMS380P

b. Second Subdivision
Corporate Operations DIR (SEA 10)

e. Fifth Subdivision

19. Employee Review-This is an accurate description of the major duties and responsibilities of my position.

Signature of Employee (optional)

20. Supervisory Certification. I certify that this is an accurate statement of the knowledge that this information is to be used for statutory purposes relating major duties and responsibilities of this position and its organizational to appointment and payment of public funds, and that false or misleading relationships, and that the position is necessary to carry out statements may constitute violations of such statutes, or their implementing Government functions for which I am responsible. This certification is regulations.

a. Typed Name and Title of Immediate Supervisor
Bridget Shepherd, Branch Head

Signature  Wilton B. Best

Date 7-10-02

b. Typed Name and Title of Higher-Level Supervisor or Manager (optional)

Signature

Date

21. Classification/Job Grading Certification. I certify that this position has been classified/graded as required by Title 5, U.S. Code, in conformance with standards published by the U.S. Office of Personnel Management or, if no published standards apply directly, consistently with the most applicable published standards.

Typed Name and Title of Official Taking Action
Aldric Crawley
Pers Mgmt Spec, NAVSEA

Signature  Aldric Crawley

Date 7-11-02

22. Position Classification Standards Used in Classifying/Grading Position
OPM Handbook of Occupational Groups/Series; 343;
OPM PCS AAGEG(J TS-98; Aug 1990

Information for Employees. The standards, and information on their application, are available in the personnel office. The classification of the position may be reviewed and corrected by the agency or the U.S. Office of Personnel Management. Information on classification/job grading appeals, and complaints on exemption from FLSA, is available from the personnel office or the U.S. Office of Personnel Management.

| 23. Position Review | Initials | Date | Initials | Date | Initials | Date | Initials | Date | Initials | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Employee (optional) | | | | | | | | | | |
| b. Supervisor | | | | | | | | | | |
| c. Classifier | | | | | | | | | | |

24. Remarks
FPL GS-13
IWIA K, Level III, APC Yes
Bargain Unit: No

25. Description of Major Duties and Responsibilities (See Attached)
Previous Edition Usable

OF 8 (Rev. 1-1985)
U.S. Office of Personnel Management
FPM Chapter 295

enee C. Dutton

FINANCIAL AND BUSINESS DIVISION
~~CASE DEVELOPMENT~~ PROGRAM ANALYST
(GS-343-13)

I.    Introduction:

This position is Program Analysis Officer for the Case Development Division within
PMS380P. PMS380P is the Financial and Business Division of the Security Assistance
Program Office (PMS380), a Naval Sea Systems Command Designated (chartered) Program. The
Program office supports the Deputy Commander for surface Ships in the oversight and
coordination of all matters related to Security Assistance Programs. The Program
develops and implements agreements with Foreign Navies for providing materials, technical
assistance, and management services in support of construction, modernization, overhaul,
and maintenance of ships and associated shore facilities. The Program office is
responsible for establishing and implementing the National, Department of Defense and
Department of the Navy FMS policy guidance and objectives within the Command and assuring
the proper allocation of utilization of FMS resources within the Command. The Program
administers the FMS Administrative budget which annually averages over $8M.

This Division is responsible for financial matters and business management efforts
in the development, implementation, execution, reconciliation and closure of assigned FMS
cases. Additional responsibilities include internal contract management, FMS
ministrative budget process, Security Assistance Program Labor Cost and Defense
ilian Payroll Systems input, verification, and analyses, NAVSEA's Security Assistance
business base statistics, and dissemination/interpretation of case financial management
policy.

This Branch is responsible for:
- Development of pre-case data for Letter of Offer and Acceptance (LOA), Price and
  Availability (P&A) via the Defense Security Assistance Management System (DSAMS),
- Case amendments and modifications
- Obligational authority adjustments
- Maintaining and presentation of Security Assistance Program Business Base
  Statistics
- Development/interpretation/dissemination of case financial policy to the Command
- Overall justification and execution of the FMS document reconciliation
- Case reconciliation and case closure, through various initiatives such as  the
  Defense Security Coordination Agency (DSCA) Unliquidated obligations (ULO), Navy
  International Programs Office (NAVY IPO) enhanced accelerated case closure.
- Reconciliation and closure of all material and service (supply) complete cases
  implemented to NAVSEA.
- Hands on reconciliation efforts
- Preparation of the case closure certificate
- ADP systems processing

II.    Major Duties:

The incumbent is responsible to the Branch Head for financial systems support for
he Security Assistance Program pre-case data development in DSAMS for all Letters of
ffer and Acceptance (LOA), Price and Availability (P&A) data, case amendments and
modifications, FMS financial systems integrity, input and improvements. Specific duties
and responsibilities of the incumbent include:

A.    50% Pre-case financial data development and policy conformance

This position performs the overall pre-case financial data development for all FMS requests. This includes the preparation and review of LOA data sheets, case structure, Military Assistance Service Lines (MASL) data, NAVFORM 2061, manpower worksheets, financial analysis worksheets, payment schedules, termination and liability data sheets and other case financial data and reports as required by the Assistance Program Managers and Case Managers. The incumbent must be able to apply appropriate FMS surcharges, accessorial and administrative charges. The incumbent must insure pricing disciplines are in accordance with existing NAVSEA, Navy IPO, DSCA and Navy Comptroller (NAVCOMPT) policies and directives.

B.    20% Case Amendment and Modifications

The incumbent develops NAVFORM 2061s and other required case financial data to modification existing program requirements. Insures appropriate surcharges are applied.

C.    25% Systems Input, Reports and Improvements

Performs case control input requirements execution. This includes DSAMS, MISIL, and year-end rollover. Represents Security Assistance Program components to improve and streamline financial requirements, systems, policies and procedures. As the FMS Financial Systems Program Manager, the incumbent analyzes a wide variety of case financial problems, surveys the wide variety of databases within the Security Assistance community and selects appropriate data and generates tailored information to satisfy the requirements. Additionally, as the FMS Financial Systems Program Manager, the incumbent is responsible for developing and improving new and existing program systems with the focus on total quality management with regard to streamlining and elimination of unneeded, cumbersome financial systems requirements.

D.    5% Special Projects Management

Incumbent performs special projects as directed by the Branch or Division Director. Special projects assigned normally involve developing systems to capture and display data and to assist upper management in identifying adverse trends and recommending necessary corrective actions.

III.   FACTORS

Factor 1 - Knowledge required by the Position

Mastery of advanced concepts, principles and practices of the broad field of Security Assistance program management that enables the incumbent to serve as an authority in the development of NAVSEA SAP instructions, procedures and guidelines and to provide expert advice and guidance to higher authority and foreign customers. Ability to evaluate and incorporate the latest developments in the field into guidelines. The incumbent must be particularly knowledgeable in how these concepts, principles and practices are applied in the SAP.

A thorough knowledge of all aspects of SAP is required in order to have the ability to relate the financial function to program goals and objectives and provide effective management support to all phases of the program. The incumbent must be effective in recognize and resolving problems due to changing program deadlines and objectives; recognize and resolve conflicts in program and budgetary information and objectives, and changing guidelines for the work, caused not only by US policy changes but due to varying requirements of the foreign government.

The incumbent must be capable of displaying originality, sound judgement and versatility in leading and administering function of the Branch as well as the Project. The incumbent must possess a high degree of originality, resourcefulness, and diplomacy and personal tact in dealing with people both military and civilian, at all levels.

Knowledgeable of various USN appropriations in order to equate the function of those appropriations to FMS financial procedures and policies.

Knowledgeable of multiple ADP systems (STARS, MISIL, DSAMS, DIFS, NAVCOS, office automation systems) and be able to direct the development of additional ADP systems and improvements.

## Factor 2 - Supervisory Controls

The incumbent reports directly to the Branch Head, Financial Systems Support Branch, a position to which a GM 343-14 is assigned and who outlines broad policies and objectives to be pursued. This position receives general guidance and supervision, which requires the incumbent to exercise imagination and analysis of a wide range of complex financial program management techniques and responsibilities. The scope and dynamic nature of this position requires the independent action of the incumbent. Work is reviewed adherence to general branch and NAVSEA policy and accomplishment of objectives.

## Factor 3 - Guidelines

Guidelines include DOD and Security Assistance Act, Foreign Military Sales Act, Navy directives, DOD Security Assistance Management Manual (SAMM), the FMS Financial Management Manual published by OASD (Comptroller), various SECNAV and OPNAV instructions and the NAVSEA instructions and policy statements. The guides are written in broad general terms. This dictates that the incumbent must make decisions and issue value judgements. These decisions are based on SAP experience and knowledge.

## Factor 4 - Complexity

Financial case data, implementation, input and review are required by higher authority for all Command FMS cases. FMS financial data is used to develop a contract between the U.S. Government and foreign governments. The resulting contract is referred to as a case. All NAVSEA cognizant goods and services requested by foreign governments must be executed via the FMS contract (DD 1513). Efforts for this position necessitate financial case development for multi-year, multi-million dollar cases and requires decision and interpretation of broad policies and pricing direction in order to insure all applicable costs to the foreign customer are in order to ensure all applicable costs to the foreign customer are identified. New legislation and policy changes, foreign defense and U.S. political priorities, fluctuations in economies and other forces have sudden substantial impact on the kind of financial case data strategies and requirements needed by the organization. This position requires problem solving in order to derive useful and timely data for developing case financial support elements when needed data is missing. Ability to deal with changes in the program/projects caused by changes in foreign emphasis or advancing technologies and other developments have significant impact on case/program presentation and execution are typical difficulties encountered. Give direction and recommendations to higher financial and business authorities regarding lacking criteria applicable to solving unusual case financial development and presentation requires making adjustments.

## Factor 5 - Scope and Effect

Program execution could not be undertaken without provision of the required case financial support documentation, data, implementation, and input. The financial case data is required by higher authority at the Navy IPO and DSCA level. Case amendments and modifications are required in order to execute changes to the existing programs and to obtain needed additional obligational authority to continue with program case management execution. Analyses and recommendations have a direct affect on foreign payments to the FMS trust funds, and on the timing of USN actions in implementing the FMS programs.

## Factor 6 - Personal Contacts

Personal contacts involve face-to-face and telephone discussions on regular basis, t all level, within NAVSEA, Navy IPO and on occasion with foreign representatives. Incumbent ensures a solid network of contacts within NAVSEA and Navy IPO with defined orking procedures to achieve objectives.

Factor 7 - Purpose of Contacts

The purposes of contacts are to discuss financial policy, give advise, provide case financial data information, and to coordinate financial case structure and execution requirements. Contacts with Navy IPO are for the purpose of interpreting and resolving issues related to case structure and financial data presentation. Contacts with other SYSCOM components are for the purpose of providing advice and guidance on case financial and systems policies, procedures, requirements and resolution of conflicting matters.

Factor 8 - Physical Demands

The duties of this position are performed in an office environment and are primarily sedentary, however, the incumbent lifts and carries reference data, working papers, and similar items to and from the work area. A moderate amount of standing and walking is required in getting to and from meeting places away from the work site.

Factor 9 - Work Environment

Work is performed in a typical office setting, however, one that is subjected to an above normal amount of pressure and "short-fuse" deadlines. The employee periodically sits other offices in the surrounding complexes or at locations in other states and :ies. Travel away from the work site is normally by private automobile, common carrier (plane or train) or other public conveyance.

DEPARTMENT OF THE NAVY
OFFICE OF CIVILIAN PERSONNEL MANAGEMENT
800 N. QUINCY STREET
ARLINGTON, VA 22203-1998

JUN 4 2 09 PM '87

②

OCPMINST 12335.1
26 NOV 1986
OCPM-21

IN REPLY REFER TO

## OCPM INSTRUCTION 12335.1

From:  Director, Office of Civilian Personnel Management

Subj:  DEPARTMENT OF THE NAVY MERIT PROMOTION PROGRAM

Encl:  (1) CPI 335, Promotion and Internal Placement
       (2) CPI S335-1, Evaluation of Employees for
           Promotion and Internal Placement

1.  **Purpose.**  To publish the revised Department of the Navy Merit Promotion Program which supercedes all previous merit promotion program guidance.

2.  **Background.**  This instruction sets forth Department of the Navy policy regarding the Merit Promotion Program.  It changes the program emphasis by increasing flexibilities to the maximum extent allowed by law and regulation and provides management officials with a much greater role in the merit promotion process.

3.  **Action**

   a.  File enclosure (1) within the Basic Federal Personnel Manual, Chapter 335.

   b.  File enclosure (2) within Federal Personnel Manual Supplement 335-1.

DOROTHY M. MELETZKE
Director

Distribution:
(See page 2)

EXHIBIT
Shgle
3

PENGAD 800-631-6989

OCPMINST 12335.1

CPI 335

b. _Disclosure of information_. Disclosure of merit promotion information will follow guidance contained in the Privacy and Freedom of Information Acts and FPM Supplement 335-1, subchapters 5-3 and 6-1. All candidates must have equal access to information on merit promotion processes and procedures. Information that might give some candidates an unfair advantage shall not be released.

## 1-5.  COVERED PERSONNEL ACTIONS (EXCEPTIONS)

c.(1)(b) When accretion of duties is included as an exception, the following requirements must be met:

(1) The major duties of the employee's old position are absorbed into the new position, and the former is cancelled;

(2) The new position has no known promotion potential; and

(3) The additional duties do not adversely affect another incumbered position.

c.(8) Temporary promotion of an employee for more than 120 days to a grade level previously held on a permanent basis (except when the employee was demoted for personal cause).

c.(9) Repromotion of a current Federal employee in the competitive service to a grade (or equivalent level in another pay system or intervening grade) previously held on a permanent basis in the competitive service (except when demoted for personal cause).

c.(10) Reassignment, demotion, or promotion (including transfer) to a position having no higher promotion potential than that held or previously held on a permanent basis in the competitive service (except when demoted for cause). For example, a GS-4 who has held a GS-5 with promotion potential to GS-9 could be non-competitively placed in any position having promotion potential to GS-9 or below, if otherwise qualified.

6

*aedric Crawley*



**DEPARTMENT OF THE NAVY**
**HUMAN RESOURCES SERVICE CENTER, CAPITAL**
Nebraska Avenue Complex
291 Cryptologic Court NW
Washington, DC 20393-5442

12335
Ser 53/00-166
08 Jun 00

From: Director, Human Resources Service Center (HRSC), Capital

Subj: IMPLEMENTATION OF MERIT PROMOTION PLAN

Encl: (1) HRSC-CAPINST 12335 dtd 8 Jun 00

1. As you are aware, since our stand-up, HRSC Capital has relied on various non-standard procedures contained in activities' local merit promotion plans for internal recruitment (merit promotion) processes. On January 14, 2000 HRSC Capital issued a draft plan for comment. All comments received have been considered and many of those suggested comments have been incorporated in this final plan. Enclosure (1) outlines the HRSC Capital Merit Promotion Plan. Please note that the adoption of this plan will apply only to non-bargaining unit employees at your activities until such time as bargaining can be accomplished. This plan will be effective on July 16, 2000.

2. The Department of Navy has required that all Human Resources Servicing offices implement the use of the Standard Automated Inventory and Referral System (STAIRS). The key element to this new technology is commercial off-the-shelf applicant referral software called Resumix. This system will be used to fill positions, which would normally be filled through the merit promotion process. HRSC Capital serviced activities will be included under STAIRS in a phased plan. Enclosure (1) highlights any areas of merit promotion which require defined processes due to the STAIRS implementation.

3. Where activities must bargain before implementation, we request HROs identify covered employees. We will defer implementation until bargaining obligations are met. Our POC on bargaining is Stan Schoen at (202) 764-1004.

JEAN M. CAZAUBON

Distribution:
Director, HRO-W
Director, HRO NAVACAD
Director, HRO NSSC
Director, HRO NSWC Carderock
Director, HRO NSWC Dahlgren
Director, HRO NSWC Indian Head
Director, HRO ONR
Director, HRO S/HHRO

EXHIBIT
*Slagle*
4
1/16/07   TSA



**DEPARTMENT OF THE NAVY**
**HUMAN RESOURCES SERVICE CENTER CAPITAL**
**NEBRASKA AVE COMPLEX**
**3801 NEBRASKA AVENUE NW**
**WASHINGTON DC 20393-5442**

HRSC-CAPINST 12335
HRSC 53

**0 8 JUN 2000**

## HRSC CAPITAL INSTRUCTION

From: Director, Human Resources Service Center (HRSC), Capital

Subj:  MERIT PROMOTION PLAN

Ref:  (a) 5 CFR 300
      (b) 5 CFR 330
      (c) 5 CFR 335
      (d) CPI 335

1.  <u>Purpose</u>.  To describe merit promotion procedures set forth in reference (a), thru (d).

2.  <u>Scope</u>.  This instruction applies to all activities receiving staffing services from the HRSC Capital.  This instruction does not cover senior level positions.  The provisions of any current or subsequent negotiated labor-management agreement take precedence over this instruction for covered employees.  Demonstration regulations may augment this instruction.  This instruction supercedes all previously issued Human Resources Office Merit Promotion Plans.

3.  <u>Background</u>.  The Department of the Navy (DON), has required that all Human Resources Servicing offices implement the use of the Standard Automated Inventory and Referral System (STAIRS).  This new way of doing business is more streamlined and takes advantage of state-of-the-art information technology.  The key element to this new technology is commercial off-the-shelf applicant referral software called Resumix .  This system will be used to fill position normally filled through the merit promotion process.  HRSC Capital serviced activities will be included under STAIRS in a phased plan.  This plan is intended to cover all serviced activities regardless of STAIRS implementation stage.

4.  <u>General Provisions</u>.

    a.  The identification, qualification, evaluation and selection of candidates shall be made without regard to political, religious or labor organization affiliation or non-affiliation, marital status, race, color, sex, national origin, non-disqualifying physical handicap, age or sexual orientation and shall not be based on any criterion that is not job-related.  This agency provides reasonable accommodations to applicants with disabilities.  Automated tool(s) may be used to complement the merit staffing process to the extent practicable and feasible.

    b.  Pursuant to 5 USC 7201, each activity has an obligation to ensure that it's recruitment

programs are designed to eliminate underrepresentation of minorities and women. To meet this objective, Human Resources Office (HRO)/HRSC Capital officials and selecting officials will make every effort to identify and contact appropriate organizations that refer candidates to solicit minorities and women for vacancies for which recruitment is being conducted outside the activity.

c.  Supervisors and public officials are prohibited from participating in any portion of any selection process if a relative is under consideration. Neither supervisors nor public officials may advocate the selection of a relative. This does not preclude them from responding to an appraisal on a relative, provided they refrain from advocating, and annotate the relationship on the form.

1) Advocating would also include the referral of an application of a relative for consideration for employment, promotion, etc.

2) If a relative of the selecting official is among the candidates certified for selection, he/she must disqualify himself/herself and selection authority must be exercised at a higher level in the chain of command.

3) While working for relatives is not specifically prohibited, in all cases this kind of situation should be avoided. If it exists, consideration should be given to moving one or the other to some other part of the activity.

d.  Management reserves the right to fill positions by methods other than merit promotion, which may be used exclusively or concurrently with other methods/sources. Other sources may include, selections from Office of Personnel Management (OPM) registers, delegated examining, the Reemployment Priority List (RPL) or Department of Defense Priority Placement Program (PPP); selections of noncompetitive candidates; appointments made under Veterans Readjustment Authority (VRA), Veterans Employment Opportunity Act (VEOA), Schedules A, B or C, the Interagency Career Transition Assistance Program (ICTAP) or other appropriate authorities.

e.  Vacancies may be postponed, canceled, expanded or filled on a temporary basis in order to meet staffing needs, and provided merit promotion requirements are met. However any of these actions must be completed within the guidelines of the (PPP).

f.  All actions are subject to mandatory provisions of the PPP and any other applicable priority consideration programs.

g.  Positions for which DOD and /or Department of the Navy (DON) have established career programs will be filled in accordance with applicable career program instructions.

h.  Additional requirements of negotiated bargaining will be incorporated in the merit staffing process.

5.  Appendix A provides definitions for the terms used in this plan.

6.  <u>Coverage</u>.  Per reference (c), competitive procedures will be applied to covered personnel

actions as described below, unless excluded under Exceptions to Merit Staffing Procedures, described in paragraph 7:

a. Promotion, reassignment, demotion, position change, transfer or reinstatement to a position with more potential than any position the employee holds or previously held on a permanent basis in the competitive service (except as permitted by reduction-in-force (RIF) regulations).

b. Temporary promotions that exceed 120 days. (In computing the 120 days, an individual's non-competitive temporary service in all higher graded positions during the preceding 12 months is counted, including details and other temporary and term promotions). A time-limited promotion must have a definite no-to-exceed date. Time-limited promotions need not be in one-year increments and may be extended up to a total of five years. Extensions beyond five years are subject to prior OPM approval. Return to the position from which promoted, or to a different position of equivalent grade and pay, are not subject to adverse action or RIF procedures. A time-limited promotion is not to be used as a means of training or evaluation of an employee in a higher graded position. A temporary promotion may be made permanent without further competition provided it was originally made under competitive procedures and the fact that it might lead to a permanent promotion was made known to all potential candidates.

c. Term promotions.

d. Details that exceed 120 days to higher graded positions or to positions with more promotion potential (service is counted toward the 120 day limitation in the same manner prescribed in paragraph 6b above). Competitive details (regardless of grade) may be extended up to a maximum of one year. Exception: The maximum is two years for details to positions in an organization undergoing a commercial activities (A-76) study.

7. Exceptions to Merit Staffing Procedures. Competitive procedures do not apply to:

a. A promotion resulting from the upgrading of a position without significant change in the duties and responsibilities due to issuance of a new classification standard or the correction of classification error.

b. A position change permitted by reduction-in-force procedures in CFR 351.

c. Career promotions of employees when competition was held at an earlier date either through appointment from an OPM register or through internal merit promotion procedures (including the initial appointment of students in the Student Career Experience Program and in the Federal Junior Fellowship Program). The intent to promote must be made a matter of record.

d. A promotion resulting from an employee's position being reclassified at a higher grade because of additional duties and responsibilities.

3