```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

BRENDA J. LEE,                          )
                                        )
        Plaintiff,                      )
                                        )
        5.                              ) Civil No. 05-1335 RWR
                                        )
DONALD WINTER, Secretary,               )
United States Navy,                     )
                                        )
        Defendant.                      )
                                        )
```

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**Preliminary Statement**

In his opening brief, Defendant Donald C. Winter, Secretary of the Navy, clearly demonstrated that plaintiff's accretion of duties promotion claim should be dismissed for failure to timely exhaust administrative remedies. He also clearly established that there is undisputed evidence that plaintiff was not the victim of discrimination and/or retaliation when (1) she was denied an accretion of duties promotion; (2) she was not selected for a GS-13 position in SEA 63IC2; and (3) her supervisor redistributed three of her country assignments to co-workers. Finally, defendant amply demonstrated that plaintiff was not subjected to a hostile work environment.

Rather than respond to defendant's arguments -- which were supported by detailed and specific evidence, including citations to plaintiff's own testimony -- plaintiff's opposition offers

mainly unsupported, inflammatory, and/or largely irrelevant allegations.[1] Furthermore, plaintiff's opposition is not supported by competent, admissible evidence. The majority of the "facts" asserted in plaintiff's opposition (as well as her dispute with defendant's facts) lack citation to any evidence.

## ARGUMENT[2]

### I. Plaintiff Failed to Demonstrate that She Exhausted Her Administrative Remedies with Respect to Her "Accretion of Duties" Promotion Claim.

The undisputed evidence, including plaintiff's own testimony and pleadings, demonstrates that when plaintiff asked Randolph for an "accretion of duties" promotion on April 30, 2004, he denied her request, advising her that there was a "freeze" on such promotions. See Defendant's Statement of

---

[1] Plaintiff's opposition begins with what can only be called a "rant" about the Department of the Navy's position on homosexuality, followed by the completely unsupported claim that the Navy is more likely to retaliate against employees who have filed EEO claims concerning unwanted homosexual advances. Plaintiff's attempt to deflect consideration away from the legal issues presented to the Court and her ineffectual efforts to respond to defendant's argument and evidence should be rejected.

[2] Although defendant does not agree with all the allegations in plaintiff's factual background section of her memorandum, defendant will address only those facts that are relevant to defendant's motion and the legal issues presented therein.

2

Material Facts not in Dispute ("Facts"), Docket 29, at 5-6[3]; Amended Complaint, paras. 1, 20.  Nonetheless, plaintiff argues that Randolph did not unequivocally deny her request for an accretion of duties promotion because he also advised her that she could obtain a desk audit to determine whether the position she encumbered might be reclassified at a higher grade level.  Plaintiff's Opposition Memorandum ("Opposition") at 12.  Notably absent from plaintiff's argument, however, is any citation to evidence that Randolph in fact told plaintiff that a desk audit determination could result in plaintiff being noncompetitively promoted to the GS-13 level *via* accretion of duties.  See id. and the evidence cited therein.

In fact, plaintiff specifically agreed that she was told that in order to be considered for any kind of accretion of duties promotion there would have to be a desk audit.  Exh. 1, Lee Dep. at 37.  Under questioning by her own counsel, plaintiff testified that Randolph told her that if a desk audit showed that there had been an accretion of duties, her position would have to be competed.  Plaintiff's Exh 7, Lee. Dep. at 118.  Plaintiff concedes that such a statement constituted an

---

[3] Defendant's Facts contain citations to the evidence in this case.

3

"'unequivocal denial'" of the promotion request.  Opposition at 14.

Plaintiff's claim that she was not told that her position would have to be competed until she requested an accretion of duties promotion again in July 2004 is not supported by the evidence she cites.[4]  Rather, as shown above, under questioning from her own attorney plaintiff testified at her deposition that when she discussed the issue of a promotion with Randolph she was told that she would have to compete for any change in the status of her position.  Based on plaintiff's own testimony, therefore, the evidence is uncontroverted that Randolph denied plaintiff's request for an accretion of duties promotion on April 30, 2004.

Plaintiff argues that even if she failed to contact an EEO counselor in a timely fashion, her untimeliness should be excused because Randolph "lulled" her into inaction by making certain promises to her.  Opposition at 14-15.  In particular, according to plaintiff's "evidence" – an unsworn EEO counselor's summary of an interview with plaintiff in August 2004 – Randolph

---

[4] Plaintiff's claim that Randolph did not believe that he gave plaintiff a "final determination" until after her July 2004 request is not supported by the evidence plaintiff cites.  See Opposition at 13, citing Plaintiff's Exh. 1, Randolph Dep. at 73.

4

made certain promises to plaintiff, including a desk audit, approximately five months earlier, when plaintiff was about to file a formal complaint on a previous informal EEO complaint. Id. at 15 and Plaintiff's Exh. 8.

Defendant respectfully submits that even if this counselor's summary could be considered competent and admissible evidence, it does not establish any basis for equitable estoppel in this case.  By plaintiff's own "evidence," Randolph made certain promises to her approximately five months before she sought EEO counseling in August 2004 on her accretion of duties claim – i.e., in March 2004.  Clearly, since these alleged promises occurred before Randolph denied plaintiff's request for an accretion of duties promotion on April 30, 2004, they could not have lulled her into an untimely counselor contact on this claim.[5]   Accordingly, there is simply no evidence to support a claim of equitable estoppel, and plaintiff's claim should be dismissed as untimely.

---

[5] Further, according to plaintiff's "evidence," the alleged promise by Randolph caused her to refrain from filing a "formal EEO complaint," not from contacting a counselor in a timely fashion as she claims was the case here.

5

### II. There is No Evidence of Discrimination or Retaliation in Connection With the Denial of An Accretion of Duties Promotion

Even if this Court finds that plaintiff has properly exhausted her accretion of duties claim, based on the totality of the evidence in this case, a reasonable jury could not conclude that Randolph denied plaintiff's request for discriminatory or retaliatory reasons.  Defendant has articulated a legitimate, non-discriminatory reason for why Randolph denied plaintiff's request for an accretion of duties promotion – i.e., NAVSEA HQ had a policy prohibiting such noncompetitive promotions.  In her opposition brief, plaintiff has not produced any evidence establishing that this reason was false or otherwise pretextual.

Plaintiff has not introduced any evidence that NAVSEA HQ did not have such a policy during the relevant time period. Although she tries to establish pretext by contending that the policy was not "bona fide," she has introduced no evidence that the policy was not valid.  The fact that the policy prohibiting accretion promotions was discussed by senior managers during a luncheon meeting does not demonstrate that the policy was not valid.  Similarly, the fact that NAVSEA HQ did not formally amend the Navy's merit promotion plan does not demonstrate that

6

its policy on accretion of duties promotions was not "bona fide." Indeed, plaintiff has failed to set forth any evidence that any formal modification of the Navy's plan was required. Further, plaintiff has not introduced any evidence that during the relevant time period, defendant granted an accretion of duties promotion to any employee.

Although it is not clear, plaintiff appears to argue that there is evidence or pretext because Randolph took certain actions that prevented her from obtaining a desk audit. According to plaintiff, the desk audit would have shown either that she deserved an accretion of duties promotion or that her position description was misclassified at the GS-12 level. Opposition at 24.[6]

These assertions, however, are irrelevant and do not establish pretext. As set forth above, plaintiff has introduced

---

[6] To the extent that plaintiff now raises the denial of a desk audit as a claim, she has neither pled nor administratively exhausted this allegation. In particular, in her Amended Complaint, she clearly alleges that she requested and was denied an accretion of duties promotion. Amended Complaint, para. 18. She does not allege that she was denied a desk audit or was, in any way, dissuaded from obtaining one. Further, during the administrative process, although plaintiff initially filed a formal complaint in which she claimed that she was denied a desk audit, she immediately clarified her allegation to reflect her belief that she was denied an accretion of duties promotion. ROI #1 at 71; ROI Tr. #1 at 33.

7

absolutely no evidence to rebut defendant's articulated reason for denying her an accretion of duties promotion – <u>i.e.</u>, NAVSEA HQ had a policy prohibiting accretion of duties promotions. As such, it is clear that even if plaintiff had obtained a desk audit, she could not have received a noncompetitive accretion of duties promotion. Similarly, plaintiff's claim that a desk audit would have shown that her position description was misclassified as a GS-12 cannot establish pretext. As stated above, plaintiff asked for an accretion of duties promotion and Randolph denied the same based on the policy which prohibited such promotions.[7] As such, whether plaintiff's position description was misclassified is irrelevant to the ultimate issue in this case – <u>i.e.</u>, whether Randolph's articulated reason for denying plaintiff's request for an  accretion of duties promotion was a pretext for discrimination or retaliation.[8]

---

[7] Notwithstanding her claim to the contrary (see Opposition at 22-23), plaintiff has introduced absolutely no evidence that she alerted anyone at the Defendant agency to her belief that her position description had been misclassified at the GS-12 level.

[8] In fact, the two allegations are quite different. A request for a review of one's position description to see if it was misclassified is premised on a belief that the information set forth in the position description accurately reflects the incumbent's duties and responsibilities but that the position was erroneously classified under OPM guidance. Exh. A, attached, McCafferty Dep. at 40.  In contrast, a request for an accretion of duties promotion is

8

Finally, in an effort to establish pretext, plaintiff claims that Randolph did not accurately tell her what would happen if a desk audit showed that her position could be reclassified to the GS-13 level (based on the assumption of additional, higher-graded duties) and she unsuccessfully competed for any position he decided to advertise. Opposition at 24. This allegation similarly misses the mark. Even if this were true, it would not undermine Randolph's reason for denying plaintiff's request for a noncompetitive accretion of duties promotion. That type of promotion was precluded by NAVSEA HQ policy, and the undisputed evidence shows that Randolph accurately advised her in this regard.[9]

### III. There is No Evidence of Discrimination or Retaliation in Connection With the Non-Selection of Plaintiff for a GS-13.

---

premised on a belief that the employee has assumed additional, higher-graded duties not set forth in her position description. Id.

[9] Plaintiff's discussion about the two versions of her position description is completely irrelevant. See Opposition at 21-22. Plaintiff cites no authority that she could have been given an accretion of duties promotion without someone doing a desk audit that would have examined her position description. Only had such an audit been performed would the issue of which was the accurate position description have come into play. Therefore, the issue of the two position descriptions is nothing more than a red herring.

9

Defendant has articulated a legitimate, non-discriminatory reason for Randolph's decision to select Britton for the GS-343-13 position in SEA 63IC1 – *i.e.*, it was permissible under personnel policies to use the May 19, 2004 selection certificate, initially generated to fill the GS-343-13 position in SEA 63IC2, to fill the GS-343-13 position in SEA 63IC1. Further, plaintiff's name was not on that certificate. In her opposition brief, plaintiff does no more than argue how she thinks the selection should have proceeded. She does not, however, produce any evidence that defendant's reason for non-selecting her was a pretext for discrimination or retaliation.

In particular, although plaintiff claims that the defendant engaged in a "bizarre" series of "maneuvers," she has failed to produce any evidence of any irregularity in the process used to select Britton. She has failed to introduce any evidence that NAVSEA HQ did not have a personnel policy that allowed the use of a selection certificate for multiple selections under certain circumstances or that those circumstances were not met in the instant case.[10] Nor has plaintiff introduced any other evidence that Randolph's decision to use the certificate was

---

[10] In fact, plaintiff conceded that she does not know whether or not, as a matter of personnel rules or policy, Randolph was allowed to use the selection certificate. Exh. 1, Lee Dep. at 51.

10

motivated by discrimination or retaliation.  Dispositive of this issue is the fact that there is absolutely no evidence that when Randolph made the decision to use the selection certificate, he knew that plaintiff had not applied for the earlier advertised position in SEA 63IC2.  Nor has plaintiff introduced evidence that Randolph knew that plaintiff's name was not on the May 19, 2004 selection certificate when he made the decision to use the certificate for the SEA 63IC1 position.  In fact, plaintiff conceded that she does not know what documents Randolph had in his possession when he made the decision to use the selection certificate.  Exh. 1, Lee Dep. at 55-56.

**IV.  There is No Evidence of Discrimination or Retaliation in Connection With the Redistribution Of Certain of Plaintiff's Job Duties.**

In her opposition brief, plaintiff fails to establish that she was harmed in any way as a result of Seibel's decision to redistribute responsibility for Egypt, Australia and Korea to plaintiff's co-workers.  Although plaintiff claims that she was harmed because these were her "principal" countries, she has produced no evidence of any tangible harm.  She has produced no evidence that she was assigned significantly different responsibilities or job functions or that she was required to use a lesser degree of skill in executing her job

11

responsibilities as a result of this decision. Further, although plaintiff again claims that she was left with "virtually no work to do" as a result of Seibel's decision, she has produced no evidence to support this claim. In fact, the undisputed evidence is otherwise – <u>i.e.</u>, she continued to process actions for 26 countries, some of which had a fair amount of work associated with them, were complex to process, or were high visibility because of the war on terror. Plaintiff even characterized some of these countries as "major." <u>See</u> Facts at 32.

    Nor is there any other evidence that plaintiff was otherwise harmed by the decision to redistribute her responsibility for Egypt, Australia and Korea. She has failed to demonstrate through any competent evidence that her performance ratings suffered or that she lost any promotional opportunities. In fact, she has failed to show that she was harmed in any regard. Accordingly, based on all of the above, it is clear that plaintiff was not subjected to any tangible harm when Egypt, Australia, and Korea were reassigned to other employees. As such, she was not subjected to any adverse action and cannot establish a <u>prima facie</u> case of discrimination or retaliation. <u>See</u>, <u>e.g.</u>, <u>See</u> <u>Nurridin</u>, 382 F. Supp.2d at 94.

12

Moreover, plaintiff has failed to rebut defendant's articulated legitimate, non-discriminatory reason for Seibel's decision to temporarily redistribute plaintiff's responsibility for Egypt, Australia and Korea to co-workers – _i.e._, to lighten plaintiff's workload and more evenly distribute work among the analysts.  In fact, the overwhelming evidence demonstrates that plaintiff believed her workload was the heaviest among the analysts and actively sought management action to correct this imbalance. Facts at 26-27.   Although Seibel initially concurred with plaintiff's recommendation to redistribute a number of countries, he later reconsidered, as was within his discretion as plaintiff's supervisor, and decided to redistribute Egypt, Australia and Korea.  Seibel's decision to redistribute these three countries – because they had more work associated with them – was entirely consistent with his stated purpose for the redistribution – _i.e._, to lighten plaintiff's workload.[11]

---

[11] Plaintiff argues that Seibel's public statement to her – i.e., that she needed to "bring up the quality of [her]work," is sufficient to take this claim to the jury. However, as set forth in defendant's opening brief, this statement was entirely neutral and made no reference, direct or indirect, to plaintiff's race, age or participation in prior EEO activity.

13

In <u>Freedman</u> v. <u>MCI Telecommunications Corp.</u>, 255 F.3d 840 (D.C. Cir. 2001), the Court of Appeals for this Circuit held that:

> Quite simply, a temporary assignment to a less desireable task does not create liability under Title VII unless it results in a diminution of pay or benefits or affects such things as future employment opportunities **"such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." Brown, 199 F.3d at 457.**

<u>Id</u>. at 848 (emphasis in original). <u>See</u> <u>also</u> <u>Lester</u> v. <u>Natsiois</u>, 290 F. Supp.2d 11, 29 (D.D.C. 2003) (undesireable work assignments do not rise to the level of adverse employment actions; "changes in responsibilities are not adverse employment actions, but rather constitute only the 'ordinary tribulations of the workplace' which employees should expect"); <u>Mack</u> v. <u>Strauss</u>, 134 F. Supp.2d 103, 113 (D.D.C. 2001), <u>aff'd</u> 2001 WL 1286263 (D.C. Cir. Sept. 28, 2001) (increased workload not actionable when not accompanied by adverse changes in terms, conditions, or privileges of employment).

### V. **Plaintiff Has Conceded her Hostile Work Environment Claim.**

Plaintiff has submitted absolutely no evidence or argument to counter defendant's motion for summary judgment on her hostile work environment claim. As such, she has effectively conceded that she cannot establish a <u>prima facie</u> case of a

14

hostile work environment. Accord LcvR 7(h); Taylor v. FDIC, 132 F.3d 753, 763 (D.C. Cir. 1997) (regarding failure to respond to opposing party's assertion: "Dignified silence is a dangerous tactic at best; here it proves fatal.").

## CONCLUSION

Accordingly, for the reasons set forth above, and those set forth in defendant's prior memorandum, dismissal and summary judgment should be granted to defendant.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____/s/_____
MARINA UTGOFF BRASWELL, D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 514-7226