# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRENDA J. LEE,** | **Civil Action No. 05-1335 (BJR)** |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM OPINION** |
| **RAYMOND EDWIN MABUS,** **Secretary of the Navy,** | |
| **Defendant.** | |

### GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on [Dkt. # 29] the motion to dismiss or, in the alternative, for summary judgment filed by Defendant the Secretary of the Navy ("the Secretary"). Plaintiff Brenda Lee, an African-American born in 1948, alleges that while employed at the Security Assistance Programs Division of the Naval Sea System Command ("NAVSEA"), she was discriminated against because of her race and age, and retaliated against because of her protected equal employment opportunity ("EEO") activities in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*[1] The Secretary moves to dismiss Lee's amended complaint or, alternatively, for summary judgment. The Court has thoroughly reviewed the Secretary's

---

[1] Lee also brings a hostile work environment claim against the Secretary. To make out a hostile work environment claim, Lee must show that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citation and quotation marks omitted). However, by not addressing them in her opposition to the defendant's motion, Lee concedes the Secretary's arguments that "there is no evidence that any offensive or abusive language was directed at" her and that there was not a pervasive pattern of harassment, Def.'s Mot. to Dismiss & for Summ. J., Def.'s Br. at 38–39. *See Fed. Deposit Ins. Corp. v. Bender*, 127 F.3d 58, 67 (D.C. Cir. 1997). Because Lee has not made out a prima facie case of hostile work environment, judgment will be entered for the Secretary on this claim.

motion, related briefings, and the entire record of this case. For the reasons elaborated below, the Court grants the Secretary's motion for summary judgment.

## I. BACKGROUND[2]

### A. Factual Background

Plaintiff Brenda Lee is an African-American born in 1948. Def.'s Mot. to Dismiss & for Summ. J. ("Def.'s Mot."), Def.'s Stmt. of Undisputed Material Facts ("Def.'s Stmt.") ¶ 1. During the events relevant to this case, Lee was a GS-12 program analyst at NAVSEA.[3] In this capacity, Lee was "responsible for the pre-case development of foreign military sales . . . cases in the Defense Security Assistance Management System." *Id.* ¶ 2.

In July 1998, Carolyn Bolling, a NAVSEA employee, filed an EEO complaint alleging same-sex sexual harassment against her direct supervisor, Christine Chaikowski. Pl.'s Opp'n, Ex. 2 (Bolling Decl. ("Bolling Decl.") ¶ 2). Lee supported Bolling's complaint by submitting a written declaration in 1999 and testifying at Bolling's EEO Commission ("EEOC") administrative hearing in 2002. *Id.* ¶¶ 6–7.

In April 2004, Lee requested an accretion of duties promotion[4] to the GS-13 level from Hercules Randolph, her third level supervisor. Def.'s Stmt. ¶ 5. The parties dispute Randolph's response. The Secretary contends that Randolph told Lee "that there was a 'freeze' on accretion of duties promotions." *Id.* ¶ 6. Lee, however, asserts that Randolph "stated or implied that he

---

[2] This section cites only undisputed portions of the Defendant's Statement of Undisputed Material Facts except where noted otherwise. *See generally* Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss & Mot. for Summ. J., Pl.'s Resp. to Def.'s Stmt. of Material Facts as to Which There is No Genuine Issue.

[3] "GS" is the "General Schedule" pay scale for federal employees. *See Gilbert v. Napolitano*, 670 F.3d 258, 260 (D.C. Cir. 2012). Under the schedule, a federal employee's pay increases as her GS level increases.

[4] An "accretion of duties" promotion is a promotion resulting from an employee's position being reclassified at a higher level because of additional duties or responsibilities. *See Rand v. Sec'y of the Treasury*, 816 F. Supp. 2d 70, 72 n.1 (D.D.C. 2011).

could help Ms. Lee obtain a promotion through a desk audit." Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss & Mot. for Summ. J. ("Pl.'s Opp'n"), Pl.'s Resp. to Def.'s Stmt. of Material Facts as to Which There is No Genuine Issue ("Pl.'s Resp.") ¶ 6. The parties agree that Randolph told Lee that she could request a desk audit[5] to see if her current position should be reclassified at a higher level. Def.'s Stmt. ¶ 7. He later warned her, however, that if the desk audit showed that her position should be reclassified at a higher level, the position would be advertised and Lee would have to compete for it. *Id.* ¶ 8. Lee never requested a desk audit. *See id.* ¶ 9.

Later in April 2004, NAVSEA announced and advertised a vacancy for a GS-13 program analyst position in 63IC2, another office in NAVSEA. *Id.* ¶ 13. Lee did not apply for the position in 63IC2. Pl.'s Opp'n at 9. NAVSEA ultimately decided to laterally reassign Kathy Ton to the 63IC2 position creating a vacancy in 63IC1. Rather than advertising Ton's old GS-13 program analyst position, the selection committee chose a candidate from the already-generated list of applicants qualified for the 63IC2 position. Def.'s Stmt. ¶¶ 19–20. The panel recommended that Randolph hire Marivic Britton, a younger, white employee with no prior EEO activity. *Id.* ¶¶ 21–22. Randolph selected Britton for the 63IC1 position on July 13, 2004.

In December 2004, Lee was responsible for monitoring activity in 40 countries. Pls.' Opp'n, Ex. 8 at 96. Lee "believed that she had the heaviest workload and asked that some of her work be redistributed to the other analysts." Def.'s Stmt. ¶ 26. Lee volunteered to give up a number of smaller countries that required less work. Ultimately, in April 2005, Donald Seibel, Lee's first level supervisor, decided to reassign 11 countries which Lee had proposed be

---

[5] "[A] desk audit is a process by which an employee may request his or her work to be reviewed" to determine if "that work is at a level higher than that at which the employee is currently graded." *See Williams v. Dodaro*, 806 F. Supp. 2d 246, 249 n.2 (D.D.C. 2011).

transferred.  In addition, Seibel also reassigned to Lee's coworkers Australia, Egypt, and Korea which were deemed significant and substantial in light of their volume, complexity, and role in the war on terrorism.  *Id.* ¶¶ 20, 28; Def.'s Mot., Ex. 8 (Donald Seibel Dep. ("Seibel Dep.") at 126:17–127:2, 127:22–128:1).

### B. Procedural History

On August 3, 2004, Lee contacted an EEO officer alleging that Randolph discriminated and retaliated against her by denying her an accretion of duties promotion and by not advertising the GS-13 63CI1 position and thus denying Lee a chance to compete for it.  Def.'s Stmt. ¶ 35.

On May 24, 2005, Lee again contacted an EEO officer alleging, in part, that Seibel discriminated and retaliated against her when he reassigned Australia, Egypt, and Korea to others.  She also alleged that Randolph discriminated and retaliated against her by not selecting her for the GS-13 63CI1 position.  *Id.* ¶ 36.

Lee brought suit on July 1, 2005 alleging discrimination on the basis of race and age and retaliation in violation of Title VII and the ADEA.  Specifically, Lee claims that the Secretary discriminated and retaliated against her by (1) not upgrading Lee's GS-12 position to a GS-13 position through an accretion of duties promotion, (2) not selecting Lee for the GS-13 program analyst position, and (3) reducing Lee's work responsibilities.  *See* Am. Compl. ¶¶ 23–25.  The Secretary moves for summary judgment arguing that Lee has failed to exhaust her accretion of duties promotion claim and that no genuine issue of material fact exists as to any claim.[6]

---

[6] In the alternative, the defendant moves to dismiss Lee's accretion of duties promotion claim under Federal Rule of Civil Procedure 12(b)(6).  Under Rule 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  In deciding a motion to dismiss, a court may consider "only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice."  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  Where "'matters outside the pleadings are presented to and not excluded by the court, [a Rule 12(b)(6) motion] must be treated as one for summary judgment under Rule 56.'"  *Morrison v. Sec'y of Defense*, 760 F. Supp. 2d 15, n.1 18 (D.D.C. 2011) (quoting FED. R. CIV. P. 12(d)).  Since both the Secretary and Lee rely on materials outside the pleadings to argue whether Lee's accretion of duties promotion claim should be dismissed, *see, e.g.*, Pl.'s

## II. LEGAL STANDARD – SUMMARY JUDGMENT

Summary judgment may be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A dispute is "genuine" if a reasonable jury, given the evidence presented, could return a verdict for the nonmoving party.  *Musick v. Salazar*, 839 F. Supp. 2d 86, 93 (D.D.C. 2012) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  "'A fact is material if a dispute over it might affect the outcome of a suit under the governing law.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"'To survive a motion for summary judgment, the party bearing the burden of proof at trial must provide evidence showing that there is a triable issue as to an element essential to that party's claim.'"  *Etheridge v. FedChoice Federal Credit Union*, 789 F. Supp. 2d 27, 32 (D.D.C. 2011) (quoting *Arrington v. United States*, 473 F.3d 329, 335 (D.C. Cir. 2006)).  Neither a "'mere . . . scintilla of evidence,'" *Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 123 (D.C. Cir. 2011) (quoting *Anderson*, 477 U.S. at 252), nor "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), will suffice to defeat summary judgment.  Instead, the nonmovant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  In considering a summary judgment motion, a court is to draw all justifiable inferences from the evidence in favor of the nonmovant.  *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011).

---

Opp'n at 12 (citing Pl.'s Opp'n, Ex. 1 (Hercules Randolph Dep.)); Reply Br. in Supp. of Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J. at 3 (citing Def.'s Reply, Ex. 1 (Brenda Lee Dep.)), the motion to dismiss will be treated as a motion for summary judgment.

## III. ANALYSIS

### A. The Secretary Has Not Shown that Lee Failed to Timely Exhaust Her Administrative Remedies

Before filing a civil action under Title VII or the ADEA, the aggrieved party must timely exhaust her administrative remedies. *Washington v. Wash. Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998). To satisfy the exhaustion requirement, a plaintiff raising claims of a discrete discriminatory act — such as failure to promote — must initiate informal contact with an EEO counselor within 45 days of when the allegedly discriminatory act occurred. *See* 29 C.F.R. § 1614.105(a)(1). "Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). It is undisputed that Lee first initiated informal contact with an EEO counselor on August 3, 2004. *See* Def.'s Stmt. ¶ 35. Thus, any discrete discriminatory acts that occurred before June 19, 2004 are time barred.

The Secretary argues that Lee was denied an accretion of duties promotion on April 30, 2004 when Randolph told Lee that NAVSEA was not offering such promotions but that Lee could request a desk audit. *See* Def.'s Mot., Ex. 3 (Hercules Randolph Dep. ("Def.'s Randolph Dep.") at 51:1–11). Lee counters that on April 30, 2004, Randolph told Lee only that she could request a desk audit for a promotion. *See* Pl.'s Opp'n at 12 (citing *id.*, Ex. 7 (Brenda Lee Dep. ("Pl.'s Lee Dep.") at 30:2–3)). Instead, Lee argues that Randolph unequivocally denied her request for an accretion of duties promotion on July 21, 2004 when Randolph told Lee that if she requested a desk audit, and the desk audit "showed her duties to exceed her grade level, he would have to open her position to competition," *id.* at 13, and that accretion of duties promotions not subject to competition were unavailable. Pl.'s Opp'n at 13; *see also* Pl.'s Lee Dep. at 37:7–16; Pl.'s Opp'n, Ex. 8 (Rpt. on Investigation ("ROI") at 22–23).

It is undisputed that the allegedly discriminatory decision to not promote Lee "occurred" when Lee was told that if she requested a desk audit and it showed that her position should be graded at a higher level, she would not receive an accretion of duties promotion but would instead have to compete for the newly graded position.  The parties also agree that Lee eventually learned of this process.  However, Lee has provided sufficient evidence to create a dispute of fact as to whether she learned of this process in July 2004 and not April 2004 and thus timely exhausted her accretion of duties promotion claim.  Because there is a disputed question of material fact regarding when Lee's request for an accretion of duties promotion was denied, summary judgment will be denied for the Secretary on this claim.

### B. The Secretary's Motion for Summary Judgment Must be Granted as to Lee's Discrimination Claims

### 1. Legal Standard — Title VII and ADEA Claims

Under the framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff claiming discrimination under Title VII or the ADEA carries the initial burden of establishing a prima facie case of discrimination.  *Id.* at 802; *Krodel v. Young,* 748 F.2d 701, 705 (D.C. Cir. 1984) (stating that the *McDonnell Douglas* framework applies to ADEA claims).  If a plaintiff makes out a prima facie case, the burden shifts to the employer to "produc[e] a non-discriminatory explanation for the challenged personnel action."  *Ford v. Mabus*, 629 F.3d 198, 201 (D.C. Cir. 2010).  If the employer provides a legitimate, non-discriminatory reason for the action, then the plaintiff must show "that discriminatory animus was the determining or but-for cause of the personnel action."  *Id.*

If a defendant in a Title VII or ADEA matter presents a legitimate non-discriminatory explanation for its actions, "the 'one central inquiry' on summary judgment is 'whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted

non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis.'" *Hamilton v. Geithner*, 666 F.3d 1344, 1351 (D.C. Cir. 2012) (quoting *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008)).  A court considers

> "whether the jury could infer discrimination from the combination of (1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff or any contrary evidence that may be available to the employer."

*Id.* (quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1289, 1291 (D.C. Cir. 1998) (*en banc*)).  A plaintiff need not "'submit evidence over and above rebutting the employer's stated explanation in order to avoid summary judgment.'"  *Id.* (quoting *Aka*, 156 F.3d at 1290).

### 2. Accretion of Duties Promotion

Lee argues that Randolph discriminated against her by denying her an accretion of duties promotion.  To establish a prima facie case of discrimination

> for failure to promote under Title VII or the ADEA, plaintiff must show that (1) [she] belongs to a protected group; (2) [she] was qualified for and applied for a promotion; (3) [she] was considered for and denied the promotion; and (4) other employees who were not members of the protected group were indeed promoted at the time plaintiff's request for a promotion was denied.

*Marshall v. Shalala*, 16 F. Supp. 2d 16, 19 (D.D.C. 1998); *accord Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 n.1 (D.C. Cir. 2008).  The Secretary argues that Lee cannot establish a prima facie case of discrimination and also offers a legitimate non-discriminatory business reason for denying Lee's request for an accretion of duties promotion.

### a. Lee Has Not Established a Prime Facie Case of Discrimination for Denying Her Request for an Accretion of Duties Promotion

The Secretary contends that Lee cannot make out a prima face case of discrimination for three reasons.  First, Lee "never took the steps necessary to 'apply for' an 'accretion of duties'

grade increase, including seeking a desk audit." Def.'s Mot., Def.'s Br. at 27–28. Second, Lee

was not qualified for the promotion. Third, Lee has not shown that other, similarly situated

employees received accretion of duties promotions.

Lee does not contest, as she cannot, that she did not request a desk audit. *See* Pl.'s Resp.

¶¶ 7–11 (conceding the Secretary's statement that "[p]laintiff decided not to seek a desk audit").

During her deposition, Lee, herself, testified that she "never brought up the desk audit, period[,]"

Def.'s Mot., Ex. 1 (Brenda Lee Dep. ("Def.'s Lee Dep.") at 29:25; *accord id.* at 29:21, 37:17–

19, though Randolph had informed her that a desk audit would necessarily precede any

promotion, *id.* at 37:7–12; *see also* ROI at 22.[7]

Similarly, Lee has not shown that she was qualified for a promotion. To support her

argument that she was qualified for a promotion, Lee points to her GS-12 program analyst

position description and her coworker Renee Dutton's GS-13 program analyst position

description. *See id.* at 51–60. While the descriptions are similar, they are not identical. For

instance, one of both Lee's and Dutton's major duties is "Systems Input, Reports and

Improvements." While this duty is 5% of Lee's position, it is 25% of Dutton's position. Lee

provides evidence that the "differences in percentage of time spent do not appear to be material

inasmuch as the same level of knowledge is required regardless of the time spent." Pl.'s Opp'n,

Ex. 6 (Larry Slagle Dep., Ex. 3 (Letter from Larry B. Slagle, Human Resources Consultant, to

Charles W. Day, Jr., Gebhardt & Assocs., LLP (Mar. 3, 2006) ("Slagle Letter") at 3)). However,

---

[7] Instead, in her opposition, Lee contends that she was discriminatorily discouraged from requesting a desk audit. Lee has not pled a denial of desk audit claim in her amended complaint and offers no evidence that she timely exhausted her administrative remedies on this claim. *See* Am. Compl. ¶ 18. Moreover, Lee has not shown that denying her a desk audit is an adverse employment action actionable under Title VII and the ADEA. *See Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) ("An 'adverse employment action' . . . is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998))).

Lee has not shown that this difference is inconsequential. For instance, "Systems Input, Reports, and Improvements" may be more difficult than some of Lee's other major duties. Thus, while a jury may find that Lee's duties were similar to a GS-13 program analyst's position, she has not demonstrated that she was qualified for a GS-13 program analyst position.

Also, Lee has not shown that there was an employee who was not a member of the protected classes who was given an accretion of duties promotion at the time that her request was denied. During her deposition, Lee testified that her co-worker Rochelle Austin "got two promotions in one year" without desk audits. Pl.'s Lee Dep. at 33:12–25. However, the record does not reflect Austin's race or age. Thus, this evidence is insufficient to establish a prima facie case of discrimination.

### b. Lee Has Not Shown that the Secretary's Legitimate Business Reason for Denying Her Request for an Accretion of Duties Promotion is Pretext

The Secretary proffers a legitimate, nondiscriminatory reason for its decision not to award Lee an accretion of duties promotion: NAVSEA had a policy barring noncompetitive accretion of duties promotions. Lee counters that NAVSEA did not have a bone fide policy against such promotions. She also argues that the Secretary's reason is pretext for intentional discrimination.

The Secretary has presented ample evidence showing that NAVSEA prohibited noncompetitive accretion of duties promotions during the period in question. For example, when Lee requested such a promotion, Randolph told Lee that "command" barred him from awarding noncompetitive accretion of duties promotions. Def.'s Lee Dep. at 38:3–6, 41:6–8; Def.'s Mot., Ex. 2 (Lee Statement before Office of Compl. Investigations at 33:21–34:2); Def.'s Randolph Dep. at 51:9–11, 52:1–3, 68:11–14. William D. McCafferty, the Director of the Command Human Resources/EEO Division at NAVSEA, also testified that NAVSEA "had and has a policy

requiring that there be no noncompetitive accretion of duties promotions."  Def.'s Mot., Ex. 13

(William Daniel McCafferty Dep. at 20:2–4, 20:11–18); *see also* Def.'s Mot., Ex. 14 (William

D. McCafferty Decl. ¶ 4 ("[O]n March 31, 2004, . . . NAVSEA's Executive Director, Pete

Brown, reiterated the NAVSEA HQ policy that noncompetitive accretion promotions were not

authorized.")).  Finally, the minutes of a March 31, 2004 Business Transportation Executive

Team meeting reflect the same policy.  Def.'s Mot., Ex. 14, B-Codes Lunch Meeting Minutes

¶ 5.

Lee argues that the Navy's Merit Promotion Plan set the governing policies and under the

Promotion Plan, employees could receive noncompetitive accretion of duties promotions.  Lee

baldly asserts that the Merit Promotion Plan was not properly modified to conform to

NAVSEA's alleged policy barring noncompetitive accretion of duties promotions and thus, she

argues that NAVSEA's policy never "had any legal effect."  Pl.'s Opp'n at 23.  To support her

assertion, Lee cites page 51 of plaintiff's expert and consultant in Federal Personnel

Administration Larry Slagle's deposition.  *Id.*  However, the excerpts she provides of Slagle's

deposition end at page 46.  She otherwise presents no evidence supporting the proposition that,

in order to take effect, NAVSEA's policies must have been formally incorporated in the Navy's

Merit Promotion Plan.  *See* Pl.'s Opp'n at 7.  Accordingly, Lee has not provided sufficient

evidence to create a genuine dispute of fact that NAVSEA did not have a policy prohibiting

noncompetitive accretion of duties promotions.[8]

---

[8] Lee does provide evidence that Randolph erred in telling Lee "that she would have to compete for the higher graded position if one resulted from a desk audit" because Randolph's statement was not in line with the Navy's Merit Promotion Plan.  Slagle Dep., Ex. 3 at 5.  Even drawing all reasonable inferences in Lee's favor, she has at best identified a problem of inconsistent policies rather than the lack of any policy prohibiting noncompetitive accretion of duties promotions at all.

Lee also argues that the Secretary's proffered reason for denying her accretion of duties promotion is pretext because Lee's position was misclassified as a GS-12 position.  However, Lee has not shown that even if her position was misclassified, NAVSEA could have reclassified it as a GS-13 position without competition.  Moreover, Lee has not demonstrated that her position should have been classified as a GS-13 position.  Lee provides evidence that her position description was similar to Dutton's GS-13 position description.  Lee's evidence, however, suggests that her and Dutton's positions should be at the same level not that her position should be classified at the GS-13 level.  *See* Slagle Dep. at 31:14–20 ("A. I repeat again that it's my opinion that, based on the documents I reviewed[,] . . . they should have been classified at the same level.  Q. And what level should that be?  A. I did not render an opinion on that and I'm not prepared to do so now because a classifier would want to do more than make just a paper review.").  Thus, Lee's evidence concerning misclassification is insufficient to defeat summary judgment.[9]

### 3. Non-selection for GS-13 Program Analyst Position

Lee claims that Randolph discriminated against her by selecting Britton instead of her for the GS-13 63IC1 program analyst position.  To establish a prima facie case of non-selection,

> the plaintiff must show that (1) [she] is a member of a protected class; (2) [she] applied for and was qualified for an available position; (3) despite [her] qualifications [she] was rejected; and (4) either someone not of [her] protected class filled the position or the position remained vacant and the employer continued to seek applicants.

---

[9] Lee also argues that Randolph mislead Lee to believe that she would likely lose her job if she requested a desk audit.  This argument is irrelevant because it goes to whether Lee would have requested a desk audit and not whether Randolph denied Lee's request for a noncompetitive accretion of duties promotion because NAVSEA had a policy prohibiting such promotions.  As discussed above, *see supra* note 7, Lee did not bring a claim for denial of a desk audit.  Thus, Lee's argument does not demonstrate that "the legitimate reason[] offered by the defendant [was] not its true reason[], but [was] a pretext for discrimination."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

*Cones v. Shalala*, 199 F.3d 512, 516 (D.C. Cir. 2000).  If the plaintiff was unable to apply for the position, the plaintiff may still be able to establish a prima facie case by showing that she "'made every reasonable attempt to convey [her] interest in the job to the employer.'"  *Id.* at 518 (quoting *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 348 (3d Cir. 1990)).

The Secretary argues that Lee cannot establish a prima facie case of discrimination and also offers a legitimate non-discriminatory business reason for selecting Britton for the GS-13 63IC1 program analyst position instead of Lee.

### a. Lee Has Not Established a Prime Facie Case of Discrimination for Not Selecting Her for the GS-13 Program Analyst Position

The Secretary contends that Lee did not apply for the GS-13 program analyst position. NAVSEA never advertised the 63IC1 position.  Instead, NAVSEA selected an analyst from the list of qualified candidates who had applied for the 63IC2 position.  Recognizing that Lee was unable to apply for the 63IC1 position, the Secretary further argues that Lee also failed to make every reasonable attempt to convey her interest in the job to the employer.  For instance, in January 2004, Lee received an e-mail informing her that "there may be several career advancement opportunities within SEA 63 on the horizon" and that if she was "interest[ed] in a higher graded job" she should promptly update her resume on the electronic hiring system.  *See* Def.'s Mot., Ex. 4 (E-mail from Robert G. Flood, to Brenda J. Lee, et al. (Jan. 6, 2004)) at 1. Despite this e-mail, Lee did not submit her resume to the system until September 2004.  *See* Def.'s Mot., Ex. 10 (Decl. of Catherine L. Sergeson ("Sergeon Decl.") ¶ 3).

Lee does not adequately challenge the Secretary's argument and evidence that Lee did not apply for the GS-13 63IC1 position or otherwise express an interest in any GS-13 position for which she had to compete.  Lee admits that she was aware that she had to submit her resume to the electronic hiring system "[i]n order to be considered for selection for promotion under the

13

open continuous vacancy announcement system." Def.'s Stmt. ¶ 11. Lee does not dispute that she did not upload her resume to the system until September 2004. *Compare* Sergeson Decl. ¶ 3 ("Lee first submitted a resume to the database on September 23, 2004."), *with* Def.'s Lee Dep. at 43:12 ("I really don't recall when I put it in there."). Thus, Lee has not shown that she applied for the position or expressed an interest in it.

### b. Lee Has Not Shown that the Secretary's Legitimate Business Reason for Not Selecting Her for the GS-13 Program Analyst Position is Pretext

The Secretary argues that Randolph selected Britton for the 63IC1 position without giving Lee an opportunity to compete for the position because Randolph reasonably applied a personnel policy that allowed him to use an earlier list of qualified applicants that was generated to fill the 63IC2 position to fill the 63IC1 position. The Secretary provides evidence that the human resources department told a member of the selection committee for the 63CI1 position that "since the [63ICI] vacancy was the same series and grade as the one previously announced in another division, it was not necessary to issue another vacancy announcement." Def.'s Mot., Ex. 5 (Rpt. on Investigation (Raymond J. Ashenfelder Decl. ("Ashenfelder Decl.") at 230). The selection committee member also believed that "[t]here was no regulatory requirement to do another announcement to fill the position." *Id.* at 231. Thus, because Randolph "needed somebody in [the 63IC1 position] fast[,]" Def.'s Randolph Dep. at 84:6, the panel selected a person from the list of applicants qualified for the 63IC2 position to fill the 63IC1 position. Ashenfelder Decl. at 230.

Lee counters that the Secretary's proffered reason is pretext for discrimination because Randolph departed from the "normal procedure" and instead used a previous list of qualified applicants for a separate, earlier-advertised position. Pl.'s Opp'n at 26.

Although "a variation from an established procedure can evince pretext," *Weber v. Battista*, 604 F. Supp. 2d 71, 76 (D.D.C. 2009) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 145 (2000)), Lee has not shown that it does here.  The selection process was concededly unprecedented.  *See* Def.'s Randolph Dep. at 82:1–4, 83:2–4.  However, Lee's opposition identifies no evidence showing that NAVSEA's "bizarre series of personnel maneuvers" rose to the level of race and age discrimination.  Pl.'s Opp'n at 8.  For instance, Lee has not shown that NAVSEA was duty-bound to advertise the 63IC1 vacancy, generate a new competitive certificate, and only then select a hire.  Instead, there is evidence that Randolph honestly and reasonably believed that filling a new vacancy with an old list of qualified applicants was permissible.[10]  Neither has Lee shown that Randolph knew that Lee was not on the list of candidates qualified for the 63CI2 position when he chose the selection process.  Thus, Lee has not shown that the Secretary's proffered legitimate non-discriminatory business reason for not selecting Lee for the GS-13 63CI1 position is pretext.

### 4. Reduction of Work Responsibilities

Lee claims that Seibel discriminated against her by reassigning her major countries of Australia, Egypt, and Korea to a younger, white coworker.  To establish a general prima facie case of disparate treatment, "a plaintiff must show [(1)] that [she] 'is a member of a protected class,' [(2)] that [she] 'suffered an adverse employment action,' and [(3)] that 'the unfavorable action gives rise to an inference of discrimination.'" *Youssef v. FBI*, 687 F.3d 397, 401 (D.C. Cir. 2012) (quoting *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002)).  The Secretary

---

[10] Before deciding on the selection process, Randolph consulted his program operations manager, who Randolph testified "ten[ded] to have a fairly decent knowledge of personnel matters and [assisted him] with them."  Def.'s Randolph Dep. at 51:16–18; Pl.'s Randolph Dep. 82:5–8.  The manager in turn consulted the Administrative Officer who said that Randolph should use the existing list of qualified candidates generated for the 63CI2 position.  *See* Pl.'s Randolph Dep. at 82:15–17.  Randolph states that he followed that advice.  *Id.* at 82:18–21.

contends that Lee cannot show that reassigning some of her work duties was an adverse employment action.  The Secretary also argues that Seibel had a legitimate non-discriminatory business reason for reassigning the countries to Lee's coworkers.

### a. Lee Has Not Established a Prime Facie Case of Discrimination for Reducing Her Work Responsibilities

The Secretary argues that Lee was not harmed by the reassignment since she retained similar professional responsibilities after the three countries were reassigned.  Def.'s Br. at 34–35.  "[A] reduction in responsibilities can constitute an adverse employment action."  *Loya v. Sebelius*, 840 F. Supp. 2d 245, 256 (D.D.C. 2012) (citing *Czekalski v. Peters*, 475 F.3d 360, 364–65 (D.C. Cir. 2007)).  It is an adverse employment action if the reduction causes the employee to "'experience materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.'"  *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (quoting *Forkkio v. Powell,* 306 F.3d 1127, 1131 (D.C. Cir. 2002)).  Here, there is evidence that Australia, Egypt, and Korea made up Lee's "major work."  Pl.'s Lee Dep. at 56:14–23; *see also* Seibel Dep., at 127:1–2, 127:22, 128:1.  However, Lee has provided no evidence that she was "reassign[ed] with significantly different responsibilities," *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998)), or that the temporary reassignment otherwise affected a term or condition of her employment.[11]  Thus, Lee has not provided evidence sufficient for a reasonable jury to find that reassigning Australia, Egypt, and Korea was an adverse employment action.

---

[11] Lee also asserts that Seibel reassigned these countries from her workload shortly before the Navy adopted a performance-based compensation system.  Am. Compl. ¶ 21; Pl.'s Opp'n at 10-11; 27-28.  However, Lee identifies no evidence in the record to support this assertion.  Furthermore, Lee admits that she received performance awards after the countries were reassigned, Pl.'s Resp. ¶ 28, and that Egypt and Australia were later reassigned back to her, Def.'s Stmt. ¶ 32; Pl.'s Resp. ¶ 32.

**b. Lee Has Not Shown that the Secretary's Legitimate Business Reason for Reducing Her Work Responsibilities is Pretext**

The Secretary contends that Seibel temporarily reassigned Australia, Egypt, and Korea "to lighten [Lee's] workload and to more evenly distribute work among the analysts." Def.'s Br. at 37. There is evidence that NAVSEA conducted a workload analysis that revealed that Lee's workload was larger than her co-workers' workloads. *See* Def.'s Lee Dep. at 65:5–9. To more equitably distribute country assignments, Seibel reassigned Australia, Egypt, and Korea from Lee to others given the volume, importance, and complexity of work each country required. Seibel Dep. at 126:18–127:2. There is also evidence that the three countries were reassigned to help Lee better manage her workload. *See id.* at 129:20–22 (Seibel testifying that he explained to Lee that the reassignment would "allow her time to get her arms around her workload"); *see also* Pl.'s Lee Dep. at 73:1–2 (Lee testifying that Seibel told her that the countries were being reassigned because Lee "hadn't kept [a] database updated").

Lee identifies no evidence disputing that her workload was larger than that of her coworkers or that her supervisors sought to reduce it for that reason. *But cf.* Def.'s Lee Dep. at 65:5–66:23 (Lee testifying that she agreed to give up several countries assigned to her other than Australia, Egypt, and Korea because her workload was heavier than that of her coworkers). Because Lee has not shown that the Secretary's asserted non-discriminatory reason was not the actual reason for reducing Lee's work responsibilities, summary judgment must be granted for the Secretary.

**C. The Secretary's Motion for Summary Judgment Must be Granted as to Lee's Retaliation Claims**

In 1999, Lee submitted a written declaration in support of Bolling's same-sex sexual harassment claims. In December 2002, Lee testified at an EEOC hearing in support of Bolling's

claims.  Lee's alleges that her supervisors retaliated against her for engaging in those protected

activities by denying her request for an accretion of duties promotion, not promoting Lee to the

GS-13 program analyst position, and reassigning her major work responsibilities.  The Secretary

argues that Lee cannot establish a prima facie case of retaliation for any of the challenged

actions.  The Secretary further argues that it has legitimate non-retaliatory reasons for its

employment decisions.

### 1. Legal Standard — Title VII Retaliation Claim

Title VII forbids employers from discriminating against an employee because she has

"'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or

participated in' a Title VII 'investigation, proceeding, or hearing.'"  *Burlington N. & Santa Fe*

*Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)).  The ADEA also

prohibits employers from retaliating against employees who participate in protected conduct.

*See Gomez-Perez v. Potter*, 553 U.S. 474, 488 (2008); *Forman v. Small*, 271 F.3d 285, 297 (D.C.

Cir. 2001).

"To make out a prima facie case of retaliation, a plaintiff must show '(1) that [she]

engaged in statutorily protected activity; (2) that [she] suffered a materially adverse action by

[her] employer; and (3) that a causal link connects the two.'"  *Geleta v. Gray*, 645 F.3d 408, 411

(D.C. Cir. 2011) (quoting *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 577 (D.C. Cir. 2010)).  "'[W]here

an employee has suffered an adverse employment action and an employer has asserted a

legitimate, non-discriminatory reason for the decision,' however, whether the plaintiff has made

out a prima facie case is no longer relevant."  *Id.* (quoting *Brady*, 520 F.3d at 494).  "Rather, 'a

court reviewing summary judgment looks to whether a reasonable jury could infer retaliation

from all the evidence, which includes not only the prima facie case but also the evidence the

plaintiff offers to attack the employer's proffered explanation for its action and other evidence of

retaliation.'" *Id.* (quoting *Gaujacq*, 601 F.3d at 577).

### 2. Lee Has Not Established that There Was a Causal Connection between Her Protected Conduct and the Materially Adverse Actions

The Secretary argues that Lee cannot show a causal connection between her protected

conduct and her 2004 non-promotion and non-selection because there is insufficient temporal

proximity between Lee's protected conduct and either of NAVSEA's employment actions and

Lee cannot point to other evidence demonstrating causation.

A plaintiff may demonstrate causation through direct evidence or circumstantial

evidence, such as "the temporal proximity between the employer's knowledge of a protected

activity and the adverse employment action." *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 77

(D.D.C. 2007).  If the plaintiff relies only on temporal proximity to establish causation, the

plaintiff must show that "'the two events are very close in time.'" *Hamilton*, 666 F.3d at 1357

(quoting *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007)); *see also Clark Cnty. Sch. Dist.

v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between

an employer's knowledge of protected activity and an adverse employment action as sufficient

evidence of causality to establish a prima facie case uniformly hold that the temporal proximity

must be 'very close[.]'").  Although neither the Supreme Court nor the D.C. Circuit has

established a bright-line rule, "the cases cited by the *Breeden* Court seem to suggest that if a

plaintiff relies upon temporal proximity *alone* to establish causation, the time span must be under

three months." *Buggs v. Powell*, 293 F. Supp. 2d 135, 148 (D.D.C. 2003).  However, courts

should evaluate "the specific facts of each case to determine whether inferring causation is

appropriate." *Hamilton*, 666 F.3d at 1358.

The Secretary argues that Lee cannot show a causal connection between her protected conduct and the allegedly materially adverse actions.  In her amended complaint, Lee intimates that she was retaliated against only because of her involvement in the Bolling matter.  *See* Am. Compl. ¶¶ 16–17.[12]  Although Lee argues that the Bolling matter continued through September 2006, she does not dispute that her involvement in the matter ended in December 2002 when she testified at Bolling's EEOC hearing.  Lee alleges that she was retaliated against for participating in Bolling's case by not receiving an accretion of duties promotion in May 2004 and not being selected for the GS-13 program analyst position in July 2004.  The seventeen-month period between Lee's protected conduct and her non-promotion and non-selection is too long to provide a causal connection on its own.  *See Breeden*, 532 U.S. at 273–74.  Although Lee has provided evidence that Randolph knew of Bolling's case and Lee's involvement, *see* Bolling Decl. ¶ 9, Lee has not shown a temporal proximity between Randolph's knowledge and her non-promotion and non-selection sufficient to infer causation.  Because Lee has not provided any additional evidence of causation, Lee has not shown a prima facie case of retaliation.

### 3. Lee Has Not Shown that the Secretary's Legitimate Business Reasons for its Employment Decisions are Pretext for Retaliation

As discussed above, Lee failed to demonstrate a genuine dispute of material fact as to the Secretary's proffered reasons for Lee's non-promotion and non-selection to GS-13 positions and the redistribution of Lee's work duties.  That reasoning carries equal force in the retaliation context.  *See Gilbert v. Napolitano*, 670 F.3d 258, 261 (D.C. Cir. 2012).  Thus, because Lee has not shown that a jury could infer retaliation from her prima facie case of retaliation "any

---

[12] In her opposition, Lee states that she filed EEO complaints through March 2004.  Pl.'s Opp'n at 19.  However, Lee's amended complaint does not allege that Lee was being retaliated against because of her March 2004 EEO complaint.

evidence [she] present[ed] to attack the employer's proffered explanation for its actions[,]" and "any further evidence of discrimination[,]" *Hamilton*, 666 F.3d at 1351, summary judgment will be granted for the Secretary on Lee's retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, the court concludes that [Dkt. # 29] the Secretary's motion for summary judgment is granted.  An Order consistent with this Memorandum Opinion is separately issued this 26th day of July, 2013.

**SO ORDERED**.

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE